Margolin & Lawrence, Attorneys at Law
Allison B. Margolin (SBN 222370)
J. Raza Lawrence (SBN 233771)
Jennie W. Stepanian (SBN 289371)
8484 Wilshire Blvd., Suite 440
Beverly Hills, CA 90211
Telephone: (323) 653-9700
Facsimile: (310) 919-0448

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| Dilevon Lo, Jerry Vang, Nathan Thao, Mao Thao, Pao Lee, and Antonio Lee,<br><br>        Plaintiffs,<br><br>   v.<br><br>County of Siskiyou; Jeremiah LaRue and Jesus Fernandez, in their official capacities as members of the Siskiyou County Sheriff's Department and in their individual capacities; and Brandon Criss, Ed Valenzuela, Michael N. Kobseff, Nancy Ogren, and Ray A. Haupt, in their official capacities as members of the Siskiyou County Board of Supervisors and in their individual capacities; Edward Kiernan, in his official capacity as County Counsel for Siskiyou County and in his individual capacity; and DOES 1-100,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1.  **CLAIM FOR DECLARATORYAND INJUNCTIVE RELIEF FOR UNCONSTITUTIONAL ORDINANCES IN VIOLATION OF THE FOURTEENTH AMENDMENT OF U.S. CONSTITUTION (42 U.S.C. 1983)**<br><br>2.  **CLAIM FOR DAMAGES FOR VIOLATION OF THE FOURTEENTH AMENDMENT OF U.S. CONSTITUTION (42 U.S.C. 1983)**<br><br>3.  **CLAIM FOR DAMAGES FOR VIOLATION OF THE FOURTH AMENDMENT OF U.S. CONSTITUTION (42 U.S.C. 1983)**<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW PLAINTIFFS DILEVON LO, JERRY VANG, NATHAN THAO, MAO THAO, PAO LEE, and ANTONIO LEE by and through their undersigned counsel, and hereby bring the following Complaint against DEFENDANTS COUNTY OF SISKIYOU *et al.*, (hereinafter collectively "Defendants") as follows:

## PRELIMINARY STATEMENT

1.      This is an action for declaratory and injunctive relief and damages arising from Defendants' prevention of water delivery to Plaintiffs and those similarly situated due to poorly conceived and executed eradication efforts to stem cannabis cultivation in Siskiyou County. Plaintiffs challenge the prevention of the use of water trucks and any other vehicle used to transport water to residents and landowners of service under color of ordinance and resolution of DEFENDANT COUNTY OF SISKIYOU enforced by the Sheriff's Department of Siskiyou County as violations of the Fourteenth Amendment Due Process and Equal Protection Clauses, and Fourth Amendment, of the United States Constitution.

2.      The Civil Rights Act, section 1983, allows a plaintiff to sue state and local officials who have violated U.S. constitutional or statutory rights. See *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (affirming that it is 42 U.S.C. §1983 that provides a federal cause of action for the deprivation of rights secured by the United States Constitution).

3.       This is an action brought for violations of Plaintiffs' rights to due process of law and to equal protection of the laws under the Fourteenth Amendment to the United States Constitution, for which Plaintiffs seek declaratory and injunctive relief pursuant to United States Code, Annotated, Title 42, Sections 1981 and 1983 (42 U.S.C.A. §§ 1981, 1983) and United States Code, Annotated, Title 28, Sections 2201, 2202 (28 U.S.C.A. § 2201, 2202).  This action also seeks redress for violations of Plaintiffs' rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

4.      Plaintiffs, who are residents of, and, in some cases, family members of owners of real property, in the County of Siskiyou, hereby seek to enjoin enforcement of County of Siskiyou, Ordinance No. 21-07 ("Ordinance No. 21-07"), Ordinance No. 21-08 ("Ordinance No. 21-08"), and Ordinance No. 20-13 ("Ordinance No. 20-13") copies of which are attached,

1  marked "Exhibit A," "Exhibit B," and "Exhibit C," respectively, and hereby made part of this

2  Complaint. Ordinances No. 21-07, No. 21-08, and 20-13 are unconstitutional on their face and as

3  construed and applied to Plaintiffs as a violation of due process and equal protection under the

4  law, and a violation of the Fourth Amendment's prohibition on unreasonable searches and

5  seizures.

6  **PARTIES**

7       5.       Plaintiffs, Dilevon Lo, Jerry Vang, Nathan Thao, Mao Thao, Pao Lee and

8  Antonio Lee (collectively "Plaintiffs") reside in Siskiyou County, California.  Plaintiffs' primary,

9  if not sole, source of potable water for basic life necessities, comes from "water trucks" as

10  defined by Ordinance No. 21-08.

11       6.       Defendant COUNTY OF SISKIYOU, is now, and at all times mentioned in this

12  Complaint has been, a government entity in the State of  California organized and existing under

13  the Constitution of the State of California. Defendant COUNTY OF SISKIYOU engages in

14  legislative acts in the form of ordinances through its Board of Supervisors as advised by its

15  County Counsel. Local governmental units such as counties or municipalities are "persons"

16  within the meaning of 42 U.S.C. section 1983. *Monell v. New York City Dept. of Social Services*,

17  436 U.S. 658, 690–691 & n.54 (1978); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70

18  (1989).

19       7.       Defendant BRANDON CRISS is the duly elected board member for District 1

20  within the County of Siskiyou and was a board member involved in promulgating Ordinance No.

21  21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

22       8.       Defendant ED VALENZUELA is the duly elected board member for District 2

23  within the County of Siskiyou and was a board member involved in promulgating Ordinance No.

24  21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

25       9.       Defendant MICHAEL N. KOBSEFF is the duly elected board member for

26  District 3 within the County of Siskiyou and was a board member involved in promulgating

27  Ordinance No. 21-07 and Ordinance No. 21-08.

28

10.     Defendant NANCY OGREN is the duly elected board member for District 4 within the County of Siskiyou and was a board member involved in promulgating Ordinance No. 21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

11.     Defendant RAY A. HAUPT is the duly elected board member for District 5 within the County of Siskiyou and was a board member involved in promulgating Ordinance No. 21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

12.     Defendant EDWARD KIERNAN is the County Counsel for Defendant COUNTY OF SISKIYOU who supports activities, contracts and litigations as needed.  Plaintiffs are informed and believe and thereupon allege that Defendant EDWARD KIERNAN supported Defendant COUNTY OF SISKIYOU in its promulgation of Ordinance No. 21-07 and Ordinance No. 21-08 by and through its Board of Supervisors, including, but not limited to, its promulgation and execution including the method of enforcement through a COUNTY OF SISKIYOU Resolution which Plaintiffs are informed and believe and thereupon allege was put into practice by members of the Siskiyou County Sheriff's Department as more specifically alleged herein.

13.     Defendant JEREMIAH LARUE is the head Sheriff of the Siskiyou County Sheriff's Department, who has ultimate responsibility for promulgation, implementation, and enforcement of the policies, procedures, and practices of the Siskiyou County Sheriff's Department.

14.     Defendant JESUS FERNANDEZ is a member of the Siskiyou County Sheriff's Department who has enforced Ordinance No. 21-07 and Ordinance No. 21-08 against Plaintiffs and members of the Hmong community in Siskiyou County, California, by detaining them and impounding their vehicles.  DOES 1-100 are currently unknown and unidentified employees or agents of Siskiyou County, California, who participated in the development or enforcement of Ordinance Nos. 21-07 and 21-08 and the unnumbered Resolution at issue in this case.

15.     As to all claims presented herein against them, Defendants JEREMIAH LARUE, JESUS FERNANDEZ, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT, and EDWARD KIERNAN, are being sued in their

1 | individual capacities for damages associated with clearly established federal rights, and in their
2 | official capacities for injunctive and declaratory relief.  At all relevant times, Defendants
3 | JEREMIAH LARUE,  JESUS FERNANDEZ, BRANDON CRISS, ED VALENZUELA,
4 | MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT, and EDWARD KIERNAN
5 | have acted under color of state law.

6 | **JURISDICTION AND VENUE**

7 | 16.    This lawsuit is brought pursuant to 42 U.S.C. section 1983 against all Defendants
8 | for actions under color of state law in violation of the Fourteenth and Fourth Amendments to the
9 | United States Constitution.  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983
10 | and 28 U.S.C. § 1331 and 1343(a)(3), in that this action is brought to redress deprivation, under
11 | color of law, of rights secured by the Constitution of the United States.  This Court has
12 | jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201 and 2202, and is empowered
13 | to grant injunctive relief pursuant to Fed. R. Civ. P. 65.

14 | 17.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a
15 | substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

16 | **FACTUAL ALLEGATIONS**

17 | 18.    Plaintiffs are members of the Hmong tribe of Northern Laos who either actively,
18 | or through parents and grandparents, performed as fighters for the United States when the U.S.
19 | government recruited the Hmong people in the late 1960s to fight the communists in Laos. When
20 | U.S. military forces pulled out of Southeast Asia in 1975, tens of thousands of Hmong were
21 | trapped in mountainous enclaves. All aid was cut off to the Hmong. In response to the plight of
22 | Indochinese communities such as the Hmong after the Vietnam War, the U.S. Congress enacted
23 | legislation to enable Southeast Asian refugees to come to the United States.

24 | 19.    The Hmong people immigrated to various parts of the United States
25 | beginning in the early 1980. Admissions picked up between 1987 and 1994, when more than
26 | 50,000 Hmong entered the country. From 2004 until 2006, pressure from human rights groups
27 | contributed to the resettlement to the United States of an additional 15,000 Hmong immigrants

28 |

1  from a refugee camp in Thailand. Afterward, immigration from northern Laos to the United

2  States slowed. By early 2015, Hmong began arriving in the County of Siskiyou.

3        20.     More than a half-century ago, land speculators carved Siskiyou County's

4  unbuildable high desert and mountain slopes into half a dozen large subdivisions with "vacation"

5  parcels that had little market value. Mount Shasta Vista, rising along the western edge of the

6  valley, contained many of these "vacation" parcels which in 2014, remained fallow. By the end

7  of 2016, approximately a third of the Mount Shasta Vista parcels were owned by the Hmong

8  people.More than a half-century ago, land speculators carved Siskiyou County's unbuildable

9  high desert and mountain slopes into half a dozen large subdivisions with "vacation" parcels that

10  had little market value. Mount Shasta Vista, rising along the western edge of the valley,

11  contained many of these "vacation" parcels which in 2014, remained fallow. By the end of 2016,

12  approximately a third of the Mount Shasta Vista parcels were owned by the Hmong people.

13        21.     The Mount Shasta Vista Subdivision of Siskiyou County consists of 1600 lots, the

14  majority of which are occupied by Hmong families.  The population of the Hmong community in

15  the subdivision is over 1,000 men, women, and children.  Siskiyou County has approximately

16  4,000 Hmong residents, concentrated in the areas near the Mount Shasta Vista subdivision.

