# CHRIS CONRAD
*— Consultant, Author, Court-qualified cannabis expert, Professional services —*
PO Box 21106, El Sobrante CA 94820 USA • www.chrisconrad.com
Phone: 510-275-9311 • Email case@chrisconrad.com

Report Date: July 12, 2021

To:     Raza Lawrence, Attorney at Law

Re:     Shasta Vista residents v Siskiyou County, Case 2:21-cv-00999-KJM-DMC

Dear Counselor;

Pursuant to your request, I am writing to memorialize my observations in the above matter.

1)   I have reviewed more than 2500 cannabis investigations, at least 42 of those in Siskiyou County, and qualified as a cannabis expert at least 350 times in at least 35 California counties, as well as in multiple federal courts and other States. At least eight of those qualified testimonies were in Siskiyou County. This can be detailed by viewing my curriculum vitae, available as a download from www.chrisconrad.com.

2)   I have reviewed at least 33 cases involving aerial surveillance for cannabis gardens.

3)   I have received training in marijuana cultivation at the Sensi Seed Bank gardens in Holland, Oaksterdam University and numerous conferences and public events. I have taught cultivation at events including national NORML conferences, the Hemposium stage at Seattle HempFest, several High Times' Cannabis Cups and multiple other cannabis-themed events.

4)   I am advised that Siskiyou County Ordinances 20-13, 21-07 and 21-08 ban the sale of groundwater by local farmers to water truck operators who serviced the Shasta Vista Subdivision, which is located in the northeast portion of the county, and ban any vehicles carrying over 100 gallons of water on a list of roads in a separate Resolution, including the roads leading to the Shasta Vista Subdivision, effectively limiting drivers in that area to a maximum of 100 gallons of water per vehicle trip in order to dry up marijuana gardens believed to be concentrated in that area.

5)   I have reviewed numerous documents your office provided in this matter, including the Siskiyou County Sheriff Department's Fiscal Year 2021 Annual Strategic Plan, attached here as Exhibit A, which identifies numerous known, large-scale cannabis cultivation areas not subject to the water truck ban in the Siskiyou County Ordinances, and states that

the Shasta Vista Subdivision contains an estimated 80 cannabis cultivation sites out of an estimate of upwards of 2,500 cannabis cultivation sites in the County.

6) Based on my experience, likely cannabis grows can be identified in satellite images on Google. I reviewed and examined the images provided to me by your office in the form of a document entitled, "Siskiyou County Cannabis Grows.pdf," attached here as Exhibit B, which I have independently confirmed are satellite images on Google in the Hornbrook, California area, which is not one of the areas subject to the water truck ban. It is my opinion that these images show numerous large cannabis grows on Wolverine Road, Clark Road, and White Plain Road.

7) I find those images to contain images similar to and consistent with those provided by law enforcement officers around the state in affidavits in support of search warrants and presented as credible evidence of large-scale cannabis cultivation operations.

8) They are likewise consistent with images depicted in "Domestic Cannabis Intelligence Overview," a Siskiyou County Sheriff's Department report attached here as Exhibit A alleging concentrations of large-scale cannabis cultivation operations in the Shasta Vista Subdivision, which was apparently used as the basis for taking action to cut off its access to trucked-in water.

9) These images individually and collectively are consistent with the strong probability that ground water has been and is being used to irrigate numerous, large and densely-concentrated cannabis gardens in other areas of the county, not subject to the water truck ban, including along the roadways depicted in the document, "Siskiyou County Cannabis Grows.pdf," attached here as Exhibit B.

10) You have furthermore provided me with documents / business records for this case that include the affidavits of Lynn Enloe, Edward Szendrey, Stephen Griset previously filed with the Court in this case.

11) Mr. Edward Szendrey stated in his affidavit that he reviewed public records, visited the area, and interviewed locals, and that "Water from the Ellison farm also services the Shasta Vista subdivision."

