# SUPPLEMENTAL AFFIDAVIT OF EDWARD SZENDREY

I, EDWARD SZENDREY, do hereby declare:

1. I, Edward Szendrey, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and as to the matters stated upon.

2. I am licensed by the State of California as a Private Investigator. I have been investigating the Siskiyou County water issues and their impact on the community of Mount Shasta Vista since August 14, 2020.

3. I previously submitted declarations to the court regarding this case.

4. Siskiyou County asserts water truck owner/operators simply have to obtain a permit from the county in order to provide water to Hmong people to meet their basic living needs. The process is not as simple as the county asserts.

5. I obtained a copy of the County of Siskiyou, Department of Public Works, Special Use Form – Water Tender Permit. The permit allows a water tender to provide water to a specific destination for a stated purpose, on restricted roads.

6. County ordinances, however, require the individuals providing water to the water truck owner/operators to have a permit for groundwater extraction off-site from another county department.

7. I obtained a copy of the County of Siskiyou, Community Development Department, Application for Groundwater Extraction for Use Off-Site. (See Application for Groundwater Extraction, attached here as Exhibit A) The application is a four page document which requires a property owner to designate the parcel from which water is extracted and the parcel to which water is to be delivered and the owner of that parcel. The person receiving the water must be a property owner.

8. The vehicle delivering the water must also be identified in the application. The application does not provide for water to be delivered to other parcels by any other vehicle. The purpose of the use of the groundwater is required to be specified.

9. Page 3 of the application requires the property owner extracting the groundwater and the property owner receiving the water to declare under the penalty of perjury the permit is sought incidental to a lawful activity and not to aid in the cultivation of cannabis.

10. Page 4 is a Supplemental Information Sheet. It appears to allow additional property owners to receive water after the initial permit has been issued.

11. In other words, in addition to the Water Tender Permit, the water truck owner/operator must also have an agreement with a permitted property owner that specifies which parcels and parcel owners the water is to be distributed to. The permitted property owner must have a separate permit for each water truck owner/operator he or she provides groundwater to.

12. In a practical sense, to provide sufficient water for several thousand people and their animals and vegetable crops, it would take numerous permits to provide water to the Mount Shasta Vista subdivision.

13. I have spoken with residents of the Mount Shasta Vista subdivision who fear providing owner and parcel information would open them up to warrantless inspection by the county. They further expressed concern that without a specific waiver, the property owner would be in violation for providing water that was being sent to another parcel. Another concern was possibly facing civil liability if anyone suffered harm getting water from them.

14. Because the water truck owner operators would have to traverse County Road A12 to service the Mount Shasta Vista subdivision, they would be subject to continuous law enforcement detentions and inspections of their vehicles.

15. On June 24, 2021, I contacted Siskiyou County Supervisor Michael Kobseff and Siskiyou County Sheriff Jeremiah LaRue by e-mail attempting to establish a dialog between the County and the Hmong residents of Mount Shasta Vista subdivision on the subject of water. In my request, I proposed the County set up water distribution centers at the fire stations near Mount Shasta Vista, in order to address the immediate concern of lack of water for personal use, for animals, and for growing vegetables. I understand the local fire stations have water tanks. I informed Kobseff and LaRue in my emails that not all the people affected by the new water restrictions grow cannabis, and that the residents of Mount Shasta Vista have no place to go to get water, much less get it legally, and that if someone with a well fills a bottle for their neighbor, they are in violation of the ordinance. I informed Kobseff and LaRue that many people in the Shasta Vista subdivision are desperate for water, and that there is a great humanitarian need that should be addressed. I did not

1   receive a reply from either Mr. Kobseff or Sheriff LaRue.  True and correct copies of the

2   emails that I sent to Mr. Kobseff and Sheriff Larue are attached hereto as Exhibit B.

3   16.  At the Siskiyou County Board of Supervisors meeting, on July 26, 2021, at which I was

4   present, Siskiyou County counsel proposed amendments to the water truck ordinance,

5   attached here as Exhibit C, suggesting that any application for a water truck permit would

6   potentially require the recipients of the water to give up their privacy rights.  The proposed

7   amendments state, in part: "In issuing permits, the Siskiyou County Community

8   Development Department, Environmental Health Division may require proof from

9   applicants that they possess any needed permits or licenses for the purported use for which

10  water is being delivered *and investigate whether a parcel to which water will be delivered*

11  *may legally conduct the activity for which the delivery is being made*" (emphasis added).

12  Exhibit C, at p. 2, § 3-4.1504(b).

13  17.  Attached hereto as Exhibit D is a true and correct copy of a photograph of a T-shirt that I

14  have determined is being sold in Siskiyou County to celebrate the Siskiyou County Sheriff

15  and his bulldozing of properties in Hmong communities.

16  18.  Attached hereto as Exhibit E is a true and correct copy of a letter that I sent to Congressman

17  Doug LaMalfa on June 23, 2021, advising him of the humanitarian crisis that is developing

18  in the Mount Shasta Vista subdivision as a result of Siskiyou County outlawing water trucks

19  from servicing the subdivision, and requesting that he encourage the County to address the

20  immediate concern for water for the basic needs of the people living in the subdivision.

21  19.  On Monday, June 28, 2021, I received a call at 2:24 PM from Siskiyou County farmer Steve

22  Griset advising me the Lava Fire was entering the Mount Shasta Vista subdivision. Griset

23  informed me, however, that Cal Fire units were lined up on County Road A12 and not

24  entering the subdivision. Mr. Griset informed me he was opening his well for the Hmong

25  water trucks to get water.  He said he could only fill one truck at time because someone had

26  removed a valve from his second line. At 2:27 PM I received a call from Ntshuab Yaj who

27  advised me she would join Mr. Griset in coordinating the efforts of the water trucks. I