17        22.     In 2015, Defendant COUNTY OF SISKIYOU, by and through its Board of

18  Supervisors, passed an ordinance to ban outdoor cultivation of marijuana, punishable by a fine.

19  Marijuana crops could also be destroyed if authorities determined they were for commercial sale.

20        23.     The old gold mining town of Yreka in Siskiyou County for decades sold water to

21  anyone wanting it. But in July 2016, the town council declared the Hmong farmers' use

22  "undesired" and cut off sales to those living outside of city limits.

23        24.     The  Siskiyou County's Sheriff's department engaged in years of eradications,

24  seizures and arrests to eradicate marijuana cultivation. Through these efforts, the Hmong people

25  often became targets.

26        25.     In an article titled "Hmong cannabis growers pouring into Siskiyou County"

27  originally appearing on pressdemocrat.com on September 21, 2017, released to the wire service

28  on September 25, 2017, the former Sheriff of Siskiyou County, Sheriff Jon Lopey, is quoted as

6

1  stating "This is war" in his description of eradication efforts targeted at the Hmong community

2  in Siskiyou County.

3      26.    When the Mount Shasta Vista Subdivision of Siskiyou County was created, a

4  water well was built to supply water to the properties within the subdivision.  That well is located

5  on a nearby property along highway A-12 owned by Stephen Griset.  At the time of creation of

6  the subdivision, everyone understood that the water from that well would provide for the

7  residents of the subdivision, and the residents understood they would be able to access this water

8  for their daily living needs.

9      27.    For the past several years, the residents of the Mount Shasta Vista Subdivision of

10  Siskiyou County have depended on the water provided by Stephen Griset for survival.  The well

11  in question provides most of the water needs of the residents of the subdivision.  The manner

12  much of the needed water can be provided to the residents is by having it brought to the

13  subdivision by truck.On August 4, 2020, the Siskiyou County Board of Supervisors passed

14  Ordinance 20-13, the first of three ordinances cutting off the water supply to the Hmong

15  community.  Ordinance 20-13 makes it illegal to "engage in the act of wasting or unreasonably

16  using groundwater by extracting and discharging groundwater underlying Siskiyou County for

17  use in cultivating cannabis in violation of Chapter 14 or Chapter 15 of Title 10 of the Siskiyou

18  County Code."  The following month, the Griset family, who continued to allow the Hmong

19  community and other neighbors to use their private well after the ordinance passed, was sued by

20  Siskiyou County (Case No. SC CV 20-810) for allegedly violating this ordinance.

21      28.    In 2020, while he was Undersheriff of the Siskiyou County Sheriff's Department,

22  KARL G. HOUTMAN drafted a document entitled "Fiscal Year 2021 Annual Strategic

23  Plan."  In Paragraph 1, A, under the heading "Domestic Cannabis Intelligence Overview: Self-

24  Assessment," KARL G. HOUTMAN wrote: "We are dealing with all different ethnic groups

25  (Hmong, Hispanic, Bulgarian, Caucasian and Chinese) on private land but have seen the largest

26  increase in Chinese working at many private land sites."  The report estimated "upwards of 2500

27  illegal marijuana cultivation site [sic.] in Siskiyou County," and that 80 of those cultivation sites

28  (3.2% of the total) were located in the Mount Shasta subdivision.

7

1    29.    Plaintiffs are informed and believe and thereupon allege that KARL G.

2  HOUTMAN's ideas set forth in the document "Fiscal Year 2021 Annual Strategic Plan" were

3  communicated, received and adopted by Defendant COUNTY OF SISKIYOU by and through its

4  Board of Directors.

5    30.    On May 4, 2021, the Board of Supervisors promulgated Ordinance No. 21-07 and

6  Ordinance No. 21-08.  The ostensible purpose of the ordinances was to prevent extraction

7  (pumping) of large volumes of groundwater from groundwater resources and local wells in

8  Siskiyou County. The stated reason for the need for this "urgency" legislation is due to drought

9  conditions in the county and excess water being expended daily on illicit cannabis production in

10  Siskiyou County.

11    31.    The remedy for the water conservation measures set forth in Ordinance No. 21-08

12  is to prohibit "Water Trucks" in certain areas of Siskiyou County because said "Water Trucks"

13  have "created dangerous driving conditions, health hazards from dust and diesel exhaust, noise

14  pollution, traffic congestion, and generally conditions that detract from the quality of life and

15  welfare of those who reside alongside and near these highways" (Exhibit B hereto). "Water

16  Trucks" are defined in Ordinance No. 21-08 as "a vehicle designed or being used to carry water

17  of not less than 100 gallons or any vehicle designed or carrying or towing tanks or bladders of

18  100 gallons of water or more or a "Water Tender Vehicle," as defined in California Vehicle

19  Code section 676.5 (3-4.1501, subd. (a), of Ordinance No. 21-08 - Exhibit B hereto).

20    32.    The target of enforcement for the prohibition on "Water Trucks" as defined by

21  Ordinance No. 21-08 was to prevent their travel on Siskiyou County roads to be determined by

22  Defendant COUNTY OF SISKIYOU, by and through its Board of Supervisors, as specified by

23  resolution (Section 3-4.1501, subd. (b), of Ordinance No. 21-08 - Exhibit B hereto).

24    33.    At Defendant COUNTY OF SISKIYOU's Board of Supervisors meeting of May

25  4, 2021, discussion, direction and action took place regarding the Resolution setting forth roads

26  included within Section 3-4.1501 of Ordinance No. 21-08 and the Board of Supervisors passed

27  the Resolution identifying the roads on which the travel of the water trucks would be

28  prohibited.  There was no discussion at the meeting regarding why the particular roads listed in

the Resolution were included and why others were not.  A true and correct copy of said proposed Resolution is attached hereto as Exhibit D.

34.     Those roads listed in Exhibit D, located in Butte Valley and Big Springs, are actively being targeted by Siskiyou County Sheriff's Department for enforcement as more specifically alleged herein.

35.     These roads identified in Butte Valley and Big Springs are used for the ingress and egress for parcels occupied and/or owned predominately by the Hmong people of Siskiyou County.  The enforcement of Ordinance Nos. 20-13, 21-07 and 21-08 by and through the Siskiyou County Sheriff's Department (including, but not limited to Defendant Deputy Sheriff JESUS FERNANDEZ) has had the effect of depriving the Plaintiffs (and the Hmong people of Siskiyou County generally) of potable water.

36.     Plaintiffs are informed and believe and thereupon allege that Defendant COUNTY OF SISKIYOU, by and through its Board of Supervisors and/or members of its Sheriff's Department, mapped out the impact of areas affected by enforcement of Ordinance Nos. 21-07 and 21-08, as more specifically targeted through the unnumbered Resolution (Exhibit D hereto), in the map attached hereto and incorporated herewith as Exhibit E.

37.     As reflected on the map (Exhibit E hereto), there are six (6) large areas of Siskiyou County identified as Areas of Marijuana Cultivation in the 2021 Strategic Plan with large blue stars, covering an area encompassing from the northern Highway 96 corridor bordered by the Pacific Coast Ranges to the west to the Six Rivers National Forest to the south then along the Shasta Trinity National Forest to the south-east to Tulelake in the north-east, thousands of square miles.  The map (Exhibit E hereto) also identifies three (3) locations designated as "Areas affected by Water Ordinance" with large orange stars covering only a small portion of the total area starting at locations adjacent to Shasta Vista, Mac Doel and Dorris, an area that is exclusively in the north-eastern area of the map (Exhibit E) where the Hmong people reside.

38.     Cutting off the water to the Mount Shasta Vista Subdivision of Siskiyou County has caused a humanitarian crisis.   The over 1,000 Hmong people who are living in the subdivision depend on the water for personal survival, to be used for food crops and for human

9

1  and animal consumption.  Without water, the residents will be forced to move and lose their

2  investment in their property.

3         39.      According to United States Geological Survey estimates, 23,300,000,000 gallons

4  of water per day is consumed for domestic use by 283,000,000 people, or approximately 82.3

5  gallons per person per day.  Based on the USGS report the over 1,000 Hmong people living in

6  the Mount Shasta Vista Subdivision of Siskiyou County require more than 82,300 gallons of

7  water per day for personal consumption.  The USGS report indicates California consumption is

8  higher than the average.  In a study conducted by the Hamilton Project of the Brookings

9  Institution, the daily domestic consumption of water is 124 gallons of water per day per

10  person.  Based on the Hamilton Project data, in California, 1,000 people would require 124,000

11  gallons of water per day for domestic purposes, or 45,260,000 gallons of water per year.  Based

12  on this data, a substantial portion of the water provided by Mr. Griset to the Hmong community

13  goes to domestic use and is necessary for subsistence to those living in the subdivision.

14         40.      The County of Siskiyou has not worked with the residents of the Mount Shasta

15  Vista Subdivision of Siskiyou County to provide an alternate solution to this issue.  During the

16  public comment period at the May 4, 2021, Board of Supervisors meeting when the Ordinances

17  and Resolution were passed, Paul Manasian, an attorney representing Mr. Griset, proposed that

18  the County have a meeting with Hmong community and farmers to discuss a solution to water

19  issues, and explained that the Hmong sites do not have their own water.  The County did not take

20  Mr. Manasian up on his offer.  Also during the public comment period at the May 4, 2021, Board

21  of Supervisors meeting when the Ordinances and Resolution were passed, a farmer told the

22  Board of Supervisors that he uses water trucks all the time to transport water around the County

23  for various legitimate purposes, and explained that unforeseen consequences would result from

24  water truck ban due to all the legitimate agriculture going on in the County.

25         41.      As quoted in a Sacramento Bee article dated May 26, 2021, entitled "Asian pot

26  growers face sheriff raids, bulldozers in Northern California. They blame racism," Siskiyou

27  County District Attorney Kirk Andrus has stated about the water truck ban, "We're not

28  pretending that this is something that's trying to regulate anything except for water being used

for cannabis.  It's a way to enforce California's and Siskyiou's cannabis laws. That's what it's

for. It is not designed to protect the aquifer, or the groundwater."  In the Ordinance passing the

water truck ban, however, the Board of Supervisors purported to justify the ban on the basis that

there was a "drought" and that the water on the trucks was "depleting precious groundwater …

resources and these losses jeopardize the lawful agricultural, recreational, private and

environmental use of water for thousands of residents."  The District Attorney has thus

confirmed that the Ordinances were not, in fact, adopted for the reasons for which the Board of

Supervisors claimed it was adopting the Ordinances.