12) Mr. Stephen Griset, the well operator, stated in his affidavit, "In the early 1960s, when the land was subdivided, an easement was established that would allow water to be pumped from a well on the 283-acre parcel to the Mount Shasta Vista Subdivision. … Water I provided to water trucks never exceeded the same amount of water I pump every year from April to October, for irrigation."

13) Mr. Lynn Enloe, a groundwater expert who specializes in this field, stated in his affiavit, "All these wells have been producing for fifty years without affecting any water table.

The wells on the Griset and Ellison farms are not affecting the water table. … The source of the aquifer in question is melted snow from the north side of Mt. Shasta. Mid-summer, there is still frozen snow on the mountain. Because of being so close to the source, this aquifer is replenished much more quickly than other aquifers with further sources."

14) Mr. Szendrey also interviewed Mr. Enloe and encapsulated their conversations in his affidavit. He included Enloe's observation that local water "shortages are not due to water use by the farmers. He reported the farmers consume the same amount of water each year regardless if it is sold to others or used on their crops. The water being sold is diverted from crop production. These farmers turn on their pumps in the spring and turn them off in the fall and during the time the pumps are on, water is pumped continuously."

15) As to the water being used for crop production, purchasing water for growing cannabis would consume less water than many other common agricultural crops and products.

16) I am aware that law enforcement often relies on an out-of-date and discredited 2015 report by the California Department of Fish and Wildlife claiming that cannabis plants require five to 10 gallons per day every day of their growth cycle. Only rarely, during the final phase of its flowering cycle, does a plant consume anything close to that amount per day. In fact, a seedling may require less than half a cup of water per day and an adult plant may consume less than a gallon a day at its peak usage.

17) A 2020 report from New Frontier Data in partnership with Resource Innovation Institute and the University of California, Berkeley, concludes that "while the state's orchards use nearly 7 million acre-feet of water, and rice fields use nearly 5 million acre-feet, the state's lucrative cannabis industry only uses 3,000 acre-feet, making it the most water-economical crop among the state's top revenue crops." (https://info.newfrontierdata.com/cannabis-h2o)

18) Swami Chaitanya is a Northern California cannabis cultivation expert, who provides the following calculation on water consumption for cannabis, as a farm crop, using an eighth of an ounce of dried flowers, about 3.5 grams, as a typical serving size for marijuana. "Each eighth then requires 1.875 gallons of water (24,000 gallons divided by 12,800). It has been widely reported that producing a pound of beef requires at least 1,500 gallons of water. Wine uses between 180 and 400 gallons per bottle. Almonds need one gallon per nut or about 100 gallons per can, broccoli takes about five gallons per head and avocados about 75 gallons per pound."

19) Natalynne DeLapp, executive director of the Humboldt County Growers Alliance, recently said that, "Another way to look at thirstiness is to consider how much output is

produced by a single gallon of water. For other crops like tomatoes, lettuce or almonds, a gallon of water produces between a tenth of a cent to two cents of value in yield. For cannabis, a gallon of water produces nearly $7 worth of value. In that sense, cannabis is by far the most water-efficient agricultural product in California."

20) Van Butsic and Ted Grantham are co-directors of University of California Berkley's Cannabis Research Center and adjunct fellows at the Public Policy Institute of California's Water Policy Center, who published a recent study on the topic.

21) Their report, "Water Use in Cannabis Agriculture" (https://crc.berkeley.edu/wp-content/uploads/2020/12/CRC_Brief_WaterUse_2020_1205.pdf) states that, "Cannabis uses a similar amount of water per acre as other agricultural crops in California" Bustic noted that, based on their study, "Legal outdoor production uses about the same amount of water as a crop like tomatoes."

22) California NORML calculates an average of 0.72 gallons of water is needed to produce a gram of marijuana, no matter how many plants are grown or how big they are. Smoking a "joint" of cannabis consumes about 1/2 of a gram, meaning a dose of smoked marijuana requires less than half a gallon of water. A hamburger requires over 100 gallons of water to produce, and a serving of rice takes around 50 gallons. (https://www.canorml.org/cal-norml-challenges-fish-wildlife-figures-on-marijuana-water-consumption/).