28  received an unconfirmed report the water truck drivers were being ordered to evacuate the

subdivision along with the other residents. 3

20. On Tuesday, June 29, 2021, I received a call at 8:50 AM from Mr. Griset who advised me that the power to the Mount Shasta Vista area was shut off around 2:00 AM which left him unable to continue pumping water to the trucks. Shortly after 9:00 AM, Mai Yang showed me a video recording of a Siskiyou County Deputy Sheriff speaking with Hmong persons. The Deputy stated that Cal Fire would not enter the subdivision unless all the Hmong evacuated. My wife Georgie Szendrey and I entered the Mount Shasta Vista Subdivision to observe the firefighting efforts to put out what is called the Lava Fire. We were driven through the area by Hmong residents of the subdivision. I observed areas within the subdivision to be burned and other areas that had not been affected by the fire. I observed Hmong residents putting out small fires with buckets of water, throwing dirt on burning trees, and dowsing spot fires with water from water trucks. I overheard cell phone communications where the Hmong were coordinating their firefighting efforts. We spoke with residents who had been up for over twenty-four hours fighting the fires. Our escorts made frequent stops to assist others in putting out spot fires. Several water trucks were involved in coordinated efforts to put out flare ups. In the two hours we were in the subdivision, I observed approximately thirty separate efforts to extinguish flare ups by the Hmong citizens. I observed where homes had been saved. I also observed a number of cannabis grows that had been destroyed. The Hmong made no effort to save the grows. Attached hereto as Exhibit F are true and correct copies of photographs that my wife took while I was with her in the Shasta Vista subdivision while the Lava Fire was burning.

21. At around 1:45 PM, I observed three Cal Fire Units at the home of Russel Mathis. It should be noted I know Mr. Mathis to be Anglo/Asian in ancestry. His appearance is Caucasian. I called Mr. Mathis and he informed me he had evacuated the night before, but returned in the morning and was allowed to return to his home with Cal Fire. For the next hour we traveled through many areas within the subdivision observing the efforts by the Hmong to put out the fire. At 2:50 PM I observed two Cal Fire engines with crews engaged in what appeared to be addressing an area that was still smoldering. At 2:55 PM, I observed five or six Cal Fire units stagged on Mt. Shasta Vista Road. They were not engaged in any active firefighting effort. My wife Geogie Szendrey took photographs in my presence (see Exhibit

F). I later spoke with local resident Darren Duck who lives on County Road A12 near the entrance to the Mount Shasta Vista subdivision. He advised me that on June 28, 2021, Cal Fire trucks were lined up on County Road A12 but were not entering the subdivision. However, he did observe Cal Fire units entering the subdivision on this day. I was informed Hmong water truck drivers had been prevented from coming into the area by deputies stationed at County Road A12 and Big Springs Road. At approximately 4:00 PM, I contacted a Siskiyou County Deputy Sheriff who was stationed at that location. He advised me that unless the truck drivers had a permit from Cal Fire they would not be let in. He advised me that the drivers would have to go to the Cal Fire command center in Weed to obtain the permit.

22. On June 30, 2021, Mr. Griset advised me power had been restored to west of him but not to his farm, the Ellison Farm, and the Shasta Vista Subdivision. He stated he could not believe the two irrigators who were in litigation with the county were the only ones without power at that time.

23. On July 1, 2021, at approximately 4:30 PM, Mr. Griset advised me the power was back on. He stated he heard in a media report that the lack of water was hampering Cal Fire's effort to fight the fire. He stated he was willing to fill the Cal Fire trucks and was wanting to get that message to them. After several unsuccessful attempts to reach Cal Fire by phone I was able to connect with a dispatcher at the City of Weed Police Department. The dispatcher told me she had direct contact with Cal Fire and would pass on the message. I learned from a reliable source the message was also given to the public information officer of Cal Fire.

24. On July 6, 2021 I spoke with Shannon Spencer of the Ellison Farm. She stated the Ellison's had made a similar offer to Cal Fire. She said however, a fireman with Cal Fire, who had received water in the past, told her he was told by a Deputy Sheriff not to get water from the Ellison's. Cal Fire did not comply with the Deputy Sheriff and serviced their trucks from the Ellison's well.

25. Based on my investigation, the Grisets' and Ellisons' wells are two of the highest producing wells in Siskiyou County. Both are in close proximity to the Lava Fire. Both have been a

5

DocuSign Envelope ID: 928A09E4-2826-4E10-9158-3AE42E517145

target of Siskiyou County's water ordinances and are currently in litigation with the county. As of the date of this affidavit, Cal Fire has not taken either of them up on the offer of water to help fight the local fires.

26.     As of the date of this affidavit Cal Fire has not taken Mr. Griset up on the offer of water to help fight the local fires.

27.     On July 6, 2021, I met with Bao Kelly Xiong and interviewed her regarding her vehicle being seized when she was transporting water to her home on June, 18, 2021. Ms. Xiong lives in the Mount Shasta Vista subdivision of Siskiyou County. Ms. Xiong stated she is 54 or 56 years old, she is not sure. She lives alone and her only income is that provided to her by her children.

28.     Ms. Xiong stated since the restrictions on water have been imposed for residents in the Mount Shasta Vista subdivision she has had to beg and borrow water to meet her personal needs. On the night of June 18, 2021, she went to a friends for water. She stated she has two orange containers she normally uses to transport water in her pickup truck. She does not know exactly how many gallons of water they collectively hold but her friends told her it is less than 100 gallons, and she could carry more. Based on what her friends told her she bought what she described as a 30-gallon black trash barrel which she also filled with water. Ms. Xiong said she had two medium sized ice chests which she decided to fill with water as well. She had no idea exactly how much water she had.

29.     That evening at 9:00 PM, Lake Shastina Police Officer M. Yates, #408, stopped her on Big Springs Road. She stated the officer asked her for her drivers license and insurance. He told her she was over the limit of water allowed. She said she offered to dump the excess water. Ms.Xiong stated the officer told her to get out of her vehicle "for paperwork."

30.     Ms. Xiong stated after exiting her vehicle the officer had her sit in the back of his patrol car. The door was locked. After she was placed in the back of the patrol car the officer searched her vehicle. He removed a small suitcase and her purse from the vehicle. She said he then searched through the suitcase which contained her traditional Hmong costume and silver neckless. He then opened up her purse and searched it.

6

31. The officer then had a tow truck come and tow her vehicle away. She said she had some cooking utensils and other things she recently purchased inside the vehicle. Her keys to her home were also on the key ring which was in the vehicle. The title to her property was also in the vehicle.

32. Officer Yates issued her a citation for a violation of Siskiyou County Ordinance 3-4-1501, Carrying more than 100 gallons of water on Big Springs Road. The citation noticed her to appear in court on August 10, 2021. He also issued her a property receipt for her vehicle. It should be noted the property receipt does not mention the water containers or their capacity.