42. At the public hearing on May 4, 2021, where Defendant COUNTY OF

SISKIYOU by and through its Board of Supervisors, welcomed Defendant JEREMIAH LARUE

to give comment on a related Ordinance (Ordinance No. 21-07) imposing an Administrative

Permit Process for groundwater extraction further restricting access to water, and to "educate the

board on why this would be effective and the previous method isn't,"[1] he stated:

> — "first off, I think it's important that we direct our anger at the right people. Um, you know, we have good people in this county that have agriculture. And we have people that are abusing that.  We know who they are, and frankly I'm perplexed that those individuals are not shamed more by not only other people in the agg, um, world, but also the county. Um, I know we talk a lot about that, but really, that's... Those people, not just the growers, are helping this be established. And you know, honestly, they're, they're making a lot of money off of that. And so, I just hope everyone who's listening and involved in this room, later on that we, we focus on the people that are causing the problems."[2]

> — "And we're going to aggressively enforce and fine to the extreme that we can, um... Whatever we can do, we're going to do."[3]

> — "You know, this is not going to get done by just having the, the government show up and save everybody. Historically, that has never happened. So, we need the cooperation of our local people to help us get to the bottom of this, and really choke it out."[4]

> — "Um, if people are going to do it right, um, well I'll say... They would have done it right from the beginning. Um, it's 100% illegal, regardless of how great the community thrives. It's still leg- illegal activity. Um, it's not wanted here. It's prohibited  here. That's just the rules. That's, that's the law. So, um, the argument that suddenly if we were to legally permit everything, people would start complying. That never happens. Um, because there is no incentive to comply, even if it's permitted. Um, so anyways. I digress, digress on that, but the importance of this ordinance... Both of them, we haven't gotten to

---

[1] *See* Transcript of May 4, 2021 BOS meeting, at 6:159-60.
[2] *See* Transcript of May 4, 2021 BOS meeting, at 6:162-71.
[3] *See* Transcript of May 4, 2021 BOS meeting, at 6:189-90.
[4] *See* Transcript of May 4, 2021 BOS meeting, at 7:204-07.

the other one, <u>it just</u> another <u>tool</u> for us to choke out <u>the</u>, <u>the</u> <u>water</u> <u>issue</u> that's <u>enabling</u> <u>everything</u>."[5]

— "So again, pressure. <u>Where is</u> <u>the pressure</u>? <u>Why</u> <u>aren't</u> <u>these</u> <u>people</u> <u>called</u> <u>out</u>? I think that, uh, you know, I hear a lot of, 'Why isn't the county doing anything?" We are. But I also throw it back to the community. Um, we have to take this together. And we have to have support. And I think we hea- we hear quite a bit of it. Uh, I don't discount that, but I, I just recognize again, <u>we</u> <u>all</u> <u>have</u> to <u>come</u> <u>together</u> <u>on</u> <u>this</u>. <u>It's</u> <u>not just</u> <u>the Sheriff's</u> <u>Department</u> or <u>code</u>, or <u>the</u> <u>board</u>, or <u>the county</u>. <u>I</u> <u>mean</u>, <u>it's</u> <u>everybody</u>. It's, it's the entirety of us, so, um, I'm here to answer any questions related to that. <u>I just</u> <u>want</u> to <u>convey</u> <u>the seriousness</u> <u>of this</u>, <u>and</u> <u>that</u> <u>we're</u> <u>going</u> to <u>go</u> <u>out</u> <u>and</u> <u>aggressively</u> <u>enforce</u> <u>it.</u>  That's what, that's what we do. If there's laws on the books that we can use, it's not a matter that we don't want to do it. <u>We just</u> <u>have</u> to <u>have</u> <u>the</u> <u>right</u> <u>teeth</u>."[6]

43.     Plaintiffs are informed and believe and thereupon allege that the group of "those people, not just the growers" Defendant JEREMIAH LARUE referred to in his public statements were and are the Hmong people of Siskiyou County as a group regardless of the criminality of their conduct or lack thereof.

44.     Plaintiff DILEVON LO was pulled over by Deputy Sheriff JESUS FERNANDEZ of the Siskiyou County Sheriff's Department on May 4, 2021, while driving a truck full of water on Juniper Road in Siskiyou County.  His truck was seized and impounded.

45.     Plaintiff JERRY VANG was pulled over by J. RANDALL of the Siskiyou County Sheriff's Department, who was driving an unmarked red pickup truck, on May 5, 2021, while driving a rented truck on a private road that had less than 100 gallons of water on it.  His truck was seized and impounded.

46.     Plaintiff NATHAN THAO was a passenger in a truck he owned that was pulled over by a representative of the Siskiyou County Sheriff's Department four times in the past six months.

47.     Plaintiff MAO THAO was driving a truck containing water that was followed for several minutes and then pulled over on Highway A-12 in Siskiyou County by a representative of the Siskiyou County Sheriff's Department on May 11, 2021.

---

[5] *See* Transcript of May 4, 2021 BOS meeting, at 7:212-20.
[6] *See* Transcript of May 4, 2021 BOS meeting, at 8:230-38.

48.     Plaintiff PAO LEE was driving a truck containing water that was pulled over by a representative of the Siskiyou County Sheriff's Department on May 14, 2021.  His truck was seized and impounded.

49.     Plaintiff ANTONIO LEE was pulled over May 14, 2021 by a representative of the Siskiyou County Sheriff's Department. The truck was seized and impounded.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Declaratory and Injunctive Relief for Unconstitutional Ordinances Pursuant to 42 U.S.C. § 1983 – Fourteenth Amendment – Against Defendant COUNTY OF SISKIYOU**

50.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

51.     A district court is empowered to exercise its fundamental obligation to determine the constitutionality of a county ordinance under the Declaratory Relief Act, 28 U.S.C. § 2201. Where the unconstitutionality of an ordinance as violative of the Fourteenth Amendment, and plaintiffs' damages from enforcement would be irreparable because no one could be compelled to respond therefor, a federal court of equity will normally enjoin enforcement if the ordinance unconstitutionally invades plaintiffs' property rights.  *Terrace v. Thompson* 263 U.S. 197, 214, 216 (1923); *Davis & Farnum Mfg. Co. v. Los Angeles*, 189 U.S. 207, 218 (1903).

52.     The Hmong people of Siskiyou County live on land in the affected areas (Butte Valley and Big Springs) and many, if not all, do not have access to potable water without having it brought to them by vehicle and/or picking up water themselves and traversing the roads identified in the Resolution (Exhibit D) hereto.  According to reports from urban water agencies in California submitting monthly data on residential water use to the State Water Resources Control Board (SWRCB) and as reported by the Legislative Analyst's Office (the California Legislature's nonpartisan fiscal policy advisor), the average residential water use in 2016 was 85 gallons per person per day.

53.     Ordinance No. 21-08 prohibits any vehicle designed or carrying or towing tanks or bladders of 100 gallons of water or more traveling on roads identified in the Resolution

(Exhibit D hereto) in the Butte Valley and Big Springs areas of Siskiyou County, thereby creating an undue burden on the Hmong people who live in that designated area from obtaining potable water. Ordinance No. 21-07 prohibits water extraction for use off-parcel without a permit. Ordinance 20-13 purports to prohibit extraction or discharge of water "for use in cultivating cannabis" in violation of the Siskiyou County Code, and has been used by Siskiyou County to cut off access to water to the Hmong community, including by the County suing farmer and well owner Stephen Griset in Siskiyou County Superior Court Case Number CV 20-810, for allegedly violating Ordinance 20-13.

### Plaintiffs Have a Property Right to Access to Water

54.     While the Constitution protects against states infringing upon property interests without due process, those "[p]roperty interests . . . are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Bases for a claim of entitlement to property interests arise from either a state law or a contract between the state and the citizen. See *id.* at 577-78.  The right to water service may not be a fundamental right guaranteed by the Constitution, however the Constitution does protect the rights of those granted a property interest by State law.

55.     Ownership of California's water is vested generally in the state's residents. California maintains a "dual system" of water rights, which distinguishes between the rights of "riparian" users, those who possess water rights by virtue of owning the land by or through which flowing water passes, and "appropriators," those who hold the right to divert such water for use on noncontiguous lands. For historical reasons, California further subdivides appropriators into those whose water rights were established before and after 1914. Post–1914 appropriators may possess water rights only through a permit or license issued by the Board, and their rights are circumscribed by the terms of the permit or license. See *Millview County Water Dist. v. State Water Resources Control Bd.* (2014) 229 Cal.App.4th 879, 888-90.

56.     Under California law, property interests in water take the form of a usufruct, *i.e.,* a right to use the resource. " 'It is laid down by our law writers, that the right of property in water

14

is usufructuary, and consists not so much of the fluid itself as the advantage of its use.' [*Eddy v. Simpson*, 3 Cal. 249 (1853)] Hence, the cases do not speak of the ownership of water, but only of the right to its use." *National Audubon Society v. Superior Court*, 33 Cal.3d 419, 441 (1983).

57.     It has long been settled law in California that use of water for domestic purposes (natural use) is first entitled to preference over commercial (artificial) use. *Hale v. Mclea*, 53 Cal. 578, 584 (1879). *Smith v. Corbitt*, 116 Cal. 587, 592 (1897); *Bathgate v. Irvine*, 126 Cal. 135, 142 (1899); *Cowell v. Armstrong*, 210 Cal. 218, 224-25 (1930); *Rancho Santa Margarita v. Vail*, 11 Cal.2d 501, 561 (1938); *Lux v Haggin*, 69 Cal. 255, 395 (1884), *Stanford v. Felt*, 71 Cal. 249, 250 (1886). *Drake v. Tucker*, 43 Cal.App. 53, 58 (1919).

58.     In addition, the right to water to be used in irrigation is a right in real property. *Schimmel v. Martin*, 190 Cal. 429, 432 (1923).  A trio of cases has also found the right to water is an easement appurtenant to land. *Stanislaus Water Co. v. Bachman*, 152 Cal. 716, 724 (1908); *San Juan G. Co. v. San Juan R. etc. Assn,.* 34 Cal.App.2d 159, 174 (1939); *Relovich v. Stuart*, 211 Cal. 422, 428 (1931).

59.     Plaintiffs had a legitimate expectation, grounded in state law, that continued access to water in Siskiyou County would be available to them on reasonable terms and conditions without regard to Defendants' eradication efforts.  In *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9 (1978), customers of a municipal utility were found by the Supreme Court to have a protected interest in the service provided to their home, thus requiring the municipality to provide proper notice of a possible disconnection, including informing the customer of the right to a hearing or procedure to challenge the validity of the decision prior to any termination of service. *Memphis Light*, 436 U.S. at 14-15. "[I]ndeed the discontinuance of water or heating for even short periods of time may threaten health and safety." *Id.* at 18. Plaintiffs state facts giving rise to a "legitimate claim of entitlement" to access to water in Siskiyou County. *Id.,* at 11.