23) Moreover, it must be noted that growing cannabis for personal use does not require any more water than growing it for commercial purposes and that people require water for other domestic purposes, not merely to grow garden crops.

24) Szendrey cited data in his affidavit showing that housing "4,000 people in the Siskiyou County Hmong community would require 329,200 gallons of water a day for domestic use using the nationwide average, or 469,000 gallons of water a day (4,960 truckloads of 100 gallons each) using the California average. … The current ordinance bans over 100 gallons of water from being transported on certain roads without a special permit."

25) That domestic usage requires delivering more than one truckload of water per resident per household per day, generating an enormous amount of vehicle traffic in the affected area, being imported from farther away.

26) I am informed by the *People v Kelly (*S164830*)* decision, as well as *Trippet, Mower* and *Wright,* that the quantities in HSC 11362.77(a) represent a safe harbor, not a limit on patient immunity, and that HSC 11362.5 qualified patients in California have limited statutory immunity to lawfully possess and cultivate a reasonable amount of cannabis that is necessary for a patient's medical purposes.

27) Szendrey observed in his affidavit that "Shasta Vista Subdivision [comprises] residents, the majority of whom are of Hmong descent. Currently over 1,000 persons of Hmong descent own and live on lots within the subdivision, and approximately 4,000 persons of Hmong descent live in Siskiyou County."

28) As a cannabis expert witness, I have worked on a number of cases involving Hmong people's use of medical marijuana and I am aware that they often use techniques like cannabis flower baths, which require significant amounts of cannabis.

29) California HSC 11362.77(b) provides that a physician may authorize a greater quantity as being within the statutory safe harbor to meet a particular patient's medical need.

30) I have personally examined and corroborated physician approvals for up to 99 plants per patient and, on rare occasion, more than that.

31) I am highly sensitive to and respectful of the County's desire to conserve water and protect the water table, and offer some specific suggestions regarding gardening.

32) For purposes of reducing water use in gardens, options exist for growing any crop. Greenhouses reduce transpiration and evaporation of moisture. Farmers can use rain catchment, or even drainage recapture / re-use, which may require filtration. Outdoor growers can use mulch, humus, compost, worm castings, compost tea and other natural systems to retain moisture by building the soil's health.

33) Specific to cannabis, water can be saved by using light deprivation grows or auto-flower plants harvested before heat of fall, then the land left fallow. Likewise, using feminized cannabis seeds and pre-sexing plants will prevent water resources being used for male plants that will only be culled from the garden.

I, Chris Conrad, declare under penalty of perjury that the foregoing is true and correct except as to those matters stated under information and belief, and as to those, I believe them to be true.

Sincerely,

Chris Conrad

# EXHIBIT A

Fiscal Year

2021

Annual Strategic Plan

State/Local Agency Name:

## I.　　Domestic Cannabis Intelligence Overview:

**A. Self Assessment** – Summary of the previous year's activities and if the agency met last year's Annual Strategic Plan goals (include general statistical and expense results).  Explain any reasons for a significant rise or drop of eradication statistics from previous season.

Siskiyou County's eradication efforts continue to focus on both the cultivation of marijuana on public lands and marijuana being cultivated on private property.  One full time Sergeant is assigned to marijuana investigations on both public and private land and one full time Detective is assigned to investigate marijuana cultivated on private lands only.

Public Land sites have increase for 2020.  I have done two flights in the Forest and located two large marijuana cultivation sites.   One on the Six Rivers National Forest and another on the Klamath National Forest.  These sites are schedule for entry and eradication at the end of the August.  A fire in the Humboldt County area has prevented me from following up on good tips on potential sites in the Trinity Alps Wildness area.  Hispanic continue to be the groups found cultivating marijuana on public lands.