33. Ms. Xiong stated that while sitting in the back of the patrol car her heart started beating fast. After the officer let her out of the patrol car her heart continued to beat fast, she started feeling chest pains, and suffered cramps in her arms and legs. She said she pounded on the officer's window asking for help. Officer Yates told her not to be scared as he was not going to arrest her. The officer did call for fire rescue and an ambulance which arrived. They offered to take her to a hospital, but she declined. The nurse told the officer Ms. Xiong was probably scared. Ms. Xiong said the firemen remained with her until her daughter, True Lee could arrive to take her home. She stated she was unable to eat for a week after the incident. She stated she has never been in trouble with law enforcement before. Ms. Xiong stated her vehicle was her only mode of transportation. Ms. Xiong has a language barrier. He primary language is Hmong. She stated she understood about 80% of what the officer said.

34. Ms. Xiong was born at the military headquarters of the U.S. Secret War in Long Chiang, Laos. Her father was a soldier in the U. S. Secret Army. Her mother passed away when she was five or six years old. She fled with her father and they lived in the jungle. In 1979 they crossed the Mekong River into Thailand on a long raft. She said they were very poor and lived alongside of the river for some time before being taken to the refugee camp at Ban Vanai. She attended high school in Ban Vanai where she met her husband. She was thirteen and her husband was sixteen when they got married. They lied about their age so they could qualify to go to the United States. In June of 1984 they came to the U.S. and settled in Rochester, Minnesota. She lived in Arkansas for nine years then moved to

DocuSign Envelope ID: 928A09E4-2826-4E10-9158-3AE42E517145

Sacramento, California. Four years ago, she divorced her husband and purchased property in Mount Shasta Subdivision.

35. On Tuesday, July 6, 2021, I received a phone call from Mee Vang asking me to come see her property which suffered damage in the Lava Fire. I met with Mee Vang, her husband Vang Vang, son Brandon Yang, and Daughter in Law Gao Lor at 13554 Heinzelman Road which is located in the Mount Shasta Vista subdivision. Located on the property is a triple wide modular home which appeared to be in the process of being installed on the property. The home did not appear to have suffered fire damage, however the area surrounding the house had sever fire damage. In addition to trees and vegetation I observed the remains of what appeared to be the top of a well, and air conditioner, and two large water tanks destroyed by the fire.

36. I also observed a what appeared to be a small dwelling, a number of out buildings, appliances, and furniture to be completely destroyed by fire. I observed an open shipping container which was damaged in the fire as well.

37. Brandon Yang said he spent his life savings on the triple wide modular home. He described the fact it came out of the fire with no real damage as a miracle. He said the home was moved onto the property only three weeks earlier. He is in the process of finishing the installation. Gao Lor stated the storage container was full of new furniture and appliances which were destroyed in the fire. She also pointed out the well and stated the pressure tank, pump controls, and filter were destroyed in the fire.

38. Mee Vang and Vang Vang pointed out the remains of the temporary dwelling in which they were living. They said all their possessions were destroyed.

39. Brandon Yang lamented that it was not far from his home Hmong water trucks were stopped by Sheriff's deputies and not allowed to fight the fire. He believes if they had not been prevented from fighting the fire his possessions would not have been lost.

40. Attached hereto as Exhibit G are true and correct copies of photographs that my wife took in my presence in connection with my interview with Mee Vang and her family regarding their loss from the fire.

41. On July 8, 2021, I interviewed Zurg Xiong, age thirty-three, by phone. At the time of my interview, Zurg had stationed himself in front of the Siskiyou County Courthouse in Yreka, California, and was on the third day of a hunger strike. Zurg is protesting Siskiyou County's response to the Hmong population of the Mount Shasta Vista Subdivision.

42. I asked Zurg what his purpose was of going on a hunger strike. He replied; "As a very small minority group, even among the majority Asian group, our voice has been silenced by the local government here. The Board of Supervisors and the specially appointed, not elected, Sheriff LaRue, have been spreading propaganda and rumor. And they killed one of our brothers. And it's the killing of our Hmong brother. He's not my brother, but he's our brother. I don't even know his name and I don't even know his face. But that murder was the culmination of the escalation of tensions between our small Asian community and the wider predominantly white community. These tensions have been actively stoked, encouraged and maybe even unofficially directed by the local government. We have seen threats of mass arson, domestic terrorism from locals like there are on Siskiyou County Sheriff's Office, Facebook page. They've been using vigilante volunteers, many of them I suspect are white supremacists. Anti-Asian groups from Washington and Oregon to come in, come to our private roads and destroy our private property, unconstitutional acts. And this all started from LaRue being appointed and saying, look, go after the water. Now, I don't know about you, but a specially appointed Sheriff in a position of such power by a Board of supervisors, five or six people who says go after the water. That sounds like a tyrannical, despotic future to me. It's a government overreach. And I honestly believe it's an unconstitutional attack on human rights. And they initiated all of this because of that. So the tension started when that happened. And then we had a protest a few months ago. When we went marching, I actually said in my speech. I said they're going to go after the water. They're going to burn us out because they've been threatening to burn us out. And then one of the police officers are going to shoot us dead because of the tensions are so high. And that's exactly what happened. And that happened at the same time. And they're lying about it. They're lying about it because they know that they control the media here, the local media. They control the newspapers, and they know that our people we're so small, even among the Asian

1  minorities. And we have no money. We have no political clout. We have no media contacts.

2  So the only thing I can do as a young leader for my people is to go on a hunger strike, the

3  most extreme form of nonviolent protest, to get our voice across, to get our side of the story

4  and to give us a platform. And I want to show the people who have been propagandized,

5  who've been lied to, that I am somebody that they didn't take seriously and I am somebody

6  who is willing to die to tell the truth.  Compare that to somebody like a specially appointed

7  unelected official, like La Rue and the Board of Supervisors of Siskiyou County who have

8  had an iron grip on this county for centuries. That's why I'm doing it. That's why I'm on

9  hunger strike. And I told these people I'm prepared to die in front of the American

10  courthouse just to prove the point that this is not justice."