**Defendant COUNTY OF SISKIYOU Failed to Follow Proper Procedure in**

**Enacting Ordinance No. 21-08**

60.     A duly enacted county ordinance is a "law of this State'" within the meaning of a penal statute proscribing the violation of such law. *In re Groves,* 54 Cal.2d 154, 158 (1960); *County of Plumas v. Wheeler,* 149 Cal. 758, 768 (1906).  A board resolution is not. *City of Sausalito v. County of Marin,* 12 Cal.App.3d 550, 566 (1970). "A resolution by a county board of supervisors is usually a mere declaration with respect to future purpose or proceedings of the board. An ordinance is a local law which is adopted with all the legal formality of a statute." *McPherson v. Richards*, 134 Cal.App. 462, 466 (1933).

61.     Section 3-4.1501, subd. (b), of Ordinance No. 21-08 (Exhibit B hereto) merely states: "Pursuant to the authority provided Siskiyou County under California Vehicle Code Section 21101 (c), Water Trucks are prohibited from traveling over such streets (as defined in California Vehicle Code Section 590) and highways (as defined in California Vehicle Code Section 360) *that the Board of Supervisors may specify by resolution.*" (Emphasis added.)

62.     A resolution adopted without the "formality" required of an ordinance cannot be deemed an ordinance. *City of Sausalito, supra,* at 12 Cal.App.3d at 566 (citing 5 McQuillin, *Municipal Corporations* (1969 rev. vol.) ss 15.02—15.08, pp.  46—47.)  California's Legislature has been explicit concerning this distinction. It has exacted certain "formalities" in the enactment of an ordinance by the supervisors of a county (Gov. Code, §§ 25120—25121), but not of their adoption of a resolution. It has specified certain requirements relative to the publication of a county ordinance after its passage (Gov. Code, § 25124), its deferred effective date in the typical case (s 25123), and its mandatory recording in an "ordinance book" (Gov. Code, §§ 25102, subd. (b), 25122)). None of these requirements applies to board resolutions. *City of Sausalito, supra,* at 12.

63.     By contrast, in lieu of entering resolutions in full in the minute book, the clerk, with the approval of the board, may keep a resolution book in which he shall enter all resolutions in full. In such cases, references in the minute book to resolutions may be made by number and subject reference. (Gov. Code, § 25102.1.)  Because the difference between a "resolution" and an

"ordinance" is thus substantive, under case law and by deliberate legislative definition, the one (unnumbered Resolution – Exhibit D hereto) cannot be construed as having amounted to the other (Ordinance No. 21-08 – Exhibit B hereto). *City of Sausalito, supra*, at 12 Cal.App.3d at 566.

64.     By purporting to identify specific roads in Butte Valley and Big Springs as being the subject for enforcement of Ordinance No. 21-08 in the proposed Resolution (Exhibit D hereto), Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN and RAY A. HAUPT effectively shielded from the "formality" requirements mentioned above (Gov. Code, §§ 25120—25124) of an ordinance the determination that Hmong people living along certain county roads, regardless of their status as criminals or law-abiding citizens, would be deprived of delivery of water for their basic needs. Plaintiffs are informed and believe and thereupon allege that promulgating in this manner was designed to conceal the fact that the roads designated in the Resolution impacted primarily the Hmong people of Siskiyou County.  Plaintiffs are further informed and believe and thereupon allege that as the County Counsel for Defendant COUNTY OF SISKIYOU, Defendant EDWARD KIERNAN aided and abetted this concealment.

65.     In bypassing the formal requirements of an ordinance by enacting the Resolution (Exhibit D hereto) that identified the specific roads in Butte Valley and Big Springs as being the subject for enforcement of Ordinance No. 21-08, Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN prevented meaningful participation of the pubic, including Plaintiffs and the Hmong people of Siskiyou County generally.

**Defendant COUNTY OF SISKIYOU Provided No Meaningful Notice and Opportunity to Challenge the Execution of Ordinance Nos. 20-13, 21-07, and 21-08**

66.     Ordinance Nos. 20-13, 21-07 and 21-08 contain no requirement that termination of access to water include a notice of an opportunity for a pre-termination hearing or review nor means to redress the seizure of property lawfully obtained by those traversing on Siskiyou County roads identified in the Resolution (Exhibit D hereto).  Nor was adequate notice given to

1  residents of Siskiyou County that the roads identified in the Resolution (Exhibit D hereto) would

2  subject them to scrutiny.

3      67.    Existing regulations found in Sec. 5-8.01, *et seq.,* of Chapter 8 of Title 5 of the

4  Siskiyou County Code adopted February 28, 1961, effective March 31, 1961 and beginning with

5  Supplement No. 15 and supplemented thereafter addresses only the construction, reconstruction,

6  repair, and destruction of water wells, cathodic protection wells, and monitoring wells but does

7  not address access to water by citizens without such wells.

8      68.    The due process clause of the Fourteenth Amendment warrants that "No State

9  shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const.

10  amend. XIV § 1. Therefore, once the property interest in access to water is created, proper notice

11  of the potential termination of access to that water must consist of both a declaration that the

12  access will be terminated or extremely limited at some point in the future, and a notification of

13  the opportunity for a hearing to voice concerns, uncover misuse or discuss the existence of

14  hardships. By failing to give timely and adequate notice to Plaintiffs, including notice of an

15  opportunity for a hearing prior to termination of access to water, Defendant COUNTY OF

16  SISKIYOU unlawfully deprived Plaintiffs of their rights under the Due Process Clause of the

17  Fourteenth Amendment to the United States Constitution.

18  **Defendant COUNTY OF SISKIYOU's Adoption of the Methods and Means of Execution**
19  **of Ordinance No. 21-08 Through the Unnumbered Resolution Was Arbitrary and**
20  **Capricious**

21      69.    Plaintiffs' private interest in the continued access to water in Siskiyou County is

22  affected by the official action of Defendant COUNTY OF SISKIYOU and the risk of an

23  erroneous deprivation of such interest through the procedures adopted through Ordinance No.

24  21-08 and the unnamed Resolution (Exhibit D hereto) is overwhelming.

25      70.    Here, Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED

26  VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and

27  EDWARD KIERNAN articulated their rationale for the "urgency" in adopting Ordinance No.

28  21-08 as based on emergency drought conditions affecting most of California as well as criminal

activity, to wit: "Local law enforcement officers and code enforcement officers have observed large quantities of groundwater being extracted from local wells and then delivered in water trucks off the parcel from which extraction occurred to illegal cannabis cultivation sites, most of which are without legally established residences and are used exclusively for illegal cannabis cultivation." (Exhibit B, p. 1, Section 1, subsection F.)

71.     Nowhere in its findings in Ordinance No. 21-08 or in the public statements made in connection with Ordinance No. 21-08's consideration on May 4, 2021, or the unnumbered Resolution (Exhibit D hereto) did Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN provide information of the fact that the Hmong people occupying Mount Shasta Vista Subdivision of Siskiyou County rely substantially on water trucks to deliver to them potable water.

72.     Plaintiffs are informed and believe and thereupon allege that Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN did not consider reasonable alternatives to de facto water eradication and the creation of water scarcity for the Hmong people of Siskiyou County in adopting Ordinance No. 21-08. Instead, Plaintiffs are informed and believe and thereupon allege that Defendants instead directed Defendant JEREMIAH LARUE to immediately enforce Ordinance No. 21-08 by stopping and detaining the Hmong people of Siskiyou County for pretextual reasons in order to seize water and vehicles as more specifically alleged herein.

73.     The probable value of additional or substitute procedural safeguards is not outweighed by Defendant COUNTY OF SISKIYOU's stated interest in drought abatement and illicit marijuana cultivation, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See *Memphis Light, supra,* 436 U.S. at 17 and *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

74.     The deprivation of Plaintiffs' access to water, a protectable property interest, was by means that were arbitrary and capricious. *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir.1994).

### Ordinance Nos. 20-13, 21-07, and 21-08 are Overboard

75.     A law is overbroad if it "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of [a fundamental right] . . . ." *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) (freedom of speech); *see also Clark v. City of Los Angeles,* 650 F.2d 1033, 1039 (9th Cir.1981) (same). The Supreme Court has required that the overbreadth "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

76.     By not considering other less intrusive and effective means to abate drought conditions and/or illicit marijuana cultivation, Ordinance Nos. 20-13, 21-07, and 21-08 are overbroad and substantially overburden the Hmong people of Siskiyou County in obtaining potable water, including the Plaintiffs. This burden outweighs Defendants' interests in drought control and drug eradication.

### Ordinance No. 21-08 and Unnumbered Resolution Violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as a Result of Intentionally Treating the Hmong People of Siskiyou County as a Suspect Class

77.     To state an equal protection claim, Plaintiffs must prove they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To determine whether a rational basis exists for the Defendants, and each of them, the intent of the Defendants in establishing the method of enforcement of Ordinance No. 21-08 must be weighed against the effect of the policy on its "water users." There can be no rational basis for state action "that is malicious, irrational, or plainly arbitrary." *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004), *overruled on other grounds by Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528 (2005).

78.     Remarks by officials with Defendant COUNTY OF SISKIYOU as alleged herein (Defendant JEREMIAH LARUE and former Siskiyou County Sheriff Jon Lopey ["This is war"]) reflect an animus toward the Hmong people of Siskiyou County.  The arbitrary nature of prohibiting all vehicles with 100 gallons of water or more on county roads identified in the unnumbered Resolution (Exhibit D hereto) that has a disparate impact on the Hmong people of Siskiyou County and Plaintiffs are informed and believe that these types of remarks for public consumption are and were designed to vilify all Hmong people of Siskiyou County regardless of their criminal conduct or lack thereof.

79.     Plaintiffs are informed and believe and thereupon allege that Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN intentionally concealed an unconstitutional policy and practice implemented through Ordinance Nos. 20-13, 21-07 and  21-08 and the unnamed Resolution (Exhibits A-D hereto) in order to avoid public comment and scrutiny.  Plaintiffs are informed and believe and thereupon allege that said Defendants targeted the Hmong people of Siskiyou County residing in the Mount Shasta Vista Subdivision of Siskiyou County because of the five-plus year campaign by Defendant COUNTY OF SISKIYOU to make them a suspect class of persons regardless of their conduct by associating them with the illicit marijuana industry.

80.     By justifying prevention of water trucks on the roads identified in the unnumbered Resolution (Exhibit D hereto), moreover, on the goal to deny access to water to the growers and "those people, not just the growers," identified by Defendant JEREMIAH LARUE in his public statements the day Ordinance Nos. 21-07 and 21-08 were considered on May 4, 2021, Defendants, and each of them, made the Hmong people a suspect class as a whole regardless of their criminality or lack thereof.