Private land marijuana cultivation sites have exploded in 2020.  We have had issues for the past three years with private land grows.  In the past many of these were 99 plant outdoor marijuana cultivation sites.  In 2020 we have seen an explosion of greenhouses/hoop houses along with an increase in the number of plants being cultivated.  It appears that the first grows are going into the greenhouses/hoop house in early March.  These grows are being harvested fully mature in June and being replanted, for another harvest in September/October.  In addition to the outdoor plants that are put into the ground around mid to late June. The standard we are seeing consistently is two greenhouses and outdoor.  The

below photos are just a snap shot of one area they we are dealing with in Siskiyou County.  These photos were taken on 07/18/2002.  This is a brand new area we refer to as Stock Trail.  Prior to this year there was not one marijuana cultivation site in the area.





These photos are of an area refer to as the Mount Shasta Vista sub-division.   This is one 600-acre parcel that has been divided into 80 plus cultivation sites. In addition, it is safe to say that pretty much every parcel surrounding this one is being used for the sole purpose of cultivating hundred if not thousands of marijuana plants





We are dealing with all different ethnic groups (Hmong, Hispanic, Bulgarian, Caucasian and Chinese) on private land but have seen the largest increase in Chinese working at many private land sites. community. Siskiyou County Board of Supervisors declared a local state of emergency in October 2018, due to the large numbers of marijuana cultivation sites in Siskiyou County and the dangers they bring to the communities that are being effected. This local state on Emergency is still in effect.

At this point in the year 2020, Siskiyou County has eradicated 68,293 marijuana plants and seized 5022 pounds of processed marijuana. We have arrested 54 suspects related to the cultivation of marijuana and seized 11 firearms. The major increase has been in the U.S. Currency that has been seized to this point $188,469.00 has been seized.

For 2020 we received $128,000.00. We used $47,000.00 for contract helicopters to fly recon and long line missions. 27,000.00 is being used for the purchase of a UTV and $54,000.00 will be used to cover additional overtime expenses and miscellaneous equipment such as protective clothing/uniforms, gloves and boots. GPS units, chainsaws, cutters and other essential gear.

Without DCESP funds we would be forced to rely on county general funds. This would impose an extreme hardship on the county as the county is already facing a short-fall, in addition Covid 19 issues have effect our county financial issues greatly.

Honest self-assessment, I would have to say we are getting to about 10 percent of the cultivation sites in our county. I would estimate upwards of 2500 illegal marijuana cultivation site in Siskiyou County. Without funds we would be forced to rely on county general funds. This would impose an extreme hardship on the county as the county is already facing a short-fall in the current and last fiscal year.

We know the majority of the marijuana that is cultivated in Siskiyou County is being taken out of the state. We have assisted many Agencies from out of the state regarding marijuana investigations that originated from Siskiyou County.

**B. Current Projections** – Degree of problem in your Area of
Responsibility (AOR), general geographical locations of major
cultivation (regions/counties/towns/sub-division/parks),
identify/association of violators (individuals and organizations),
and level of sophistication (e.g., booby-traps/alarms, etc.)

I think Public Land sites will continue to be an issue, maybe not to the
extend they had been in the past but we will still need to be vigilant
for public land activity which would involve placing surveillance
cameras out on rural back roads and using contract helicopters for
overflights. Siskiyou County is the fifth largest county geographically
in California.  60 percent of Siskiyou County is comprised of five
National Forests, which include the Klamath National Forest, Shasta-
Trinity, Modoc, Six Rivers and the Rogue-Siskiyou.  We also have the
following wilderness areas, Marble Mountain Wilderness, Trinity
Alps Wilderness and the Russian Wilderness.   All these areas are
rugged and would be next to impossible to locate Public land
cultivation sites without the use of helicopters for overflight.

On Private Lands I foresee another increase in marijuana cultivation
sites.  We have major issues in three rural subdivisions known as the
Mt. Shasta Vista, Pleasant Valley Highlands and Klamath River
Country Estates.  I am also find more single rural sites on private land
then I had.  I know the adjacent land to the Stock Trail has recently
sold.  This is another very large parcel that had been a horse rescue
ranch.  I anticipate it being overrun with marijuana cultivation sites in
2021.