11  43.  Zurg stated he has lived in Mount Shasta Vista Subdivision for nine months  I asked him to

12  take me step by step how things built up that brought him to his hunger strike.  He replied:

13  "So like I said, the Board of Supervisors and Sheriff LaRue, they come together and

14  conspiracy to deny us the right to transportation of water because they know we don't have

15  wells out there. They legally attacked the local ranches. Well, a well that we used as a

16  community a communal well. They've their water, their water ban. The ordinance

17  specifically targets the road surrounding our community. So I'm not, that's not hyperbole,

18  When I say that they stopped water from our area, they literally named the streets, the

19  streets surrounding our subdivision as the streets that you can't get water delivery and you

20  can't have water over ninety nine gallons or one hundred gallons. Six, seven showers worth

21  of water. And if you do, you're going to get hunted down by the Sheriffs, the Sheriff's

22  Office, like an animal.  And when the water ban went into effect, if you go on to the sheriff

23  page, they were galvanizing locals to become vigilantes and to assail any Asian person who

24  might have water. They closed off all the public areas where you can get water like the

25  springs in Shasta City. They wait there and they took the Asian people. I've seen police

26  squad cars at our local Hmong store waiting to ticket us if we have anything more than

27  ninety-nine gallons of water.   So this buildup of tension, this unconstitutional,

28  discriminatory act of government against our people already raise the stakes and raise the

tensions. Not only that, they've galvanized the community who already hates us, who have

SUPPLEMENTAL AFFIDAVIT OF EDWARD SZENDREY
DILEVON LO *et al.* v. COUNTY OF SISKIYOU *et al.*

dehumanized us to take action and to say, hey, we can do this and we'll get off scot free because the Sheriff's county, the Sheriff's Office isn't going to do anything about it. They're going to turn a blind eye. And like I said, maybe they're the ones actively encouraging this. So we've had threats of arson. They took away our water and they've had locals who aren't even officially police or anything like that come into our area. I've had one of my friends, colleagues, he actually went to a Patriot meeting and they admitted that they went to our private properties and our private roads and the local D.A. congratulated them for their courage.   So we've been assailed by the local community, not the whole community, the community who would be against us even if tomatoes are being grown in there. They believe that they have the full support of the tyrannical, despotic local government, Board of Supervisors and Sheriff LaRue. So they've been empowered to victimize us with violence. So when the fire came and we saw that the emergency services, Cal Fire, Siskiyou sheriff, weren't going to protect our property, we knew they weren't going to protect us. We've been predicting that they were going to try to burn us out the way they burned down Chinatown one hundred years ago.  We went back and we fought the fire to protect our own community, protect our own people. And as a result, they killed one of our people. And this, like I said, is a culmination of all the escalation perpetuated by the local government, the local tyrannical, almost dictator shit like Board of Supervisors and sheriff's office. And I want people to know that this is what happened. LaRue and the Board of Supervisors, like I want to reiterate, they think that they have a monopoly on the media and they think that we are voiceless people. But that's why I'm here doing this hunger strike."

44.   I asked Zurg if he has had any contact with the local authorities.  Zurg replied: "I did speak with the Sheriff deputies here who are in charge of the security of their new extravagant courthouse. But it's just been a conversation, a pleasant conversation about my rights and what I can and can't do on this property. But in terms of like official people from the city or the county, no, nobody's contacted me and I think they're probably scared to contact me."

45.   I noted this was the third day of his hunger strike which stated this past Tuesday after the Board of Supervisor's meeting.  Zurg responded: "Yeah. Unofficially, though, I started the day before that event in preparation, but officially. Officially."

46. I asked him how he was holding up. He replied: "I'm doing good. We actually had public health come here because they were notified that I was on a hunger strike. So they called in two nurses to check on my vitals. Pulse is good. Heartbeat good. Blood pressure's pretty high. It's one hundred fifty over one hundred. I'll give you that. And then I was sitting in the sun all day, so my temperature was about one hundred and two. But it was just it was like an external reading. It wasn't like in my mouth or anything. And I don't have any like feelings of illness or anything. And I don't have any signs of any sort of mental illness. I'm very cognizant. I'm very aware of what's going on. They can't diminish what I'm doing. I call it mental health issue. It's it's a purposeful movement."

47. I inquired about any media attention he may have received. Zurg stated: "I've had a few interviews with local news stations. Is that what you're talking about? I mean, right, I've had a few interviews with local media from maybe like the big cities in Oregon, like Medford. I've had independent people come, the independent news people from Sacramento, from he's public in public health and everything's public record. He came and he discussed with me and he asked me if I could if he could share my details and information with other outlets. I said, yes, sure. That the whole point is to get coverage. That's right. Yeah. No national news, but it's only day three. We'll wait until like eight, 30."

48. I asked if he had a cell phone of his own. Zurg stated he broke his phone fighting the fire and is using his mother's.

49. I inquired about his being involved in fighting the fire. Zurg stated: "That's why I'm really exhausted. I fought that fire all week with my brothers and sisters. Like I have witnesses to show that I was there fighting nonstop. We were exhausted. You couldn't sleep because of the fire.

50. I asked if he lost any property in the fire. He replied "No, I didn't lose any property. We were one of the lucky ones. The fortunate ones. Yeah."

51. On July 10. 2021, I spoke with Mike Sousa by phone. Mr. Sousa owns Mike Sousa Transport, and services the agricultural and commercial communities. He has been in the trucking business for twenty years. For much of the last five years, a large portion of his business has been hauling water in his commercial water tender.

SUPPLEMENTAL AFFIDAVIT OF EDWARD SZENDREY
DILEVON LO *et al.* v. COUNTY OF SISKIYOU *et al.*

52. Mr. Sousa stated he has to have a permit to haul water, the person who receives the water has to have a permit, and wherever he gets the water has to have a Goundwater Extraction Permit.

53. The county issued him a permit from Public Works allowing him to haul water on County Road A12 with no problem.   Two days later the same office called him and asked if he was available to haul water to someone in Shasta Vista.

54. The process went from Public Works doing the permitting to the county Planning Department doing the permitting.

55. He said the county has done everything they could to hold him up on getting a Groundwater Extraction Permit.

56. Mr. Sousa stated the Planning Department told him people were no longer required to get a permit to receive water, and that he would just have to let them know where he was taking it.  To complete the Groundwater Extraction Permit, they need to know the addresses where he was to deliver the water. He said he delivers to various customers and doesn't know where he is taking water until "his phone rings." To comply, he put addresses of properties owned by his uncle and property he owned, all in the Shasta Valley. They denied the permit saying these locations were not in the water basin. He said he doesn't always know what the water is used for, he is just in the trucking business.  He gets an order for water and he delivers it.