81.     The Supreme Court has noted that "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it be true, that the law bears more heavily on one race [or national origin] than another. It is also not infrequently true that the discriminatory impact . . . may for all practical purposes demonstrate

unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds." *Washington v. Davis*, 426 U.S. 229, 242 (1976).  A classification that is ostensibly neutral but is an obvious pretext for racial discrimination or for discrimination on some other forbidden basis is subject to heightened scrutiny and ordinarily invalidation.  *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356 (1886); *Guinn v. United States*, 238 U.S. 347 (1915); *Lane v. Wilson,* 307 U.S. 268 (1939); *Gomillion v. Lightfoot*, 364 U.S. 339 (1960).

82.     Regardless of the intent of the Defendants, and each of them, Ordinance Nos. 20-13, 21-07 and 21-08 and the Unnumbered Resolution (Exhibits A-D hereto) have disparate impacts on the Hmong People of Siskiyou County.

**A Case in Controversy Exists Warranting Declaratory and Injunctive Relief**

83.     Defendant COUNTY OF SISKIYOU's Ordinance Nos. 20-13, 21-07 and 21-08 and Unnumbered Resolution and its enforcement methods impacting the Plaintiffs and the Hmong people of Siskiyou County in general present a concrete case in controversy. Plaintiffs lack an adequate remedy at law afforded to them in state or federal courts due to the substantial continuing, present adverse effects of these enforcement efforts on their access to water in Siskiyou County.

84.     The past wrongs suffered by Plaintiffs as alleged herein are evidence that there is a real and immediate threat of repeated injury and Defendants continue to enforce Ordinance Nos. 20-13, 21-07 and 21-08 and the Unnumbered Resolution in the manner Defendants have in the past.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

**SECOND CAUSE OF ACTION**

**(Claims for Monetary Damages for Violations of Due Process and Equal Protection Clauses of the Fourteenth Amendment to United States Constitution Arising Out of an Unconstitutional Policy and Practice Pursuant to 42 U.S.C. § 1983 -- Against All Defendants)**

85.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.78.Remarks by officials with Defendant COUNTY OF SISKIYOU as alleged herein (Defendant JEREMIAH LARUE and former

Siskiyou County Sheriff Jon Lopey ["This is war"]) reflect an animus toward the Hmong people of Siskiyou County.  The arbitrary nature of prohibiting all vehicles with 100 gallons of water or more on county roads identified in the unnumbered Resolution (Exhibit D hereto) that has a disparate impact on the Hmong people of Siskiyou County and Plaintiffs are informed and believe that these types of remarks for public consumption are and were designed to vilify all Hmong people of Siskiyou County regardless of their criminal conduct or lack thereof.

86.     Plaintiffs, and each of them, have had their rights to equal protection of the laws and their rights to not be deprived of liberty and property without due process of law violated in contravention of the rights guaranteed by the Fourteenth Amendment to the United States Constitution.  Such violations were committed by Defendants who were acting under the color of state law.

87.     There is a direct causal link between the conduct of the Defendants, and each of them, and the constitutional deprivations alleged herein.  Plaintiffs, and each of them, have been damaged by the unconstitutional conduct of the Defendants, and each of them.

88.     The violations of the Plaintiffs' Fourteenth Amendment rights for being targeted for enforcement of Ordinance Nos. 20-13, 21-07 and 21-08 and their unnumbered Resolution were carried out by individual members of the Board of Supervisors and agents of Defendant COUNTY OF SISKIYOU as alleged herein.  These constitutional violations were the product of an unconstitutional policy of Defendant COUNTY OF SISKIYOU. The individually named Defendants above the rank of deputy sheriff put into place these policies with knowledge that the Hmong people would be the target of enforcement since water interdiction efforts were confined to geographic locations where the Hmong people predominantly reside.  As such, these "supervisor" individual defendants personally participated in the deprivation of constitutional rights or knew of the violations and failed to act to prevent them. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

89.     As a direct and proximate result of Defendants' conduct in violation of Plaintiffs' Fourteenth Amendment rights as set forth above, Plaintiffs have suffered, and continue to be

deprived of their access to water, their property and they suffer physical and emotional distress, and lost income.

90.     Defendants' actions and inactions are motivated by evil motive and intent and are committed with reckless and callous indifference to Plaintiffs' federally protected rights.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

### THIRD CAUSE OF ACTION

**(Claims for Monetary Damages for Violations of Fourth and Fourteenth Amendments to United States Constitution Arising Out of an Unconstitutional Policy and Practice Pursuant to 42 U.S.C. § 1983 — Against All Defendants)**

91.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

92.     The Fourth Amendment to the United States Constitution seeks to secure "the privacies of life" against "arbitrary power." Carpenter v. U.S., 138 S.Ct. 2206, 2214, 201 L.Ed.2d 507 (2018).  A central aim of the Framers of the Fourth Amendment was "to place obstacles in the way of a too permeating police surveillance." United States v. Di Re, 332 U.S. 581, 595 (1948).

93.     The Fourth Amendment to the United States Constitution seeks to secure "the privacies of life" against "arbitrary power." Carpenter v. U.S., 138 S.Ct. 2206, 2214, 201 L.Ed.2d 507 (2018).  A central aim of the Framers of the Fourth Amendment was "to place obstacles in the way of a too permeating police surveillance." United States v. Di Re, 332 U.S. 581, 595 (1948).

94.     The violations of the Plaintiffs' Fourth and Fourteenth Amendment rights for being targeted for enforcement of Ordinance Nos. 21-07 and 21-08 and the Unnumbered Resolution were carried out by individual members of the Siskiyou Sheriff's Department as alleged herein.  These constitutional violations were the product of an unconstitutional policy of Defendant COUNTY OF SISKIYOU. The individually named Defendants above the rank of deputy sheriff put into place these policies with knowledge that the Hmong people would be the target of enforcement since water interdiction efforts were confined to geographic locations where the Hmong people predominantly reside.  As such, these "supervisor" individual

1  defendants personally participated in the deprivation of constitutional rights or knew of the

2  violations and failed to act to prevent them. See Taylor v. List, 880 F.2d 1040, 1045 (9th

3  Cir.1989).

4         95.    There is a direct causal link between the conduct of the Defendants, and each of

5  them, and the constitutional deprivations alleged herein.  Plaintiffs, and each of them, have been

6  damaged by the unconstitutional conduct of the Defendants, and each of them.

7         96.    As a direct and proximate result of Defendants' conduct in violation of Plaintiffs'

8  Fourteenth Amendment rights as set forth above, Plaintiffs have suffered, and continue to be

9  deprived of their access to water and their property, and they suffered and continue to suffer

10  physical and emotional distress, and lost income.

11        WHEREFORE, Plaintiffs pray for relief as set forth herein.

12  **PRAYER FOR RELIEF**

13        The conduct previously alleged, unless and until enjoined by order of this Court, will

14  cause great and irreparable injury to Plaintiffs.  Further, a judicial declaration is necessary and

15  appropriate at this time so that all parties may know their respective rights and act accordingly.

16        WHEREFORE, Plaintiffs pray for judgment as follows:

17        1.    A declaration that Defendants' actions, described herein, violate both the due

18  process clause and equal protection clause of the Fourteenth Amendment to the United States

19  Constitution;

20        2.    A declaration that Ordinance No. 21-07 (Exhibit A hereto), Ordinance No. 21-08

21  (Exhibit B hereto) and the improperly conjoined unnumbered Resolution (Exhibit D hereto) are

22  void as being in violation of the "formality" requirements required by Government Code §§

23  25120—25124;

24        3.    A declaration that Ordinance Nos. 20-13, 21-07 and 21-08 are overbroad;

25        4.    A declaration that Ordinance Nos. 20-13, 21-07 and 21-08 discriminate against

26  the Hmong people of Siskiyou County;

27

28

5.      An order enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of Plaintiffs' civil rights under the Fourteenth Amendment to the United States Constitution;

6.      An order enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of Plaintiffs' civil rights under the Fourth Amendment to the United States Constitution;

7.      An order awarding actual damages in an amount to be proven at trial for violations of federally protected rights that have been clearly established;

8.      An order awarding punitive damages in an amount to be proven at trial for violations of federally protected rights that have been clearly established;

9.      An order awarding Plaintiffs' reasonable attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

10.      An order awarding such other and further relief as the Court deems just and proper.

Dated: June 4, 2021

Respectfully submitted,

/s/  Allison B. Margolin

Attorney for Plaintiffs

COMPLAINT
DILEVON LO *et al.* v. COUNTY OF SISKIYOU *et al.*

# EXHIBIT A

ORDINANCE NO. 21-07

**AN URGENCY ORDINANCE OF THE COUNTY OF SISKIYOU
ADDING ARTICLE 3.5 TO CHAPTER 13 OF TITLE 3 OF THE SISKIYOU
COUNTY CODE REGARDING THE ADMINISTRATIVE PERMIT
REQUIRED FOR USE OF GROUNDWATER OFF THE PARCEL FROM
WHICH IT WAS EXTRACTED AND CLARIFYING AND AMENDING
SECTION 3-13.601 OF SAID CHAPTER AND TITLE RELATED TO
FINES.**

The Board of Supervisors of the County of Siskiyou does ordain as follows:

**SECTION 1**.  Findings and Declarations.

        The Board of Supervisors makes the following findings in support of the enactment of this urgency ordinance:

A.  In 2020, Siskiyou County (the "County") was classified as being in a state of drought, with some areas of the County being classified as being in "extreme drought".

B.  On March 5, 2021, the United States Department of Agriculture notified Governor Newsom that it had designated Siskiyou County, among other California counties, as a primary natural disaster area due to the 2020 drought.

C.  On March 22, 2021, the California Water Resources Control Board ("SWRCB") issued a warning letter to prepare for statewide impacts of drought, explaining that "[a]fter two years of low precipitation, the U.S. Drought Monitor now reports that 95 percent of California is experiencing Moderate to Exceptional Drought" and that "[r]eservoir and groundwater levels are significantly below average".   The SWRCB letter advised that "[c]ontinued dry conditions can threaten water supplies, impair critical habitat, reduce recreational opportunities, and create uncertainty for all water users."

D.  As of April 21, 2021, the U.S. Drought Monitor published by the National Integrated Drought Information System classified 98.43 percent of Siskiyou County as experiencing moderate drought, 82.44 percent of Siskiyou County as experiencing severe drought, and 62.65% of Siskiyou County as experiencing extreme drought.

E.  Pursuant to Article XI, section 7, of the California Constitution, the County may adopt and enforce ordinances and regulations not in conflict with general laws to protect and promote the public health, safety, and welfare of its citizens.