Unfortunately, the state laws of California do not provide much of a
deterrent for the illegal cultivation of marijuana to quote cultivators I
have dealt with "the reward is worth the risk".

### C. Percentage of Enforcement Spent On:    Public Lands vs. Private Lands

Outdoor Cultivation vs. Indoor Grows

|  |  |
|---|---|
| Public Lands 15% | Private Lands 85% |
| Indoor Grows 10% | Outdoor Cultivation 90% |

## II.    State / Local Eradication Suppression Program:
### A.  Agency Point of Contact (POC):
Name: Cory Persing
Title: Sergeant
Telephone No.: 530-598-2917
Email Address: cory.persing@siskyousheriff.org
Address Line 1: 305 Butte Street
Agency ORI Number: CA0470000
City: Yreka
State: CA
Zip Code Plus Four: 96097-

### 1.  Resources available from your agency: aircraft, manpower, funding, etc.

1 full-time Sergeant1 full-time Deputy and 3 part time Reserve Deputies (when available). For both Public Land and Private Land sites we seek the assistance of the U.S. Forest Service, Bureau of Land Management, California Fish and Wildlife, California National Guard, Environmental Scientist, California State Water Board, CAL DOJ Task forces and, other local allied agencies.

Air support is provided by private contractors. Helicopters are used for air reconnaissance of public lands and for long line missions in areas that we are unable to get trailers into, both public and private.  The private contractors are funded 100% by DCESP funds. Air reconnaissance is essential to our operations. Many private property sites are not being gate off denying access to the area.  The only way we make our observation of illegal marijuana cultivation is from the air

National Guard is used for reconnaissance on occasion and the California Highway patrol can assist when executing search warrant service and with very limited reconnaissance. We are also using CAMP for missions and depending on availability limited reconnaissance.

Siskiyou County is relying heavily on assistance from allied agencies for personnel as we have limited personnel ourselves and have difficulty just filling our patrol shifts.

Siskiyou County receives funding from the U.S. Forest Service and DCESP funds. These funds are used to cover Helicopter flight time, overtime pay and purchase much needed equipment such as uniforms, boots, hydration packs, cutter/loppers, gloves, surveillance cameras and essential gear that the county does not have budgeted and will not cover.

Siskiyou County currently has 4x4 vehicles assigned to marijuana team members, two dump trailers surveillance camera/trial cams. DCESP funds are used judiciously and are essential to the seizure of nearly 1/2 a billion dollars' worth of illegal marijuana plants and processed marijuana that would have ended up in various states and jurisdiction with in the United States.

2. **Methods your agency uses for eradication program: air search, informants, public awareness, intelligence, prosecutions, asset removals, etc.**

Siskiyou County uses CAMP, private contractors and I have used California Highway Patrol helicopters to long line loads. 90 percent plus of public land sites are located by helicopter reconnaissance. Approx. 50 percent of private land sites are located via helicopter overflight.

Personnel hike into public land sites attempting to capture suspects as much as possible. After the site is secure both private and public sites we have to do an evaluation of the grow site and determine if it is contaminated with pesticides or other chemicals. The plants are cut down by hand, depending on the location the plants are loaded by hand into nets and flown out to a landing zone where the

plants are loaded into a dump trailer or dragged by hand and hand loaded into the dump trailer. The plants are then transported to a secure area to be destroyed.

Most cultivations site are located in extremely rugged terrain, which makes seizures extremely difficult.

The past years we have improved our capabilities by purchasing two dump trailers with DCESP fund. We also using are County Roads Department dump trucks and back hoes to increase our load capacities and reduce personal labor.

The mere cultivation of marijuana in California is a Misdemeanor crime. Which is commonly reduced by the courts depending on the severity. We are getting the best results for prosecution when we combine our efforts with California Fish and Wildlife Environmental Scientists and or the California Water Board. Violations of these agencies codes and regulations in conjunction with the cultivation of marijuana are felony violations that we have been working with our local District Attorney to pursue these violations.