57. He spoke of a lady located in the Mildred area who had a permit to receive water.  The Mildred area is east of Mount Shasta Vista and south of County Road A12.  He said the lady has horses which require 20 gallons of water each day.  He was denied his Groundwater Extraction Permit because her location "wasn't in his water basin."

58. Mr. Sousa said he was told it was okay to haul water on County Road A12 to a construction job at the Weed rest area on Interstate 5 and to work being done on a Union Pacific Railroad trestle on Mount Shasta near the town of Weed.

59. He was told he could only deliver water that was in the Shasta Water Basin where his source of water was. He asked for a map of the Shasta Water Basin and was directed to speak with  Planning Director Kirk Skierski.  He inquired of Mr. Skierski as to the

13

boundaries of the Shasta Water Basin.  He said Mr. Skierski's response was the Shasta Water Basin is "huge."  He was told the construction jobs he was working on near Weed were in the Shasta Water Basin.

60. Traveling on County Road A12 to the construction sites, Mr. Sousa passed Mildred to get to those sites.

61. Mr. Sousa stated he has been to the Planning Department not less than ten to fifteen times "playing their game."  He said he kept on asking questions as to why his permit was not granted and received different excuses why it couldn't be issued.  He said his denial letter left off addresses he gave them and put addresses he did not apply for.  Mr. Sousa stated they left off the Union Pacific location off the denial letter.

62. He said the lady with the horses is named Christine.  He had been assisting the firefighting efforts and promised Christine when the evacuation was over, he would get her water. Mr. Sousa stated he put her address on a business card and looked up her APN number and put it on the card.  He presented the card to a clerk named Lisa at the Planning Department. He said he knew that if they just looked at a map, they would tell him "no."  Mr. Sousa suggested to Lisa the County have Code Enforcement Officer John Ankerberg go inspect the location and confirm she does grow marijuana, that she has many animals, and that is what she needs the water for.

63. Mr. Sousa stated the bottom line is they just did not want to issue the permit. His impression is they want to pick and choose who gets water.  It is okay to haul water for construction projects or for anything other than to provide the water to Asians.

64. He mentioned the water delivery request he got from Public Works.  He said he contacted the person he was delivering to make sure the water wasn't for any other purpose than he was told.   He was told the delivery was because the person said they had 50 chickens and a bunch of dogs. He told the person if was for anything but that he wouldn't haul to them again.  He stated that was exactly what the scenario was.

65. Mr. Sousa told of having a Union Pacific job at Grass Lake.  Not being allowed to travel on County Road A12,  he would have to travel to Medford Oregon, and cut across the

Cascades to Klamath falls for an extra four-hour drive. He contacted a Deputy Sheriff who relented and allowed him to travel on County Road A12 because it was fire-related.

66. Mr. Sousa said the County put him in an awkward position. Before May 3rd he hauled water to anyone requesting it. After May 3rd he was required to get permits. He made the delivery the county requested believing they worked to bring two people together. However, since he hauled the water requested by public works and people saw his truck was on the road, his phone hasn't quit ringing with people needing water. He can't comply with their requests.

67. Because of the demand he has for water, Mr. Sousa asked the county if they can't issue him a Groundwater Extraction Permit to tell him where he can get water or tell him of someone else who can haul water.

68. Mr. Sousa stated he is almost to the point of taking his tank off his truck and going back to hauling rock. His truck costs him $2500 year for fees and is standing idle. He mentioned that hauling water is not as lucrative as has been portrayed in the media.

69. He said the county has a problem but the way they are going about it is wrong. In his opinion, they just want the grows and the Asians just to leave. He said they pass these laws but you can violate the court order for some places and they won't say anything but are going to come down on you if you go to other places.

70. Mr. Sousa said he knows of another Caucasian who has a construction company whose business is on County Road A12 who is afraid and won't take his truck out.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on this 14th day of July 2021 in the State of California.

Dated: July 14, 2021

DocuSigned by:

*Edward Szendrey*

**EDWARD SZENDREY**

15

# EXHIBIT A



# COUNTY OF SISKIYOU

**COMMUNITY DEVELOPMENT DEPARTMENT**
**Building ♦ Environmental Health ♦ Planning**
806 South Main Street· Yreka, California 96097
Phone: (530) 841-2100 · Fax: (530) 841-4076
https://www.co.siskiyou.ca.us/community-development

**RICHARD J. DEAN**
DIRECTOR

**AARON STUTZ, MD**
PUBLIC HEALTH OFFICER

## Application for Groundwater Extraction for Use Off-Site

Property Owner, extracting groundwater (print):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____

Phone Number:_____ Email Address:_____

Projected Number of Deliveries:_____ Annual Projected Volume of Water to be Delivered: _____(gallons)

Water Delivery Truck Description (color/make):_____ License Plate No.:_____

Property Owner, receiving groundwater (print):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____
If multiple properties are either extracting groundwater or receiving groundwater, please fill out the Supplemental Information Sheet found on Page 4. Additional information is also provided in this application and Supplemental Information Sheet.

Purpose or use of groundwater to be delivered (e.g. human consumption; dust abatement; agricultural or farming; etc.):

_____

If purpose or use of groundwater to be delivered is for agricultural or farming purpose, please identify all agricultural or

farming uses including specific crops and livestock that may occur onsite. (e.g. small grains, barley, row crops,

strawberries; alfalfa; apple orchard; etc.):_____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •
### For Department Use Only

Well Permit on record (property extracting groundwater): _____Yes _____No; **Permit No.:**_____

Groundwater Extracted from 118-Basin: _____Yes _____No    **If yes, Delivered Outside of Basin:** _____Yes _____No;

Purpose/Use allowed by Zoning: _____Yes _____No;   **Siskiyou County Code Section:** _____

Any properties listed include a Notice to Appear, Civil Action, Notice to Comply, Administrative Citation, and/or a Notice and Order to Abate:_____Yes _____No

Approval of Groundwater Extraction for Use Off-Site Permit:_____Yes _____No; **Date:** _____

Calendar Year Permit is Valid: _____

**BUILDING**
Vacant, Deputy Director

**ENVIRONMENTAL HEALTH**
Vacant, Deputy Director

**PLANNING**
Kirk Skierski, Deputy Director

The Groundwater Extraction of Use Off-Site Permit does not apply to the extraction of water for the purposes of supplying irrigation districts, emergency services, well replenishment for permitted wells, a "public water system," a "community water system," a "noncommunity water system," or "small community water system" as defined by the Health and Safety Code, serving residents of the County of Siskiyou.