F.  Pursuant to Government Code section 25123, the County may enact an ordinance for the immediate preservation of the public peace, health, or safety, which contains a declaration setting forth the facts constituting the urgency and which shall be effective

1


SISKIYOU COUNTY
ORDINANCE
No. 21-07

immediately.

G. Pursuant to Government Code section 25131, an urgency ordinance may be passed immediately upon introduction.

H. Siskiyou County has broad authority to regulate groundwater pursuant to its police powers. *See Baldwin v County of Tehama*, (1994) 31 Cal App 4th 166; *see In re Maas* (1933) 219 Cal. 422, 425.

I. In Siskiyou County, groundwater is an essential resource for domestic, municipal, agricultural, and industrial uses, and it is also a resource essential to the continued agricultural production and economic viability of the County.

J. Groundwater is an essential resource for the environment, and for the plant and animal species that inhabit Siskiyou County and make it a desirable outdoor tourist destination.

K. Siskiyou County contains four medium-priority groundwater basins (Tule Lake, Shasta, Scott and Butte Valley) that require the development and adoption of groundwater sustainability plans pursuant to California's Sustainable Groundwater Management Act ("SGMA"). Groundwater sustainability agencies for these basins have not yet developed approved groundwater sustainability plans under SGMA.

L. Rather than disturb local regulation of groundwater, the Legislature in enacting SGMA expressly "recognize[d] and preserve[d] the authority of cities and counties to manage groundwater pursuant to their police powers." Stats 2014, ch.346 Uncodified Findings §1(b)(5); *see also* Water Code section 10726.8(f) ("[n]othing in a groundwater sustainability plan shall be interpreted as superseding the land use authority of cities and counties."); *Environmental Law Foundation v. State Water Resources Control Board*, et. al (2018) 26 Cal.App.5th 844, 863.

M. The Board of Supervisors desires to ensure land uses in the unincorporated area of the County are in compliance with Siskiyou County's zoning code, that conditions of public nuisance are abated, and that the County's laws and policies aid in meeting SGMA's goals.

N. The County continues to receive complaints from constituents of land use violations and undesirable effects on groundwater resources and local wells associated with neighboring and adjacent landowners pumping large volumes of groundwater into water trucks for off-parcel use.

O. Local law enforcement officers and code enforcement officers have observed large quantities of groundwater being extracted from local wells and then delivered in water trucks off the parcel from which extraction occurred to illegal cannabis

2

cultivation sites, most of which are without legally established residences and used exclusively for illegal cannabis cultivation.

P. A Local State of Emergency declaration was passed by the Board of Supervisors on January 21, 2020, (Resolution No. 20-18) and is currently in effect, reciting that "1,500 to 2,000+ illicit cannabis cultivation sites in private property areas have established encampments where hundreds of people are living in unpermitted and illegally constructed dwellings without permitted sewage disposal systems or potable water supplies" and that "an estimated 3,000,000 gallons of water is being expended daily by illicit cannabis producers, depleting precious groundwater and surface water resources and these losses jeopardize the lawful agricultural, recreational, private and environmental use of water for thousands of residents".

Q. On August 11, 2020, the Sheriff clarified to the Board that more recent estimates of the water being expended daily on illicit cannabis production in Siskiyou County is much higher and is around 9.6 million gallons.

R. The use of groundwater to supply activities and land uses off-parcel that are conducted in violation of County land use ordinances is wasteful and unreasonable, aids in creating property conditions declared by the County to constitute a public nuisance, and reduces the resources available to the reasonable, beneficial, and lawful uses of groundwater from every affected aquifer.

S. The hot, dry, summer months are expected to be a time of maximum groundwater pumping in the County and the absence of regulations in the County Code that provide for regulation of extraction of groundwater for off-parcel use is a threat to the public health, safety and welfare, and requires immediate action to ensure the purpose and use of groundwater is incidental to a lawful activity and that extracted groundwater is for uses allowed by the underlying zoning designation of the parcel(s) receiving the extracted groundwater; or that have received Conditional Use Permit approval; or otherwise are allowed as legal non-conforming uses.

**SECTION 2**. Declaration of Urgency.

A. Based on the findings set forth above, the Board finds and declares that there is a current and immediate threat to the public health, safety and welfare arising from the absence of regulations in the County Code regulating extraction of groundwater for off-parcel use.

B. Based on the findings above, the Board of Supervisors determines that this ordinance is urgently needed for the immediate preservation of the public peace, health, safety, and welfare pursuant to the Government Code section 25121 and 25131.

3

**SECTION 3**.  Chapter 13 of Title 3 is hereby amended to add Article 3.5 and to read as follows:

**Article 3.5 – Administrative Permit Process for groundwater extraction for use off-parcel from which it was extracted.**

**3.5-13.101. – Limitation on Application of this Article to Groundwater Extractions Subject to Section 3-13-301.**

The provisions of this article shall not apply to groundwater extractions that require a written permit pursuant to Section 3-13.301 of this Chapter.

Commercial groundwater extraction uses, whether subject to Section 3-13.301 or 3.5-13.102, shall also comply with the provisions of Chapter 6 of Title 10 of the Siskiyou County Code, which require commercial groundwater extraction uses be located in the appropriate zoning district and obtain all necessary permit approvals.

**3.5-13.102. – Administrative Permit required for extraction of groundwater for use off-parcel.**

It shall be unlawful to extract groundwater of any nature or description, or for a property owner to allow such extraction on his or her land, or for any person to cause, permit, aid, abet, suffer, or furnish equipment or labor for such extraction, for the purpose of using the water or selling the water for use on other than the parcel of land upon which the extraction occurs, or contiguous parcels of land under the same ownership as the parcel from which the extraction occurs, without first obtaining an administrative permit as provided in this chapter.

It shall be unlawful to use water extracted in violation of this section on other than the parcel of land upon which the extraction occurs, or contiguous parcels of land under the same ownership as the parcel from which the extraction occurs, or for a property owner to allow such use on their land, or for any person to cause, permit, aid, abet, suffer, or furnish equipment or labor for such use, without first obtaining an administrative permit as provided in this Article.

An administrative permit shall be required in all instances in which groundwater is extracted and transported off the parcel from which it was extracted, including occasions in which groundwater is extracted, transported off-parcel, and returns to the parcel from which it was extracted. This provision does not apply to the extraction of water for the purposes of supplying irrigation districts, emergency services, well replenishment for permitted wells, a "public water system," a "community water system," a "noncommunity water system," or "small community water system" as defined by the Health and Safety Code, serving residents of the County of Siskiyou.

4

For purposes of this Article, "parcel" shall mean a legal parcel. Where contiguous legal parcels are under common ownership or control, such contiguous legal parcels shall be counted as a single legal parcel for purposes of this Article.

**3.5-13.103. – Application for administrative permit.**

An application for a permit required by this Article shall be filed with the Siskiyou County Community Development Department, Environmental Health Division, on forms provided by said division and shall contain all information required by such division. Upon receipt of the permit application, the Environmental Health Division, shall review the application with affected county departments including, but not limited to, the Agricultural Commissioner and Planning Director. After obtaining the comments of the affected county departments, the Environmental Health Division, shall cause the application together with all received comments to be reviewed by the Community Development Director, or his or her designee. Upon receipt of an application, the Community Development Director, or his or her designee, may require an inspection of any or all parcels associated with the application prior to the issuance of an administrative permit.

**3.5-13.104. – Granting of ministerial, administrative permit.**

In order to grant the administrative, ministerial permit, the purpose and use of groundwater shall be incidental to a lawful activity.  Extracted groundwater shall only be for uses and activities allowed by the underlying zoning designation of the parcel(s) receiving the extracted groundwater or uses that have received Conditional Use Permit approval or are legal non-conforming uses.

The Community Development Director, or his or her designee, may withhold the processing of and/or issuance of an administrative permit, where a Notice to Appear, Civil Action, Notice to Comply, Administrative Citation, and/or a Notice and Order to Abate has been issued and/or is pending administrative or judicial review on any of the associated parcels requesting an administrative permit, until the subject property or properties are found to be in complete compliance with any and all applicable County Code sections.

**3.5-13.105. – Appeal of Decision**

The decision of the Community Development Director, or his or her designee, is appealable to the Board of Supervisors. An appeal must be filed in writing with the Clerk of the Board within 10 days of the action taken by the Community Development Director, or his or her designee, and must set forth the reason(s) for appeal with specificity.

5

**3.5-13.107. – Annual review of permit.**

The permit granted pursuant to this Article shall be for one year. At the request of the applicant, the administrative permit may be reviewed by the Community Development Department for a renewal term of one-year subject to the same criteria set forth in section 3.5-13.104.  Upon receipt of a request for renewal, the Community Development Director, or his or her designee, may require an inspection of any or all parcels associated with the request prior to the issuance of a renewed administrative permit. Said decision by the Environmental Health Division, may be appealed to the Board of Supervisors by the applicant or any other affected person.

**3.5-13.108. – Enforceability.**

Violations of this Article are unlawful and shall constitute a public nuisance and may be enforced and abated through any available remedy provided by the Siskiyou County Code, including Article 6 below, or any other federal, state, or local law.

**SECTION 6**.  Section 3-13.601 of Chapter 13 of Title 3 of the Siskiyou County is clarified and amended to read as follows (additions appear in underline):

**Sec. 3-13.601. - Civil penalty.**

The County may elect to proceed with a civil action against a violator, including injunctive relief, or through administrative enforcement. Any person or entity who violates this chapter shall be subject to fines of up to Five Thousand ($5,000) Dollars per separate violation. A person shall be deemed to have committed separate violations for each and every day or portion thereof during which any such violation is committed, continued, or permitted as well as for each and every separate groundwater well with which any such violation is committed, continued, or permitted. For purposes of the violation of Section 3.5-13.102, each instance in which groundwater is extracted and transported off the parcel from which it was extracted from without the required administrative permit is a separate violation.

**SECTION 7**.  Authority/Effective Date:

This is an urgency ordinance within the meaning of Section 25131 of the Government Code and an ordinance for the immediate preservation of the public peace, health and safety within the meaning of Section 25123(d) of the Government Code, which shall be passed immediately upon introduction, and shall take effect immediately upon a 4/5 vote.

**SECTION 8**.  Publication.

This ordinance,  within 15 days of adoption, shall be published once in a newspaper of general circulation, printed and published in the County of Siskiyou as required by law.

**SECTION 9**.  Severability.

If any section, subsection, sentence, clause, phrase, or portion of this ordinance or the application thereof to any person or circumstance is held to be invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the remaining portions or other applications of the ordinance, and the provisions of this ordinance are declared to be severable.