**B. Who is your agency POC for the DEA Internet Capability Endeavor (DICE):[1]**
Name: Cory Persing
Title: Sergeant
Telephone No.: 530-598-2917
Email Address: cory.persing@siskiyousheriff.org
Address Line 1: 305 Butte Street
Address Line 2:
City: Yreka
State: California
Zip Code: 96097

**Summarize how your agency will, with its own law enforcement personnel and employees, perform the activities and duties described below:**

1. **Gather and report intelligence data relating to the illicit cultivation, possession, and distribution of cannabis**.

Detectives assigned to this position maintain files on all suspected illegal marijuana activities, received from the public, informants, patrol contacts, and self-initiated operations. This information is disseminated with other agencies both federal and local; Detective will enter stats in DICE and forward information to the DOJ fusion centers in Oregon and California. Information will be evaluated and shared with applicable intelligence gathering sources such as WSIN.

2. **Investigate and report instances involving the trafficking in controlled substances**.

Each Detective is required to generate a report on all suspected illegal activities; cases will be worked using the appropriate resources. Narcotic investigations are frequently initiated by patrol division, which are then forwarded to the Detectives for further investigation. Typically, these cases require multi-agency efforts, through regional cooperation to be successful. Siskiyou County has developed a working information-gathering relationship with all state and federal agencies within the county, and within the state of Oregon. Siskiyou County currently is a member of a regional marijuana suppression program with Shasta and Tehama counties. The county is an active member within the NSMIT program, which allows for further investigation outside of Siskiyou County.

3. **Provide law enforcement personnel for the eradication of illicit cannabis located within AOR.**

Eradication efforts are handled with Siskiyou County personnel and the assistance of local, state and, federal agencies. Our staffing level are so low that we cannot dedicate any further personnel then the Detectives that are assigned to the marijuana team. Deputies and Jail staff volunteer for overtime to come out and assist with eradication.

4. **Make arrests and refer to the appropriate prosecutorial authority cases for prosecution under controlled substances laws and other criminal laws.**

We believe in attempting to arrest suspect's at all illegal marijuana cultivation sites with the option of citing the suspects with a court date or filing charges with the District Attorney's Office, depending on the violations that are found. In the past several years all of our public land arrestees have been prosecuted federally.

5. **Send required samples of eradicated cannabis to the National Institute on Drug Abuse (NIDA) Potency Monitoring Project**.

Random samples are collected throughout the season from both outdoor DTO sites and indoor and/or greenhouse commercial operations that are suspected to yield high percentages, for submission to NIDA.

6. **Submit to DEA quarterly expenditure reports.**

Quarterly reports will be submitted by the Department Fiscal Officer and stats will be entered in DICE by Detectives.

C. **Requirements for DEA Funding:** denote amount of funding for each category requested by your agency to accomplish program goals. *Note: Final allocated funds will be determined by DEA/HQS and is based on the agency's abilities, effectiveness, and program objectives.* ***All expenditures for equipment and supplies/materials will require prior approval by DEA Headquarters.***

| Operational Funds | Amount |
|---|---|
| a. Aircraft Expenses | $70,000.00 |
| b. Clothing & Protective Gear | $5,000.00 |
| c. Container/Space Rental | |

      **d. Equipment[2]**                                     **$15,000.00**

      **e. Miscellaneous Commercial Contracts**

      **f. Overtime**                                        **$60,000.00**

      **g. Supplies/Materials[2]**
      **h. Training**
      **i. Travel/Per Diem**
      **j. Vehicle Rental**
                                **Total**           **$150,000.00**

    **D. Audits:** Grantees and sub-grantees are responsible for obtaining audits in accordance with the Single Audit Act of 1984 and federal agency implementing regulations. An independent auditor, in accordance with generally accepted government auditing standards covering financial and compliance audits, shall make the audits

<b>Date of agency's last audit:</b>

**III.   Explain how your agency plans to coordinate with other Government Agencies (Program Participation and Resource Commitments):**

    **A. U.S. Forest Service**

Informational sharing, and operational planning, and mission execution through combined resources, coordinated parallel investigations and interdiction operations of high drug trafficking areas. A large percentage of the county topography is public lands administered by USFS law enforcement. Siskiyou County has limited resources and depends heavily on outside assistance from State and Federal agencies. I have a close working relationship with the local forest service personnel.