Pursuant to Siskiyou County Code Section 3-4.1504, issuance of this Groundwater Extraction for Use Off-Site Permit authorizes "Water Trucks", as defined by County Code Section 3-4.1501, to transport water on the following County roads outlined in Siskiyou County Board of Supervisors Resolution 21-61, including any amendments:

**Butte Valley:**

Picard Road

Matthews Road

Redrock Road

Meiss Lake-Sam's Neck Road

Richardson Road

Meiss Lake Road (beginning with intersection of Cook-Campbell Road and continuing west.)

Dorris Tenor Road (beginning at the intersection of Sheep Mtn Road then south)

Sheep Mountain Road

**Big Springs**:

County Road A-12 (east of Big Springs Road between Big Springs Road and Highway 97)

Big Springs Road

Harry Cash Road

Please maintain a copy of this permit, in its entirety, within the vehicle transporting water. The transport vehicle may be required to present this permit clearly identifying all properties for water delivery as listed on Page 1 and Page 4 of this permit application. Deliveries to properties not listed in this permit application shall be a violation of this permit.

## Property Owner's Acknowledgements

Property Owner, extracting groundwater (print):_____

I hereby certify that I: (i) am the owner of record of the property(ies) on this application; (ii) have been authorized to sign and submit this application on behalf of owner of record, as evidenced by the documents attached hereto; or (iii) have been authorized to sign and submit this application on behalf of the partnership, corporation, LLC or trust which is the owner of record, as evidenced by the documents attached hereto. If the property is owned by more than one individual, I certify that all parties have agreed to the submission of this application. I certify (or declare) under penalty of perjury under the laws of the State of California that the purpose for which this permit is sought is incidental to a lawful activity and is not to allow for or aid in the cultivation of cannabis in violation of the Siskiyou County Code. Property Owner (extracting groundwater) Signature:_____


Property Owner, receiving groundwater (print):_____

I hereby certify that I: (i) am the owner of record of the property(ies) on this application; (ii) have been authorized to sign and submit this application on behalf of owner of record, as evidenced by the documents attached hereto; or (iii) have been authorized to sign and submit this application on behalf of the partnership, corporation, LLC or trust which is the owner of record, as evidenced by the documents attached hereto. If the property is owned by more than one individual, I certify that all parties have agreed to the submission of this application. I certify (or declare) under penalty of perjury under the laws of the State of California that the purpose for which this permit is sought is incidental to a lawful activity and is not to allow for or aid in the cultivation of cannabis in violation of the Siskiyou County Code. Property Owner (receiving groundwater) Signature:_____

## Supplemental Information Sheet

The permit for Groundwater Extraction for Use Off-Site is an "open permit" for the calendar year in which it was issued. Additional properties either extracting groundwater or receiving groundwater may be added to the permit following issuance of the permit by filling out the below information and providing it to the Department, including email submittals, along with a completed Property's Owners Acknowledgement form found of Page 3 of this application. In addition, this Supplemental Information Sheet may also be used to identify multiple properties are either extracting groundwater or receiving groundwater at the time of application submittal, if applicable.

Property Owner (extracting groundwater):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____

Projected Number of Deliveries:_____ Projected Volume of Water to be Delivered: _____(gallons)

Property Owner (extracting groundwater):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____

Projected Number of Deliveries:_____ Projected Volume of Water to be Delivered: _____(gallons)

Property Owner (receiving groundwater):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____

Property Owner (receiving groundwater):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____

Property Owner (receiving groundwater):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____

Property Owner (receiving groundwater):_____ APN:_____-_____-_____ Zoning:_____

Property Address:_____ City:_____ Zip:_____

Purpose or use of groundwater to be delivered (e.g. human consumption; dust abatement; agricultural or farming; etc.):

_____

If purpose or use of groundwater to be delivered is for agricultural or farming purpose, please identify all agricultural or

farming uses including specific crops and livestock that may occur onsite. (e.g. livestock, small grains, row crops, nursery,

pasture, alfalfa, orchard, vineyard etc.):_____

# EXHIBIT B

Mount Shasta Vista

Ed Szendrey <edszendrey@yahoo.com>
To:mkobseff@co.siskiyou.ca.us
Thu, Jun 24 at 9:39 AM

Mr. Kobseff,

My purpose in wanting to talk with you is to try to establish a dialog between the County and the Hmong community in Mount Shasta Vista. We are not advocates of cannabis cultivation. We have a long term goal of bringing the Hmong community and their goal of having a Hmong city and the County together for the greater good of both. My wife Georgie and I have worked with the Hmong nationally and internationally for over twenty years and feel we can help facilitate this.

The immediate concern is lack of water for personal use, for animals, and for growing vegetables. Not all the people affected grow cannabis. It affects the non-Asian as well as the Asian. They have no place to go to get water, much less get it legally. If someone with a well fills a bottle for their neighbor, they are in violation of the ordinance. Many are desperate for water.

The County bears some responsibility in looking after the health and safety of the people there. I understand the local fire stations have water tanks. It is possible for the County to set up distribution centers where people can go to get even 40 to 50 gallons at a time. There is a great humanitarian need that should be addressed.

Thank you for your consideration.


Ed Szendrey

530-519-8317




Mount Shasta Vista

Ed Szendrey <edszendrey@yahoo.com>
To:Jeremiah.LaRue@siskiyousheriff.org
Thu, Jun 24 at 9:34 AM

Sheriff LaRue,

My purpose in wanting to talk with you is to try to establish a dialog between the County and the Hmong community in Mount Shasta Vista. We are not advocates of cannabis cultivation. We have a long term goal of bringing the Hmong community and their goal of having a Hmong city and the County together for the greater good of both. My wife Georgie and I have worked with

the Hmong nationally and internationally for over twenty years and feel we can help facilitate this.

The immediate concern is lack of water for personal use, for animals, and for growing vegetables.  Not all the people affected grow cannabis. It affects the non-Asian as well as the Asian.  They have no place to go to get water, much less get it legally.  If someone with a well fills a bottle for their neighbor, they are in violation of the ordinance. Many are desperate for water.