**SECTION 10**.  CEQA.

The Board hereby finds that this Ordinance is exempt from the California Environmental Quality Act ("CEQA") pursuant to Section 15061(b)(3) because it can be seen with certainty that there is no possibility of a significant effect on the environment from the adoption of this Urgency Ordinance establishing an administrative permit process for groundwater extraction for use off-parcel, as the Ordinance does not itself prohibit or authorize groundwater extraction for any particular parcel or project.  Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA. In addition, the Board of Supervisors further finds that the ordinance is categorically exempt from review under CEQA under the Class 8 Categorical Exemption, 14 CCR § 15308, (regulatory activity to assure protection of the environment) and Class 7 Categorical Exemption, 14 CCR § 15307, (regulations and restrictions on activities to assure the maintenance, restoration, or enhancement of a natural resources).

PASSED AND ADOPTED this 4th day of May, 2021, at a regular meeting of the Board of Supervisors by the following vote:

AYES:      Supervisors Criss, Valenzuela, Ogren and Haupt
NOES:      Supervisor Kobseff
ABSENT:  None
ABSTAIN: None

Ray A. Haupt Chairman,
Board of Supervisors

ATTEST:
LAURA BYNUM, CLERK,
Board of Supervisors

By _____
            Deputy

7

# EXHIBIT B

ORDINANCE NO. 21-08

**AN URGENCY ORDINANCE OF THE COUNTY OF SISKIYOU
ADDING ARTICLE 15 TO CHAPTER 4 OF TITLE 3 OF THE SISKIYOU
COUNTY CODE RELATING TO WATER TRUCKS.**

The Board of Supervisors of the County of Siskiyou does ordain as follows:

**SECTION 1**.  Findings and Declarations.

The Board of Supervisors makes the following findings in support of the enactment of this urgency ordinance:

A.  In 2020, Siskiyou County was classified as being in a state of drought, with some areas of the County being classified as being in "extreme drought".

B.  On March 5, 2021, the United States Department of Agriculture notified Governor Newsom that it had designated Siskiyou County, among other California counties, as a primary natural disaster area due to the 2020 drought.

C.  On March 22, 2021, the California Water Resources Control Board ("SWRCB") issued a warning letter to prepare for statewide impacts of drought, explaining that "[a]fter two years of low precipitation, the U.S. Drought Monitor now reports that 95 percent of California is experiencing Moderate to Exceptional Drought" and that "[r]eservoir and groundwater levels are significantly below average".   The SWRCB letter advised that "[c]ontinued dry conditions can threaten water supplies, impair critical habitat, reduce recreational opportunities, and create uncertainty for all water users."

D.  As of April 21, 2021, the U.S. Drought Monitor published by the National Integrated Drought Information System classified 98.43 percent of Siskiyou County as experiencing moderate drought, 82.44 percent of Siskiyou County as experiencing severe drought, and 62.65% of Siskiyou County as experiencing extreme drought.

E.  The County continues to receive complaints from constituents of undesirable effects on groundwater resources and local wells associated with neighboring and adjacent landowners pumping large volumes of groundwater into water trucks for off-parcel use.

F.  Local law enforcement officers and code enforcement officers have observed large quantities of groundwater being extracted from local wells and then delivered in water trucks off the parcel from which extraction occurred to illegal cannabis cultivation sites, most of which are without legally established residences and are used exclusively for illegal cannabis cultivation.

1


SISKIYOU COUNTY
ORDINANCE
No. 21-08

G. A Local State of Emergency declaration was passed by the Board of Supervisors on January 21, 2020, (Resolution No. 20-18) and is currently in effect, reciting that "an estimated 3,000,000 gallons of water is being expended daily by illicit cannabis producers, depleting precious groundwater and surface water resources and these losses jeopardize the lawful agricultural, recreational, private and environmental use of water for thousands of residents".

H. On August 11, 2020, the Sheriff clarified to the Board that more recent estimates of the water being expended daily on illicit cannabis production in Siskiyou County is much higher and is somewhere around 9.6 million gallons.

I. The use of County highways by these large number of Water Trucks, which most often fill up in neighborhoods where such activity is illegal, has created dangerous driving conditions, health hazards from dust and diesel exhaust, noise pollution, traffic congestion, and generally conditions that detract from the quality of life and welfare of those who reside alongside and near these highways.

J. The illegal cannabis industry that these Water Trucks enable has been devastating to the local community, with the introduction of widespread environmental hazards, the construction of thousands of unpermitted structures within which workers illegally reside, raw human waste being discharged directly onto or into the soil, potentially contaminating ground water, and the widespread escalation of criminal activity.

K. The use of groundwater to supply activities and land uses off-parcel that are conducted in violation of applicable ordinances is wasteful and unreasonable, and threatens both immediate and permanent harm to the reasonable, beneficial, and lawful uses of groundwater from every affected aquifer.

L. The dangerous and unhealthy conditions created by the explosive spread of illegal cannabis cultivation creates the risk of additional crime victims, illness, and death each day it is allowed to continue and proliferate, and the ability of the County to fight these forces deteriorates every day they are allowed to expand further, particularly as prime illegal cannabis growing season is upon us.

M. Pursuant to Article XI, section 7, of the California Constitution, the County of Siskiyou ("County") may adopt and enforce ordinances and regulations not in conflict with general laws to protect and promote the public health, safety, and welfare of its citizens.

N. Pursuant to Vehicle Code Section 21101(c), a county may regulate the types of vehicles it allows upon highways within its jurisdiction.

O. Pursuant to Government Code section 25123, the County may enact an ordinance for

2

the immediate preservation of the public peace, health, or safety, which contains a declaration setting forth the facts constituting the urgency and which shall be effective immediately.

P. Pursuant to Government Code section 25131, an urgency ordinance may be passed immediately upon introduction.


**SECTION 2**. <u>Declaration of Urgency</u>.

A. Based on the findings set forth above, the Board finds and declares that there is a current and immediate threat to the public health, safety and welfare arising from the absence of regulations in the County Code regulating the use of County highways by Water Trucks, as defined herein.

B. Based on the findings above, the Board of Supervisors determines that this ordinance is urgently needed for the immediate preservation of the public peace, health, safety, and welfare pursuant to the Government Code section 25121 and 25131.

**SECTION 3**.  Chapter 4 of Title 3 is hereby amended to add Article 15 and to read as follows:

**Article 15 – Restrictions on Water Trucks using certain specified County highways.**

**3-4.1501- Water Trucks prohibited on specified county roads.**

(a) As used in this Article, "Water Truck" means a vehicle designed or being used to carry water of not less than 100 gallons or any vehicle designed or carrying or towing tanks or bladders of 100 gallons of water or more or a "Water Tender Vehicle," as defined in California Vehicle Code section 676.5.

(b) Pursuant to the authority provided Siskiyou County under California Vehicle Code Section 21101(c), Water Trucks are prohibited from traveling over such streets (as defined in California Vehicle Code Section 590) and highways (as defined in California Vehicle Code Section 360) that the Board of Supervisors may specify by resolution.

**3-4.1502- Signs.**
The prohibitions set forth in this article shall not be enforceable unless signs have been placed alongside the street or highway so as to warn drivers of the prohibitions.

3

### 3-4.1503 Penalties

In addition to any other available penalty, including Section 1-2.01, any person or company, including a corporation or limited liability company (LLC), violating any section of this article shall be guilty of an infraction or misdemeanor and shall be fined $100 or in an amount that the Board of Supervisors may specify by resolution, subject to the then-existing limitations of Vehicle Code 21104. To the maximum extent allowed under state law, any peace officer (as defined by California Penal Code Section 830 et seq.) in good standing that has completed Police Officer Standards and Training (POST) may enforce this chapter.

### 3-4.1504- Special permits.

The Director of Public Works of the County is hereby authorized, at his or her discretion, upon application in writing, and if good cause exists, to issue a special permit in writing authorizing the applicant to operate a Water Tender Vehicle that would otherwise be in violation Section 3-4.1501. Any permit issued under Siskiyou County Code Article 3.5 of Chapter 13 of Title 3 satisfies this requirement.

### 3-4.1505 - Inapplicability.

The prohibition contained in this chapter do not apply to emergency vehicles. To the extent that any provision of this article conflicts with state or federal law, either on its face or as applied, it shall be inapplicable to the extent of such conflict. The Board hereby affirms that it intends that all remaining provisions not in conflict remain in effect.

**SECTION 4**. Authority/Effective Date:

This is an urgency ordinance within the meaning of Section 25131 of the Government Code and an ordinance for the immediate preservation of the public peace, health and safety within the meaning of Section 25123(d) of the Government Code, which shall be passed immediately upon introduction, and shall take effect immediately upon a four-fifths vote.

**SECTION 5**. Publication.

This ordinance, within 15 days of adoption, shall be published once in a newspaper of general circulation, printed and published in the County of Siskiyou as required by law.

**SECTION 6**. Severability.

If any section, subsection, sentence, clause, phrase, or portion of this ordinance or the application thereof to any person or circumstance is held to be invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the remaining portions or other applications of the ordinance, and the provisions of this ordinance are declared

4

to be severable.

**SECTION 7**. <u>CEQA</u>.

The Board hereby finds that this Ordinance is exempt from the California Environmental Quality Act ("CEQA") pursuant to Section 15061(b)(3) because it can be seen with certainty that there is no possibility of a significant effect on the environment from the adoption of these regulations allowing for the restriction of Water Tender Vehicles. Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA. In addition, the Board of Supervisors further finds that the ordinance is categorically exempt from review under CEQA under the Class 8 Categorical Exemption, 14 CCR § 15308, (regulatory activity to assure protection of the environment) and Class 7 Categorical Exemption, 14 CCR § 15307, (regulations and restrictions on activities to assure the maintenance, restoration, or enhancement of a natural resources).

PASSED AND ADOPTED this 4th day of May, 2021, at a regular meeting of the Board of Supervisors by the following vote:

AYES:       Supervisors Criss, Kobseff, Valenzuela, Ogren and Haupt
NOES:       None
ABSENT:   None
ABSTAIN: None

Ray A. Haupt Chairman,
Board of Supervisors

ATTEST:
LAURA BYNUM, CLERK,
Board of Supervisors

By _____
Deputy

5

# EXHIBIT C

ORDINANCE NO.    20-13

**AN URGENCY ORDINANCE OF THE COUNTY OF SISKIYOU
FINDING THE EXTRACTION AND DISCHARGE OF GROUNDWATER
WITHIN THE COUNTY FOR USE IN CULTIVATING CANNABIS
IN VIOLATION OF THE COUNTY CODE
IS AN UNREASONABLE USE OF, AND WASTE OF,
THE COUNTY'S GROUNDWATER RESOURCES
AND PROHIBITING SAME.**

The Board of Supervisors of the County of Siskiyou does ordain as follows:

**SECTION 1**. Findings and Declarations.

The Board of Supervisors makes the following findings in support of the enactment of this urgency ordinance:

A. Pursuant to Article XI, section 7, of the California Constitution, the County of Siskiyou ("County") may adopt and enforce ordinances and regulations not in conflict with general laws to protect and promote the public health, safety, and welfare of its citizens.