### B. Bureau of Land Management

Information and case investigation will be conducted with BLM in the same manner as it is with USFS.  I again have a close working relationship with BLM personnel.

### C. National Guard

Siskiyou County has been coordinating successfully with the California National guard for air assets for several years. Both fixed-wing and helicopter over flights have been used resulting in substantial success to the eradication missions. The Marijuana Team would like to request additional air and ground support to assist with cartel operations. The use of CDJTF resources is instrumental in intelligence gathering, interdiction, and execution of these missions. California National Guard has been instrumental in our private property operations by providing ground personnel to assist with eradication efforts

### D. Civil Air Patrol

Siskiyou County rarely interacts with Civil Air Patrol but does maintain a list of resources


IV. **Explain how your agency will support Statewide Intelligence Sharing:**
   **A. Central repository or collection ability for eradication statistics.**

Detectives routinely submit information to California DOJ fusion centers for dissemination, monthly statistics are submitted to DEA. Currently Siskiyou County is a member of the North State Marjory Investigative Team with DOJ, BLM, DEA and CHP. WSIN component is utilized for de confliction and information sharing

**B. Intelligence and trends (cultivators, traffickers, distribution, etc.)**

Siskiyou County has been actively involved with sharing of intelligence with state and federal agencies. Historically suspects have been making supply runs from the Central Valley areas of California, to Siskiyou County marijuana gardens. Currently Siskiyou County has an agent /officer assigned to the NSMIT program, as a member of this regional task force it is anticipated these combined resources will continue to assist in the dissemination of information and facilitate eradication and prosecution efforts.

**V.    List equipment your Agency proposes to purchase this year with DCE/SP Funds:**

I will be requesting to purchase and enclosed trailer approx. 16 foot in length approx. $15,000.00, to store the recent UTV purchase in.  We are very limited in covered storage.  An enclosed trailer would allow us to store and protect the UTV and all essential equipment out of the elements.  It would also allow for a quicker and more efficient deployment with the UTV and all essential gear stored inside one trailer.

> *Note: DCE/SP funds are intended to be used to purchase supplies and equipment directly related to the program activities.  Though equipment/supplies may be specifically itemized in the Annual Strategic Plan, they **are not automatically approved** for purchase.  LOA equipment purchases **should not exceed 10%** of its allocated funds.  Any exemption require DEA Headquarters approval.  **All expenditures for equipment and supplies/materials will require prior approval by DEA Headquarters.***

**VI. Training Requirements:**
    **A.** Name of Agency Training Coordinator:
    Name: Lt. Darrell Frost
    Title: Lieutenant
    Telephone No.: 530-842-8300
    Email Address: darrell.frost@siskiyoucountysheriff.org
    Address Line 1: 305 Butte Street
    Address Line 2:
    City: Yreka
    State: California
    Zip Code: 96097

    **B.** Describe any training your agency intends to conduct this year to include cannabis detection and eradication schools for other Federal agencies, National Guard, and state/local officers.[3]

Helicopter short haul certification and recertification spring 2020

Educate personnel being used to make entry and eradicate marijuana of the dangers presented by the chemicals that are being used in these sites and how they can affect the individual's health. Educate personnel on steps that should be taken to clean equipment and prevent exposure to their families.

Medical marijuana training to educate investigators how to tell the difference between marijuana possessed for medical need and that possessed for the purpose of sales. This is required in the state of California to testify as an expert.