The County bears some responsibility in looking after the health and safety of the people there.  I understand the local fire stations have water tanks.  It is possible for the County to set up distribution centers where people can go to get even 40 to 50 gallons at a time.  There is a great humanitarian need that should be addressed.

As a reference as to our credibility and work with the Hmong I invite you to call Kory Honea, Sheriff of Butte County.

Thank you for your consideration.


Ed Szendrey

530-519-8317

# EXHIBIT C

<u>**ORDINANCE NO.**</u>

**AN ORDINANCE OF THE COUNTY OF SISKIYOU**
**ADDING ARTICLE 15 TO CHAPTER 4 OF TITLE 3 OF THE SISKIYOU**
**COUNTY CODE RELATING TO WATER TRUCKS.**

The Board of Supervisors of the County of Siskiyou does ordain as follows:

**SECTION 1**.  Chapter 4 of Title 3 is hereby amended to add Article 15 and to read as follows:

**Article 15 – Restrictions on Water Trucks using certain specified County highways.**

**3-4.1501- Water Trucks prohibited on specified county roads.**

(a) As used in this Article, "Water Truck" means a vehicle designed or being used to carry water of not less than 100 gallons or any vehicle designed for carrying or towing tanks or bladders of 100 gallons of water or more or a "Water Tender Vehicle," as defined in California Vehicle Code section 676.5. "Water Truck" does not include vehicles, such as a cement truck or a pesticide spray truck, that transport water as a mixture not suitable for irrigation.

(b) Pursuant to the authority provided Siskiyou County under California Vehicle Code Section 21101(c), Water Trucks are prohibited from traveling over such streets (as defined in California Vehicle Code Section 590) and highways (as defined in California Vehicle Code Section 360) that the Board of Supervisors may specify by resolution. This prohibition does not apply to a Water Truck directly crossing through an intersection over a restricted street or highway.

**3-4.1502- Signs.**
The prohibitions set forth in this article shall not be enforceable unless signs have been placed alongside the street or highway so as to warn drivers of the prohibitions.

**3-4.1503 Penalties**
In addition to any other available penalty, including Section 1-2.01, any person or company, including a corporation or limited liability company (LLC), violating any section of this article shall be guilty of an infraction or misdemeanor and shall be fined $100 or in an amount that the Board of Supervisors may specify by resolution, subject to the then-existing limitations of Vehicle Code 21104. To the maximum extent allowed under state law, any peace officer (as defined by California Penal Code Section 830 et seq.) in good standing that has completed Peace Officer Standards and Training (POST) may enforce this Article. Violation of this Article, including falsification of an

1

**Deleted:** Police

**Deleted:** chapter

application for a permit issued pursuant to it or the unauthorized alteration of a permit issued hereunder or Siskiyou County Code Article 3.5 of Chapter 13 of Title 3, is grounds for permit revocation. A person or entity who has had a permit revoked pursuant to this section shall be ineligible for permit under this Article or Siskiyou County Code Article 3.5 of Chapter 13 of Title 3 for two years. Permit revocation is subject to appeal before the Board of Supervisors.

**3-4.1504- Special permits.**

(a) The Siskiyou County Community Development Department, Environmental Health Division is hereby authorized, at its discretion, upon application in writing, and if good cause exists, to issue a special permit, which may be made valid for the entire calendar year in which it is issued, authorizing the applicant to operate a Water Truck that would otherwise be in violation Section 3-4.1501.

(b) In issuing permits, the Siskiyou County Community Development Department, Environmental Health Division, may require on its application the source of the water, its specific destination (e.g. address or APN), the routes to be used, the dates of delivery, and any other information that will aid in enforcing this Article. In issuing permits, the Siskiyou County Community Development Department, Environmental Health Division may require proof from applicants that they possess any needed permits or licenses for the purported use for which water is being delivered and investigate whether a parcel to which water will be delivered may legally conduct the activity for which the delivery is being made.

(c) The Siskiyou County Community Development Department, Environmental Health Division may set up a process whereby the holder of a valid permit under this Article or Siskiyou County Code Article 3.5 of Chapter 13 of Title 3 may submit for approval an additional specific destination (e.g. address or APN) to which a water delivery may be made using streets and highways otherwise restricted under Section 3-4.1501. Such specific destination shall be provisionally approved for water delivery pending a final determination by the Siskiyou County Community Development Department, Environmental Health Division, whether it is covered under the permit issued under this Article or Siskiyou County Code Article 3.5 of Chapter 13 of Title 3. The right to submit for provisional approval specific destinations under this subdivision may be revoked if a permit hold submits two consecutive destinations in a row later found to be invalid. Proof of having summited a provisionally approval request for an additional specific destination shall be carried by the driver of a Water Truck. Appeals revoking rights under this subdivision may be made to the Board of Supervisors.

(d) Any permit issued under Siskiyou County Code Article 3.5 of Chapter 13 of Title 3 satisfies this requirement.

(e) Permit holders are required to have in their possession when driving a Water Truck on a street or highway restricted under this Article the permit allowing such travel. The Siskiyou County Community Development Department, Environmental Health Division may issue decals signifying to peace officers

possession of a permit allowing travel over restricted streets and highways.

**3-4.1505 - Inapplicability.**

(a) As used in this Section, "License" or "Permit" means a document provided the driver of a vehicle from a public entity evidencing a legal activity requiring the transport of water that the Board of Supervisors has specified by resolution exempts the holder of from Section 3-4.1501.

(b) The prohibition contained in this chapter does not apply to emergency vehicles, governmental vehicles, vehicles of a contractor doing maintenance work and whose driver is in possession of valid contract with a public entity for such work, a vehicle being driven by the holder of timber harvest plan, and vehicles being driven by the holder of License or Permit as defined in subdivision (a).

(c) To the extent that any provision of this article conflicts with state or federal law, either on its face or as applied, it shall be inapplicable to the extent of such conflict. The Board hereby affirms that it intends that all remaining provisions not in conflict remain in effect.

**3-4.1506 – Ordinance Review**

**The Board of Supervisors shall on or about three years after this ordinance becomes effective review it and amend, repeal, or leave it unchanged, as the Board may determine is appropriate. Failure to carry out this Section shall not affect the enforceability of this Article.**

**SECTION 2**. Authority/Effective Date:

This ordinance shall become effective 30 days after its passage and shall, within 15 days of adoption, be published once in a newspaper of general circulation, printed and published in the County of Siskiyou.