B. Pursuant to Government Code section 25123, the County may enact an ordinance for the immediate preservation of the public peace, health, or safety, which contains a declaration setting forth the facts constituting the urgency and which shall be effective immediately.

C. Pursuant to Government Code section 25131, an urgency ordinance may be passed immediately upon introduction.

D. Under *Baldwin v County of Tehama*, (1994) 31 CalApp4th 166, state law does not prevent counties from adopting ordinances to manage groundwater under their police powers; thus counties, have authority over the regulation of the groundwater within their jurisdiction.

E. In Siskiyou County, groundwater is an essential resource for domestic, municipal, agricultural, and industrial uses, and it is also a resource essential to the continued agricultural production and economic viability of the County.

F. Groundwater is an essential resource for the environment, and for the plant and animal species that inhabit Siskiyou County and make it a desirable outdoor tourist destination.

G. The protection of the public health, welfare, and safety of the residents of the County require that the County's groundwater resources be protected from extraction or "pumping" and discharge activities that constitute waste and unreasonable use of groundwater, and which could lead to adverse environmental and economic impacts on the County and its residents.

H. California Constitution, Article X, section 2, as well as Water Code Section 100, requires that the water resources of the State of California be put to the greatest beneficial use of which they are capable and also prohibits the waste, unreasonable use, unreasonable method of

1

use, or unreasonable method of diversion of the water.

I.  The Board of Supervisors finds that the extraction and discharge of groundwater underlying Siskiyou County for use in cultivating cannabis in violation of the Siskiyou County Code and state law ("Illegal Cannabis Cultivation") is inconsistent with Article X, section 2, of the California Constitution and the California Water Code.

J.  Siskiyou County is currently classified as being in a state of drought, with some areas of the County being classified as being in "extreme drought".

K.  Siskiyou County contains four medium-priority groundwater basins (Tule Lake, Shasta, Scott and Butte Valley) that require the development and adoption of groundwater sustainability plans pursuant to California's Sustainable Groundwater Management Act. Groundwater sustainability agencies for these basins have been developing hydrogeologic and pumping evaluations to aid in meeting SGMA's goals. The Board of Supervisors desires to ensure that the County's laws and policies also aid in meeting SGMA's goals, including curbing the pumping and discharge activities within those basins that constitute a waste and unreasonable use of groundwater.

L.  Cannabis is a water-intensive crop, the cultivation of which has the potential to consume vast amounts of water from local sources.

M.  Despite the County Code prohibiting commercial cannabis activities (Siskiyou County Code, Title 10, Chapter 15), and despite the County Code limiting the personal cultivation of cannabis to the indoor cultivation of a maximum of 12 plants (Title 10, Chapter 14), thousands of Illegal Cannabis Cultivation sites have been established in Siskiyou County, with the growth of thousands of illicit cannabis plants. Per the Siskiyou County Sheriff's Office, the Sheriff's Department has already seized 41,855 illicit cannabis plants and 1,755 pounds of processed cannabis this year.

N.  Local law enforcement officers and code enforcement officers have observed large quantities of groundwater being extracted from local wells and then delivered in water trucks to Illegal Cannabis Cultivation sites, most of which are without legally established residences and used exclusively for Illegal Cannabis Cultivation.

O.  A Local State of Emergency declaration was passed by the Board of Supervisors on January 21, 2020, (Resolution No. 20-18) and is currently in effect, reciting that "an estimated 3,000,000 gallons of water is being expended daily by illicit cannabis producers, depleting precious groundwater and surface water resources and these losses jeopardize the lawful agricultural, recreational, private and environmental use of water for thousands of residents".

P.  Resolution 20-18 describes environmental impacts at these Illegal Cannabis Cultivation sites where encampments housing hundreds of people in unpermitted and illegally constructed dwellings without permitted sewage disposal systems or potable water results in solid waste being buried on-site or solid waste accumulating unmitigated and then being transported by the elements to neighboring properties.  The pumping and discharge of groundwater for the use of Illegal Cannabis Cultivation, is not only an unreasonable and

2

wasteful use of groundwater, but this use has the compounded negative effect of resulting in the potential contamination of other waters within the County.

Q.  The present summer months are a time of maximum groundwater pumping in Siskiyou County and the pumping and discharge of groundwater that results in the waste and unreasonable use of groundwater on Illegal Cannabis Cultivation is a threat to the public health, safety and welfare, and requires immediate action to curb such activity.

**SECTION 2**. Declaration of Urgency.

A.  Based on the findings set forth above, the Board finds and declares that there is a current and immediate threat to the public health, safety and welfare arising from the absence of a prohibition on the extraction and discharge of groundwater underlying Siskiyou County for use in cultivating cannabis in violation of the Siskiyou County Code.

B.  Based on the findings above, the Board of Supervisors determines that this ordinance is urgently needed for the immediate preservation of the public peace, health, safety, and welfare pursuant to the Government Code section 25121 and 25131.

**SECTION 3**.  Chapter 13 of Title 3 is hereby amended to add Article 7, which Article shall read as follows:

Article 7. –  Waste and Unreasonable Use.

Sec. 3-13.701. – Wasting Groundwater.

The Board of Supervisors finds that the extraction and discharge of groundwater underlying Siskiyou County for use in the cultivation of cannabis in violation of Chapter 14 or Chapter 15 of Title 10 of the Siskiyou County Code is (1) inconsistent with Article X, section 2, of the California Constitution and Section 100 of the California Water Code, (2) constitutes the waste and/or unreasonable use of groundwater, and (3) is a public nuisance and a threat to the public health, safety and welfare.

Sec. 3-13-702 – Wasting Groundwater Prohibited.

(a) No person or entity shall engage in the act of wasting or unreasonably using groundwater by extracting and discharging groundwater underlying Siskiyou County for use in cultivating cannabis in violation of Chapter 14 or Chapter 15 of Title 10 of the Siskiyou County Code.

(b) No person or entity shall permit the existence of any public nuisances, as defined in this Article, to exist on property in his or her ownership or possession and control.

(c) No person shall knowingly use water extracted in violation of this section.

3

Sec. 3-13-703 – Enforceability.

    (a) Violations of this Article are unlawful and shall constitute a public nuisance and may be enforced and abated through any available remedy provided by the Siskiyou County Code, including Article 6 above, or any other law.

**SECTION 5**.  Authority/Effective Date:

This is an urgency ordinance within the meaning of Section 25131 of the Government Code and an ordinance for the immediate preservation of the public peace, health and safety within the meaning of Section 25123(d) of the Government Code, which shall be passed immediately upon introduction, and shall take effect immediately upon a four-fifths vote.

**SECTION 6**.  Publication.

This ordinance,  within 15 days of adoption, shall be published once in a newspaper of general circulation, printed and published in the County of Siskiyou as required by law.

**SECTION 7**.  Severability.

If any section, subsection, sentence, clause, phrase, or portion of this ordinance or the application thereof to any person or circumstance is held to be invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the remaining portions or other applications of the ordinance, and the provisions of this ordinance are declared to be severable.

**SECTION 8**.  CEQA.

The Board of Supervisors hereby finds that this ordinance to prohibit the waste and unreasonable use of groundwater is not subject to review under the California Environmental Quality Act (CEQA) pursuant to CEQA Guidelines section 15061, subdivision (b)(3) (there is no possibility the activity in question may have a significant effect on the environment).  In addition, the Board of Supervisors further finds that the ordinance is categorically exempt from review under CEQA under the Class 8 Categorical Exemption, 14 CCR § 15308, (regulatory activity to assure protection of the environment) and Class 7 Categorical Exemption, 14 CCR § 15307, (regulations and restrictions on activities to assure the maintenance, restoration, or enhancement of a natural resources).

        PASSED AND ADOPTED this 4th day of August, 2020, at a regular meeting of the Board of Supervisors by the following vote:

AYES:       Supervisors Criss, Haupt, Valenzuela, Nixon and Kobseff
NOES:       None
ABSENT:   None
ABSTAIN:  None

                          _____ Signature on file _____
                          Michael N. Kobseff, Chairman,
                          Board of Supervisors

ATTEST:
LAURA BYNUM, CLERK,
Board of Supervisors

By _____Signature on File_____
                Deputy

# EXHIBIT D

RESOLUTION NO. ____

**RESOLUTION OF THE BOARD OF SUPERVISORS**
**OF THE COUNTY OF SISKIYOU SETTING FORTH ROADS INCLUDED WITHIN**
**SISKIYOU COUNTY CODE SECTION 3-4.1501**

WHEREAS, the County finds pursuant to Vehicle Code Section 21101(c), a county may regulate the types of vehicles it allows upon highways within its jurisdiction.

WHEREAS, pursuant to Government Code section 25123, the County has enacted an ordinance for the immediate preservation of the public peace, health, or safety;

WHEREAS, the board of supervisors adopted an urgency ordinance and regular ordinance on May 4, 2021 amending chapter 4 of title 3 to add article 15;

WHEREAS, Section 3-4.1501 provides that the County may restrict Water Trucks, as defined therein, from certain specified county streets and highways;

NOW, THEREFORE, BE IT RESOLVED that the Siskiyou County Board of Supervisors hereby prohibits Water Trucks, as defined in the above-referenced ordinances, from the following County streets (as defined in California Vehicle Code Section 590) and highways (as defined in California Vehicle Code Section 360):

**<u>Butte Valley</u>**
Picard Road
Matthews Road
Redrock Road
Meiss Lake-Sam's Neck Road
Richardson Road
Meiss Lake Road (beginning with intersection of Cook-Campbell Road and continuing west.)
Dorris Tecnor Road (beginning at the intersection of Sheep Mtn Road then south)
Sheep Mountain Road


**<u>Big Springs</u>**
County Road A-12 (east of Big Springs Road between Big Springs Road and Highway 97)
Big Springs Road
Harry Cash Road

1

BE IT FURTHER RESOLVED, that said prohibition shall not be enforceable unless and until signs have been placed alongside the street or highway so as to warn drivers of the prohibitions.

PASSED AND ADOPTED by the Siskiyou County Board of Supervisors at a regular meeting of said Board, held on the 4th day of May, 2021, by the following vote

AYES:
NOES:
ABSENT:
ABSTAIN:


_____
Ray A. Haupt, Chairman
Siskiyou County Board of Supervisors


ATTEST:
LAURA BYNUM,
COUNTY CLERK


By _____

2

# EXHIBIT E



Areas of Marijuana Cultivation Identified in 2021 Strategic Plan

Areas affected by Water Ordinance.