**VII. Targeted Investigatons:**
    **A. Summary of law enforcement activities which your agency is conducting and/or plans to initiate during the year.**

Siskiyou County will utilize the following programs and operations to augment the eradication effort:

Seize/forfeit assets and proceeds, including land derived from the cultivation and trafficking of marijuana, in accordance with federal and state guidelines.

Air and ground reconnaissance of suspected sites and areas of historical operations

Use of informants and buy programs

Promotion of public awareness through drug demand reduction programs

Gather and disseminate intelligence related to marijuana cultivation and trafficking activities. To identify individuals or organizations (DTO) who are involved and coordinate through appropriate agencies or resources.

Provide investigative support for cases having federal and state prosecutorial potential.

### B. Summary of special or enforcement operations that your agency intends on conducting during the year.

Multi-agency eradication and interdiction operations within both State and rural highways coordinated. Siskiyou County Sheriff's do the majority of on-highway interdiction in Siskiyou County and DCESP funds are used to supports theses operation.

 The department will increase its daytime and nighttime interdiction efforts especially within the Highway-96 and 97 corridors which are main arteries for drug trafficking. It is hoped that a multi-agency sweep of these area will be conducted during elevated activity levels.

The Sheriff s Department will coordinate with NSMIT, and surrounding counties to enhance eradication efforts through State and regional cooperation.

I plan on conducting more back to back multi day operations focusing on our problem areas combined with night time interdiction.

**VIII. National Environmental Policy Issues** (describe if applicable)[4]:

The environmental issues Siskiyou County is currently facing that are directly related to the cultivation of marijuana are the diversion of creeks and springs, moving water from one water shed to another water shed. The use of fertilizers and illegal pesticides, herbicides, rodenticides being used on both public and private lands. They are contaminating local creeks, stream and rivers. The dumping of trash, fuel and oil spills are all effecting the wildlife and watersheds in our area.

**For assistance, please contact your State DEA DCE/SP Coordinator or DEA DCE/SP Regional Contractor.**

---

**Signature and Date of Agency Official Approving Annual Strategic Plan**

(PLEASE SIGN IN BLUE INK)

Printed Name and Title of Agency Official Approving Annual Strategic Plan

KARL G. HOUTMAN, UNDERSHERIFF.

| FOOTNOTES |
|---|

1.  Web-based DEA Internet Capability Endeavor (DICE) and TFOs with Firebird access to the DEA Analysis and Response Tracking System (DARTS): Effective in 2012, all participants in the DCE/SP are required to use DICE or DARTS for reporting statistics (on each incident), submission or reportable intelligence, deconfliction, and for the sharing of information.
2.  None of the Asset Forfeiture Funds allocated to you may be used to purchase promotional items, gifts, mementos, tokens of appreciation, or other similar items. These will include items justified as training aids if they are embossed, engraved, or printed with the agency or program logos. **All expenditures for equipment and supplies/materials will require prior approval by DEA Headquarters.**
3.  Web-based DEA Internet Capability Endeavor (DICE) and TFOs with Firebird access to the DEA Analysis and Response Tracking System (DARTS: Effective in 2012, all participants in the DCE/SP are required to

use DICE or DARTS for reporting statistics (on each incident), submission or reportable intelligence, deconfliction, and for the sharing of information.

4. The National Environmental Policy Act (NEPA) requires federal agencies to consider the potential effects on the human environment of major federal actions. Pursuant to NEPA, DEA has published regulations under which manual eradication is normally categorically excluded from further analysis, while herbicidal eradication normally requires preparation of an Environmental Assessment (EA). Any proposed use or funding of herbicides should be described in this section.

# EXHIBIT B

# Clark Road, Hornbrook, CA



# Wolverine Road,  Hornbrook, CA





# Wolverine Road,  Hornbrook, CA



# Appolusa Place and Palamino Road, Hornbrook, CAA



# Whitepine Road, Hornbrook, CA



# Whitepine Road, Hornbrook, CA



# Whitepine Road, Hornbrook, CA



# Whitepine Road, Hornbrook, CA