**SECTION 3**. Severability.

If any section, subsection, sentence, clause, phrase, or portion of this ordinance or the application thereof to any person or circumstance is held to be invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the remaining portions or other applications of the ordinance, and the provisions of this ordinance are declared to be severable.

**SECTION 4**. CEQA.

The Board hereby finds that this Ordinance is exempt from the California Environmental Quality Act ("CEQA") pursuant to Section 15061(b)(3) because it can be seen with certainty that there is no possibility of a significant effect on the environment from the adoption of these regulations allowing for the restriction of Water Tender Vehicles. Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA. In addition, the Board of Supervisors further finds that the ordinance is categorically exempt from review under CEQA under the Class 8 Categorical Exemption, 14 CCR § 15308, (regulatory activity to assure protection of the environment) and Class 7 Categorical Exemption, 14 CCR § 15307, (regulations and restrictions on activities to assure the maintenance, restoration, or enhancement of a natural resources).

PASSED AND ADOPTED this 6th day of July, 2021, at a regular meeting of the Board of Supervisors by the following vote:

AYES:
NOES:
ABSENT:
ABSTAIN:

_____
Ray A. Haupt Chairman,
Board of Supervisors

ATTEST:
LAURA BYNUM, CLERK,
Board of Supervisors

By _____
        Deputy

4

# EXHIBIT D



Bulldozers and Badges

YREKA POLICE     USFS LAW ENFORCEMENT
ETNA POLICE     SISKIYOU CO. PROBATION
WEED POLICE     LAKE SHASTINA POLICE
CA HIGHWAY PATROL

Support our Sheriff


We have placed another order and we still have shirts in stock! We support our Sheriff and local LE in the fight against illegal cannabis grows! Order yours now!

stateofjeffersonoutdoors.net

Shirts by: Kidder Creek Designs

#sojo #stateofjeffersonoutdoors #tillheavenwehunt #stateofjefferson #northerncalifornia #southernoregon #siskiyoucounty #siskiyoucountysheriff #supportlarue #lawenforcement #thinblueline



Write a comment...

# EXHIBIT E

Congressman Doug LaMalfa

June 23, 2021

Doug, Georgie and I have been attempting to work with the Hmong community in Mount Shasta Vista and the Siskiyou County government. Siskiyou County has a real problem with cannabis grows. Many of these grows are tended by persons of Hmong ancestry. We are certainly not advocates for the growing of cannabis. While the growers are in the wrong the County is also not handling matters in the right way and a humanitarian crisis is at hand. I fear some of the information coming from Sheriff LaRue is also misleading.

It is a complex matter and this brief letter will only give you an overview.

The immediate concern is Siskiyou County has effectively cut of water for the Mount Shasta Vista subdivision. There are only a few wells in the subdivision. Historically the residents have depended on water trucks to bring them water. To battle the cannabis problem the County has basically outlawed water trucks from servicing the subdivision. Their actions deprive water to growers and non-growers alike. By doing so many elderly Hmong we have talked to have no water for their basic needs, to provide for their animals, or grow vegetables. Their legitimate crops have died, their animals are dying.

I mentioned the Sheriff. You commented on a post on the Sheriff's facebook page. The pictures in that post were not taken in the Mount Shasta Vista Subdivision and are not of a Hmong grow. The photos are of a Chinese cannabis grow not far from the subdivision. The strewn trash was from after a group of civilians the Sheriff recruited demolished the grow. I am not defending the grow. I am alleging however the Sheriff's purpose was to raise community sentiment against those in the subdivision which it is well know are mostly Hmong.

As you know Georgie and I have worked with the Hmong community for over twenty years. The County and the community are not working together on the problem. The Hmong community is very fearful and distrustful of the of the Sheriff and the County. The County seems indifferent the crisis faced by all the residents of the subdivision. It appears the County is trying to drive the Hmong out.

Our hope is to get a dialog started between the County and the Hmong community. We are willing to do what we can to facilitate getting that dialog going. We are enlisting the help of Thai Vang and his brother Ger Vang to address the Hmong community in Siskiyou and get them to work with the county. They are strongly opposed to the Hmong being involved in the growing of cannabis. You know their reputation and influence. Ger is particularly experienced in building bridges with local government. It is our hope to build a long range plan that allows the Hmong to have the city of their own they have dreamed of and to do so in an manner than enhances the greater good of the County.

Our request is:

- Your encouragement of the County to address the immediate concern for water for the basic needs of the people living in the subdivision.
    - Possibly FEMA could provide water that is rationed in a manner consistent with need.

- For your encouragement of the County to work with us toward a solution before there is a greater divide among the County residents.

As I stated the county appears indifferent to the crisis and how it affects the health and safety of the people. Basically, they have not addressed the fact they have made it impossible for the residents to obtain water lawfully. The people have no place to go to get water.

I addressed the Siskiyou County Board of Supervisors in November of the last year with the concern their actions could create a humanitarian crisis. I again addressed the Board of Supervisors on June 1st reporting on the crisis that has resulted. I have reached out to Sheriff LaRue and Supervisor Michael Kobseff and hope to hear from them.

Again this is a complex issue and all the issues cannot be addressed in this short letter. I have attached a copy of my presentation to the Board of Supervisors on June 1st. I have also attached reports of a few sample interviews we did of the Hmong affected by the water shortage.

You need to be advised there is a lawsuit in Federal Court against Siskiyou on behalf of the Hmong community.

We look forward to working with you and your staff on this matter.

Ed Szendrey
3208 Highway 32
Chico, CA  95973
530-519-8317

# EXHIBIT F









**Hmong Firefighters with  Water Truck**





**Hmong Firefighters with  Water Truck**



**Hmong with buckets putting out spot fire**



**Hmong man throwing dirt on base of burning tree-**





**Homes that were saved**



## Home of Russel Mathis



# EXHIBIT G

# Mount Shasta Vista Fire—Mee Vang





**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





**Well**

**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





## Water Tanks

**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





**Mee Vang - Vang Vang Dwelling**

**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang





**Mee Vang -  Vang Vang**

**Photographs by Georgie Szendrey   July 6, 2021**

# Mount Shasta Vista Fire—Mee Vang



**Brandon Yang  -  Gao Lor**



**Gao Lor -  Brandon Yang  -  Mee Vang - Vang Vang**

**Photographs by Georgie Szendrey  July 6, 2021**