Margolin & Lawrence, Attorneys at Law
Allison B. Margolin (SBN 222370)
J. Raza Lawrence (SBN 233771)
8484 Wilshire Blvd., Suite 440
Beverly Hills, CA 90211
Telephone: (323) 653-9700
Facsimile: (310) 919-0448

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

Dilevon Lo, Jerry Vang, Nathan Thao, Mao Thao, Pao Lee, Antonio Lee, Koua Lee, Nhia Thai Vang, Zeng Lee, Der Lee, and Khue Cha,

          Plaintiffs,

   v.

County of Siskiyou; Jeremiah LaRue and Jesus Fernandez, in their official capacities as members of the Siskiyou County Sheriff's Department and in their individual capacities; and Brandon Criss, Ed Valenzuela, Michael N. Kobseff, Nancy Ogren, and Ray A. Haupt, in their official capacities as members of the Siskiyou County Board of Supervisors and in their individual capacities; Edward Kiernan, in his official capacity as County Counsel for Siskiyou County and in his individual capacity; California Department of Forestry and Fire Protection; and DOES 1-100,

          Defendants.

Case No.: 2:21-cv-00999-KJM-DMC

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES:**

1. **CLAIM FOR DECLARATORYAND INJUNCTIVE RELIEF FOR UNCONSTITUTIONAL ORDINANCES IN VIOLATION OF THE FOURTEENTH AMENDMENT OF U.S. CONSTITUTION (42 U.S.C. 1983)**

2. **CLAIM FOR DAMAGES FOR VIOLATION OF THE FOURTEENTH AMENDMENT OF U.S. CONSTITUTION (42 U.S.C. 1983)**

3. **CLAIM FOR DAMAGES FOR VIOLATION OF THE FOURTH AMENDMENT OF U.S. CONSTITUTION (42 U.S.C. 1983)**

**DEMAND FOR JURY TRIAL**

COME NOW PLAINTIFFS DILEVON LO, JERRY VANG, NATHAN THAO, MAO THAO, PAO LEE, ANTONIO LEE, DER LEE, KHUE CHA, KOUA LEE, NHIA THAI VANG, and ZENG LEE, by and through their undersigned counsel, and hereby bring the following Amended Complaint ("Complaint") against DEFENDANTS COUNTY OF SISKIYOU *et al.*, (hereinafter collectively "Defendants") as follows:

## PRELIMINARY STATEMENT

1.      This is an action for declaratory and injunctive relief and damages arising from Defendants' prevention of water delivery to Plaintiffs and those similarly situated due to poorly conceived and executed eradication efforts to stem cannabis cultivation in Siskiyou County. Plaintiffs challenge the prevention of the use of water trucks and any other vehicle used to transport water to residents and landowners of service under color of ordinance and resolution of DEFENDANT COUNTY OF SISKIYOU enforced by the Sheriff's Department of Siskiyou County as violations of the Fourteenth Amendment Due Process and Equal Protection Clauses, and Fourth Amendment, of the United States Constitution.

2.      The Civil Rights Act, section 1983, allows a plaintiff to sue state and local officials who have violated U.S. constitutional or statutory rights. See *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (affirming that it is 42 U.S.C. §1983 that provides a federal cause of action for the deprivation of rights secured by the United States Constitution).

3.      This is an action brought for violations of Plaintiffs' rights to due process of law and to equal protection of the laws under the Fourteenth Amendment to the United States Constitution, for which Plaintiffs seek declaratory and injunctive relief pursuant to United States Code, Annotated, Title 42, Sections 1981 and 1983 (42 U.S.C.A. §§ 1981, 1983) and United States Code, Annotated, Title 28, Sections 2201, 2202 (28 U.S.C.A. § 2201, 2202).  This action also seeks redress for violations of Plaintiffs' rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

4.      Plaintiffs, who are residents of, and, in some cases, family members of owners of real property, in the County of Siskiyou, hereby seek to enjoin enforcement of County of Siskiyou, Ordinance No. 21-07 ("Ordinance No. 21-07"), Ordinance No. 21-08 ("Ordinance No.

21-08"), and Ordinance No. 20-13 ("Ordinance No. 20-13") copies of which are attached, marked "Exhibit A," "Exhibit B," and "Exhibit C," respectively, and hereby made part of this Complaint. Ordinances No. 21-07, No. 21-08, and 20-13 are unconstitutional on their face and as construed and applied to Plaintiffs as a violation of due process and equal protection under the law, and a violation of the Fourth Amendment's prohibition on unreasonable searches and seizures.

## **PARTIES**

5.     Plaintiffs, Dilevon Lo, Jerry Vang, Nathan Thao, Mao Thao, Pao Lee, Antonio Lee, Koua Lee, Nhia Thai Vang, Zeng Lee, Der Lee, and Khue Cha (collectively "Plaintiffs") reside in Siskiyou County, California.  Plaintiffs' primary, if not sole, source of potable water for basic life necessities, comes from "water trucks" as defined by Ordinance No. 21-08.

6.     Defendant COUNTY OF SISKIYOU is now, and at all times mentioned in this Complaint has been, a government entity in the State of California organized and existing under the Constitution of the State of California. Defendant COUNTY OF SISKIYOU engages in legislative acts in the form of ordinances through its Board of Supervisors as advised by its County Counsel.  Local governmental units such as counties or municipalities are "persons" within the meaning of 42 U.S.C. section 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–691 & n.54 (1978); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989).

7.     Defendant BRANDON CRISS is the duly elected board member for District 1 within the County of Siskiyou and was a board member involved in promulgating Ordinance No. 21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

8.     Defendant ED VALENZUELA is the duly elected board member for District 2 within the County of Siskiyou and was a board member involved in promulgating Ordinance No. 21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

9.     Defendant MICHAEL N. KOBSEFF is the duly elected board member for District 3 within the County of Siskiyou and was a board member involved in promulgating Ordinance No. 21-07 and Ordinance No. 21-08.

10.     Defendant NANCY OGREN is the duly elected board member for District 4 within the County of Siskiyou and was a board member involved in promulgating Ordinance No. 21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

11.     Defendant RAY A. HAUPT is the duly elected board member for District 5 within the County of Siskiyou and was a board member involved in promulgating Ordinance No. 21-07, Ordinance No. 21-08, and Ordinance No. 20-13.

12.     Defendant EDWARD KIERNAN is the County Counsel for Defendant COUNTY OF SISKIYOU who supports activities, contracts and litigations as needed.  Plaintiffs are informed and believe and thereupon allege that Defendant EDWARD KIERNAN supported Defendant COUNTY OF SISKIYOU in its promulgation of Ordinance No. 21-07 and Ordinance No. 21-08 by and through its Board of Supervisors, including, but not limited to, its promulgation and execution including the method of enforcement through a COUNTY OF SISKIYOU Resolution which Plaintiffs are informed and believe and thereupon allege was put into practice by members of the Siskiyou County Sheriff's Department as more specifically alleged herein.

13.     Defendant JEREMIAH LARUE is the head Sheriff of the Siskiyou County Sheriff's Department, who has ultimate responsibility for promulgation, implementation, and enforcement of the policies, procedures, and practices of the Siskiyou County Sheriff's Department.

14.     Defendant JESUS FERNANDEZ is a member of the Siskiyou County Sheriff's Department who has enforced Ordinance No. 21-07 and Ordinance No. 21-08 against Plaintiffs and members of the Hmong community in Siskiyou County, California, by detaining them and impounding their vehicles.  DOES 1-100 are currently unknown and unidentified employees or agents of Siskiyou County, California, who participated in the development or enforcement of Ordinance Nos. 21-07 and 21-08 and the unnumbered Resolution at issue in this case.

15.     Defendant CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION ("CAL FIRE") is now, and at all times mentioned in this Complaint has been, a government entity in the State of California organized and existing under the Constitution of the

State of California.  Defendant CAL FIRE is a fire department of the California Natural Resources Agency and is responsible for fire protection in various areas under state responsibility.  In addition, CAL FIRE provides varied emergency services in Siskiyou County via a contract with Siskiyou County. CAL FIRE was responsible for fire protection and emergency services in the Shasta Vista subdivision of Siskiyou County during the Lava Fire, which was first reported on June 25, 2021, and resulted in the mandatory evacuation of the Shasta Vista subdivision.

16.     As to all claims presented herein against them, Defendants JEREMIAH LARUE, JESUS FERNANDEZ, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT, and EDWARD KIERNAN, are being sued in their individual capacities for damages associated with clearly established federal rights, and in their official capacities for injunctive and declaratory relief.  At all relevant times, Defendants JEREMIAH LARUE, JESUS FERNANDEZ, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT, and EDWARD KIERNAN have acted under color of state law.

## JURISDICTION AND VENUE

17.     This lawsuit is brought pursuant to 42 U.S.C. section 1983 against all Defendants for actions under color of state law in violation of the Fourteenth and Fourth Amendments to the United States Constitution.  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331 and 1343(a)(3), in that this action is brought to redress deprivation, under color of law, of rights secured by the Constitution of the United States.  This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201 and 2202 and is empowered to grant injunctive relief pursuant to Fed. R. Civ. P. 65.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

/ / /

/ / /

# FACTUAL ALLEGATIONS

19.     Plaintiffs are members of the Hmong tribe of Northern Laos who either actively, or through parents and grandparents, performed as fighters for the United States when the U.S. government recruited the Hmong people in the late 1960s to fight the communists in Laos. When U.S. military forces pulled out of Southeast Asia in 1975, tens of thousands of Hmong were trapped in mountainous enclaves. All aid was cut off to the Hmong. In response to the plight of Indochinese communities such as the Hmong after the Vietnam War, the U.S. Congress enacted legislation to enable Southeast Asian refugees to come to the United States.

20.     The Hmong people immigrated to various parts of the United States beginning in the early 1980. Admissions picked up between 1987 and 1994, when more than 50,000 Hmong entered the country. From 2004 until 2006, pressure from human rights groups contributed to the resettlement to the United States of an additional 15,000 Hmong immigrants from a refugee camp in Thailand. Afterward, immigration from northern Laos to the United States slowed. By early 2015, Hmong began arriving in the County of Siskiyou.

21.     More than a half-century ago, land speculators carved Siskiyou County's unbuildable high desert and mountain slopes into half a dozen large subdivisions with "vacation" parcels that had little market value. Mount Shasta Vista, rising along the western edge of the valley, contained many of these "vacation" parcels which in 2014, remained fallow. By the end of 2016, approximately a third of the Mount Shasta Vista parcels were owned by the Hmong people. More than a half-century ago, land speculators carved Siskiyou County's unbuildable high desert and mountain slopes into half a dozen large subdivisions with "vacation" parcels that had little market value. Mount Shasta Vista, rising along the western edge of the valley, contained many of these "vacation" parcels which in 2014, remained fallow. By the end of 2016, approximately a third of the Mount Shasta Vista parcels were owned by the Hmong people.

22.     The Mount Shasta Vista Subdivision of Siskiyou County consists of 1600 lots, the majority of which are occupied by Hmong families.  The population of the Hmong community in the subdivision is over 1,000 men, women, and children.  Siskiyou County has approximately 4,000 Hmong residents, concentrated in the areas near the Mount Shasta Vista subdivision.

23.     In 2015, Defendant COUNTY OF SISKIYOU, by and through its Board of Supervisors, passed an ordinance to ban outdoor cultivation of marijuana, punishable by a fine. Marijuana crops could also be destroyed if authorities determined they were for commercial sale.

24.     The old gold mining town of Yreka in Siskiyou County for decades sold water to anyone wanting it. But in July 2016, the town council declared the Hmong farmers' use "undesired" and cut off sales to those living outside of city limits.

25.     The Siskiyou County's Sheriff's department engaged in years of eradications, seizures and arrests to eradicate marijuana cultivation. Through these efforts, the Hmong people often became targets.

26.     In an article titled "Hmong cannabis growers pouring into Siskiyou County" originally appearing on pressdemocrat.com on September 21, 2017, released to the wire service on September 25, 2017, the former Sheriff of Siskiyou County, Sheriff Jon Lopey, is quoted as stating "This is war" in his description of eradication efforts targeted at the Hmong community in Siskiyou County.

27.     When the Mount Shasta Vista Subdivision of Siskiyou County was created, a water well was built to supply water to the properties within the subdivision. That well is located on a nearby property along highway A-12 owned by Stephen Griset. At the time of creation of the subdivision, everyone understood that the water from that well would provide for the residents of the subdivision, and the residents understood they would be able to access this water for their daily living needs. The water is used by the entire Mount Shasta Vista subdivision including over 1,000 Hmong residents, and is what is left over from Mr. Griset's well pumping for his own agricultural needs. If it was not used by the subdivision residents, it would be wasted.

28.     For the past several years, the residents of the Mount Shasta Vista Subdivision of Siskiyou County have depended on the water provided by Stephen Griset for survival. The well in question provides most of the water needs of the residents of the subdivision. The manner much of the needed water can be provided to the residents is by having it brought to the subdivision by truck. On August 4, 2020, the Siskiyou County Board of Supervisors passed

Ordinance 20-13, the first of three ordinances cutting off the water supply to the Hmong community.  Ordinance 20-13 makes it illegal to "engage in the act of wasting or unreasonably using groundwater by extracting and discharging groundwater underlying Siskiyou County for use in cultivating cannabis in violation of Chapter 14 or Chapter 15 of Title 10 of the Siskiyou County Code."  The following month, the Griset family, who continued to allow the Hmong community and other neighbors to use their private well after the ordinance passed, was sued by Siskiyou County (Case No. SC CV 20-810) for allegedly violating this ordinance.

29.     In 2020, while he was Undersheriff of the Siskiyou County Sheriff's Department, KARL G. HOUTMAN drafted a document entitled "Fiscal Year 2021 Annual Strategic Plan."  In Paragraph 1, A, under the heading "Domestic Cannabis Intelligence Overview: Self-Assessment," KARL G. HOUTMAN wrote: "We are dealing with all different ethnic groups (Hmong, Hispanic, Bulgarian, Caucasian and Chinese) on private land but have seen the largest increase in Chinese working at many private land sites."  The report estimated "upwards of 2500 illegal marijuana cultivation site [sic.] in Siskiyou County," and that 80 of those cultivation sites (3.2% of the total) were in the Mount Shasta subdivision.

30.     Plaintiffs are informed and believe and thereupon allege that KARL G. HOUTMAN's ideas set forth in the document "Fiscal Year 2021 Annual Strategic Plan" were communicated, received and adopted by Defendant COUNTY OF SISKIYOU by and through its Board of Directors.

31.     On May 4, 2021, the Board of Supervisors promulgated Ordinance No. 21-07 and Ordinance No. 21-08.  The ostensible purpose of the ordinances was to prevent extraction (pumping) of large volumes of groundwater from groundwater resources and local wells in Siskiyou County. The stated reason for the need for this "urgency" legislation is due to drought conditions in the county and excess water being expended daily on illicit cannabis production in Siskiyou County.

32.     The remedy for the water conservation measures set forth in Ordinance No. 21-08 is to prohibit "Water Trucks" in certain areas of Siskiyou County because said "Water Trucks" have "created dangerous driving conditions, health hazards from dust and diesel exhaust, noise

pollution, traffic congestion, and generally conditions that detract from the quality of life and welfare of those who reside alongside and near these highways" (Exhibit B hereto). "Water Trucks" are defined in Ordinance No. 21-08 as "a vehicle designed or being used to carry water of not less than 100 gallons or any vehicle designed or carrying or towing tanks or bladders of 100 gallons of water or more or a "Water Tender Vehicle," as defined in California Vehicle Code section 676.5 (3-4.1501, subd. (a), of Ordinance No. 21-08 - Exhibit B hereto).

33.     The target of enforcement for the prohibition on "Water Trucks" as defined by Ordinance No. 21-08 was to prevent their travel on Siskiyou County roads to be determined by Defendant COUNTY OF SISKIYOU, by and through its Board of Supervisors, as specified by resolution (Section 3-4.1501, subd. (b), of Ordinance No. 21-08 - Exhibit B hereto).

34.     At Defendant COUNTY OF SISKIYOU's Board of Supervisors meeting of May 4, 2021, discussion, direction and action took place regarding the Resolution setting forth roads included within Section 3-4.1501 of Ordinance No. 21-08 and the Board of Supervisors passed the Resolution identifying the roads on which the travel of the water trucks would be prohibited.  There was no discussion at the meeting regarding why the particular roads listed in the Resolution were included and why others were not.  A true and correct copy of said proposed Resolution is attached hereto as Exhibit D.

35.     Those roads listed in Exhibit D, located in Butte Valley and Big Springs, are actively being targeted by Siskiyou County Sheriff's Department for enforcement as more specifically alleged herein.

36.     These roads identified in Butte Valley and Big Springs are used for the ingress and egress for parcels occupied and/or owned predominately by the Hmong people of Siskiyou County.  The enforcement of Ordinance Nos. 20-13, 21-07 and 21-08 by and through the Siskiyou County Sheriff's Department (including, but not limited to Defendant Deputy Sheriff JESUS FERNANDEZ) has had the effect of depriving the Plaintiffs (and the Hmong people of Siskiyou County generally) of potable water.

37.     Plaintiffs are informed and believe and thereupon allege that Defendant COUNTY OF SISKIYOU, by and through its Board of Supervisors and/or members of its

Sheriff's Department, mapped out the impact of areas affected by enforcement of Ordinance Nos. 21-07 and 21-08, as more specifically targeted through the unnumbered Resolution (Exhibit D hereto), in the map attached hereto and incorporated herewith as Exhibit E.

38.     As reflected on the map (Exhibit E hereto), there are six (6) large areas of Siskiyou County identified as Areas of Marijuana Cultivation in the 2021 Strategic Plan with large blue stars, covering an area encompassing from the northern Highway 96 corridor bordered by the Pacific Coast Ranges to the west to the Six Rivers National Forest to the south then along the Shasta Trinity National Forest to the south-east to Tulelake in the north-east, thousands of square miles.  The map (Exhibit E hereto) also identifies three (3) locations designated as "Areas affected by Water Ordinance" with large orange stars covering only a small portion of the total area starting at locations adjacent to Shasta Vista, Mac Doel and Dorris, an area that is exclusively in the north-eastern area of the map (Exhibit E) where the Hmong people reside.

39.     Cutting off the water to the Mount Shasta Vista Subdivision of Siskiyou County has caused a humanitarian crisis.  The over 1,000 Hmong people who are living in the subdivision depend on the water for personal survival, to be used for food crops and for human and animal consumption.  Without water, the residents will be forced to move and lose their investment in their property.

40.     According to United States Geological Survey estimates, 23,300,000,000 gallons of water per day is consumed for domestic use by 283,000,000 people, or approximately 82.3 gallons per person per day.  Based on the USGS report the over 1,000 Hmong people living in the Mount Shasta Vista Subdivision of Siskiyou County require more than 82,300 gallons of water per day for personal consumption.  The USGS report indicates California consumption is higher than the average.  In a study conducted by the Hamilton Project of the Brookings Institution, the daily domestic consumption of water is 124 gallons of water per day per person.  Based on the Hamilton Project data, in California, 1,000 people would require 124,000 gallons of water per day for domestic purposes, or 45,260,000 gallons of water per year.  Based on this data, a substantial portion of the water provided by Mr. Griset to the Hmong community goes to domestic use and is necessary for subsistence to those living in the subdivision.

41.     The County of Siskiyou has not worked with the residents of the Mount Shasta Vista Subdivision of Siskiyou County to provide an alternate solution to this issue.  During the public comment period at the May 4, 2021, Board of Supervisors meeting when the Ordinances and Resolution were passed, Paul Manasian, an attorney representing Mr. Griset, proposed that the County have a meeting with Hmong community and farmers to discuss a solution to water issues, and explained that the Hmong sites do not have their own water.  The County did not take Mr. Manasian up on his offer.  Also during the public comment period at the May 4, 2021, Board of Supervisors meeting when the Ordinances and Resolution were passed, a farmer told the Board of Supervisors that he uses water trucks all the time to transport water around the County for various legitimate purposes, and explained that unforeseen consequences would result from water truck ban due to all the legitimate agriculture going on in the County.

42.     As quoted in a Sacramento Bee article dated May 26, 2021, entitled "Asian pot growers face sheriff raids, bulldozers in Northern California. They blame racism," Siskiyou County District Attorney Kirk Andrus has stated about the water truck ban, "We're not pretending that this is something that's trying to regulate anything except for water being used for cannabis.  It's a way to enforce California's and Siskiyou's cannabis laws. That's what it's for. It is not designed to protect the aquifer, or the groundwater."  In the Ordinance passing the water truck ban, however, the Board of Supervisors purported to justify the ban on the basis that there was a "drought" and that the water on the trucks was "depleting precious groundwater … resources and these losses jeopardize the lawful agricultural, recreational, private and environmental use of water for thousands of residents."  The District Attorney has thus confirmed that the Ordinances were not, in fact, adopted for the reasons for which the Board of Supervisors claimed it was adopting the Ordinances.

43.     At the public hearing on May 4, 2021, where Defendant COUNTY OF SISKIYOU by and through its Board of Supervisors, welcomed Defendant JEREMIAH LARUE to give comment on a related Ordinance (Ordinance No. 21-07) imposing an Administrative

Permit Process for groundwater extraction further restricting access to water, and to "educate the board on why this would be effective and the previous method isn't,"[1] he stated:

    — "first off, I think it's <u>important that we direct our anger at the right people.</u> Um, you know, we have good people in this county that have agriculture. And we have people that are abusing that. We know who they are, and frankly I'm perplexed that those individuals are not shamed more by not only other people in the agg, um, world, but also the county. Um, I know we talk a lot about that, but really, that's... <u>Those people, not just the growers, are helping this be established.</u> And you know, honestly, they're, they're making a lot of money off of that. And so, I just hope everyone who's listening and involved in this room, later on that we, <u>we focus on the people that are causing the problems.</u>"[2]

    — "And <u>we're going to aggressively enforce and fine to the extreme</u> that we can, um... <u>Whatever we can do, we're going to do.</u>"[3]

    — "You know, this is not going to get done by just having the, the government show up and save everybody. Historically, that has never happened. So, <u>we need the cooperation of our local people to help us get to the bottom of this, and really choke it out.</u>"[4]

    — "Um, <u>if people are going to do it right, um, well I'll say... They would have done it right from the beginning. Um, it's 100% illegal, regardless of how great the community thrives.</u> It's still leg- illegal activity. Um, it's not wanted here. It's prohibited here. That's just the rules. That's, that's the law. So, um, the argument that suddenly if we were to legally permit everything, people would start complying. That never happens. Um, because there is no incentive to comply, even if it's permitted. Um, so anyways. I digress, digress on that, but the importance of this ordinance... Both of them, we haven't gotten to the other one, <u>it just another tool for us to choke out the, the water issue that's enabling everything.</u>"[5]

    — "So again, pressure. <u>Where is the pressure? Why aren't these people called out?</u> I think that, uh, you know, I hear a lot of, 'Why isn't the county doing anything?" We are. But I also throw it back to the community. Um, we have to take this together. And we have to have support. And I think we hea- we hear quite a bit of it. Uh, I don't discount that, but I, I just recognize again, <u>we all have to come together on this. It's not just the Sheriff's Department or code, or the board, or the county. I mean, it's everybody.</u> It's, it's the entirety of us, so, um, I'm here to answer any questions related to that. <u>I just want to convey the seriousness of this, and that we're going to go out and aggressively enforce it.</u> That's what, that's what we do. If there's laws on the books that we can use, it's not a matter that we don't want to do it. <u>We just have to have the right teeth.</u>"[6]

    44.    Plaintiffs are informed and believe and thereupon allege that the group of "those people, not just the growers" Defendant JEREMIAH LARUE referred to in his public statements

---

[1] *See* Transcript of May 4, 2021 BOS meeting, at 6:159-60.
[2] *See* Transcript of May 4, 2021 BOS meeting, at 6:162-71.
[3] *See* Transcript of May 4, 2021 BOS meeting, at 6:189-90.
[4] *See* Transcript of May 4, 2021 BOS meeting, at 7:204-07.

[5] *See* Transcript of May 4, 2021 BOS meeting, at 7:212-20.
[6] *See* Transcript of May 4, 2021 BOS meeting, at 8:230-38.

were and are the Hmong people of Siskiyou County as a group regardless of the criminality of their conduct or lack thereof.

45.     On June 24, 2021, the Lava Fire was ignited by lightning near Weed, California, and began spreading. As of June 29, 2021, the fire had reached a size of 13,300 acres, and had prompted the evacuation of many communities, including the Shasta Vista subdivision in Siskiyou County.  Defendant CAL FIRE was responsible for providing fire protection and emergency services to residents of the Shasta Vista subdivision during the Lava Fire.  During the Lava Fire, many Hmong residents of the Shasta Vista subdivision put out fires in the subdivision using water trucks, buckets, and dirt, saving homes in the process.  As the Lava Fire burned through the Shasta Vista subdivision, representatives of Defendant COUNTY OF SISKIYOU, including members of the Siskiyou County Sheriff's Department, ordered the Hmong people to stop their firefighting efforts in the subdivision and to leave the subdivision.  After the residents of the Shasta Vista subdivision were ordered to evacuate, representatives of Defendant CAL FIRE passively let the Lava Fire burn through the subdivision, without engaging in active firefighting efforts in the subdivision.  CAL FIRE actively worked to extinguish fires in other, similarly-situated communities threatened by the Lava Fire that did not have a significant population of Hmong residents.

46.     Plaintiff DILEVON LO was pulled over by Deputy Sheriff JESUS FERNANDEZ of the Siskiyou County Sheriff's Department on May 4, 2021, while driving a truck full of water on Juniper Road in Siskiyou County.  His truck was seized and impounded.

47.     Plaintiff JERRY VANG was pulled over by J. RANDALL of the Siskiyou County Sheriff's Department, who was driving an unmarked red pickup truck, on May 5, 2021, while driving a rented truck on a private road that had less than 100 gallons of water on it.  His truck was seized and impounded.

48.     Plaintiff NATHAN THAO was a passenger in a truck he owned that was pulled over by a representative of the Siskiyou County Sheriff's Department four times in the past six months.

49.     Plaintiff MAO THAO was driving a truck containing water that was followed for several minutes and then pulled over on Highway A-12 in Siskiyou County by a representative of the Siskiyou County Sheriff's Department on May 11, 2021.

50.     Plaintiff PAO LEE was driving a truck containing water that was pulled over by a representative of the Siskiyou County Sheriff's Department on May 14, 2021.  His truck was seized and impounded.

51.     Plaintiff ANTONIO LEE was pulled over May 14, 2021 by a representative of the Siskiyou County Sheriff's Department. The truck was seized and impounded.

52.     Plaintiff KOUA LEE lives in the Shasta Vista subdivision and previously relied on water trucks as a source of water for drinking, cooking, bathing, animals, and growing vegetables, but has not had enough water to use for these purposes since Ordinance Nos. 21-07 and 21-08 were passed.

53.     Plaintiff NHIA THAI VANG lives in the Shasta Vista subdivision and relies upon chickens and ducks for food.  Many of his chickens and ducks have died due to lack of water since the passage of Ordinance Nos. 21-07 and 21-08, and he now has no reliable source of water for daily living needs and must ask friends to borrow water when possible.

54.     Plaintiff ZENG LEE lives in the Shasta Vista subdivision and previously depended on water trucks to bring water to his property for daily living needs.  Since the passage of Ordinance Nos. 21-07 and 21-08, many of his chickens and pheasants have died due to lack of water, and his family does not have enough water to bathe more than once per week.  He is currently receiving small amounts of water from friends on a temporary basis but has no known source of water after July 2021.

55.     Plaintiff DER LEE lives in the Shasta Vista subdivision and previously depended on water trucks to bring him water for daily living needs.  He has applied for a well permit on his property but has not yet received it.  He relies on ducks and chickens, and a vegetable garden, for food, but has not had enough water for his garden and animals since the passage of Ordinance Nos. 21-07 and 21-08.  He does not know how he will care for his remaining animals and his family if he cannot find a solution to get more water.

56.     Plaintiff KHUE CHA lives in the Shasta Vista subdivision and previously relied on water trucks for water for daily living needs.  He relies on his chickens and vegetable garden for food, but since the passage of Ordinance Nos. 21-07 and 21-08, he has had a water shortage, and all the vegetables in his garden have died.  He now barely has enough water for personal use after providing water to the six or seven remaining chickens to keep them alive.  He has had to ask friends to borrow water when possible.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Declaratory and Injunctive Relief for Unconstitutional Ordinances Pursuant to 42 U.S.C. § 1983 – Fourteenth Amendment – Against Defendant COUNTY OF SISKIYOU**

57.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

58.     A district court is empowered to exercise its fundamental obligation to determine the constitutionality of a county ordinance under the Declaratory Relief Act, 28 U.S.C. § 2201. Where the unconstitutionality of an ordinance as violative of the Fourteenth Amendment, and plaintiffs' damages from enforcement would be irreparable because no one could be compelled to respond therefor, a federal court of equity will normally enjoin enforcement if the ordinance unconstitutionally invades plaintiffs' property rights.  *Terrace v. Thompson* 263 U.S. 197, 214, 216 (1923); *Davis & Farnum Mfg. Co. v. Los Angeles*, 189 U.S. 207, 218 (1903).

59.     The Hmong people of Siskiyou County live on land in the affected areas (Butte Valley and Big Springs) and many, if not all, do not have access to potable water without having it brought to them by vehicle and/or picking up water themselves and traversing the roads identified in the Resolution (Exhibit D) hereto.  According to reports from urban water agencies in California submitting monthly data on residential water use to the State Water Resources Control Board (SWRCB) and as reported by the Legislative Analyst's Office (the California Legislature's nonpartisan fiscal policy advisor), the average residential water use in 2016 was 85 gallons per person per day.

60.     Ordinance No. 21-08 prohibits any vehicle designed or carrying or towing tanks or bladders of 100 gallons of water or more traveling on roads identified in the Resolution (Exhibit D hereto) in the Butte Valley and Big Springs areas of Siskiyou County, thereby creating an undue burden on the Hmong people who live in that designated area from obtaining potable water. Ordinance No. 21-07 prohibits water extraction for use off-parcel without a permit.  Ordinance 20-13 purports to prohibit extraction or discharge of water "for use in cultivating cannabis" in violation of the Siskiyou County Code, and has been used by Siskiyou County to cut off access to water to the Hmong community, including by the County suing farmer and well owner Stephen Griset in Siskiyou County Superior Court Case Number CV 20-810, for allegedly violating Ordinance 20-13.

**Plaintiffs Have a Property Right to Access to Water**

61.     While the Constitution protects against states infringing upon property interests without due process, those "[p]roperty interests . . . are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Bases for a claim of entitlement to property interests arise from either a state law or a contract between the state and the citizen. See *id.* at 577-78.  The right to water service may not be a fundamental right guaranteed by the Constitution, however the Constitution does protect the rights of those granted a property interest by State law.

62.     Ownership of California's water is vested generally in the state's residents. California maintains a "dual system" of water rights, which distinguishes between the rights of "riparian" users, those who possess water rights by virtue of owning the land by or through which flowing water passes, and "appropriators," those who hold the right to divert such water for use on noncontiguous lands. For historical reasons, California further subdivides appropriators into those whose water rights were established before and after 1914. Post–1914 appropriators may possess water rights only through a permit or license issued by the Board, and their rights are circumscribed by the terms of the permit or license. See *Millview County Water Dist. v. State Water Resources Control Bd.* (2014) 229 Cal.App.4th 879, 888-90.

63.    Under California law, property interests in water take the form of a usufruct, *i.e.,* a right to use the resource. " 'It is laid down by our law writers, that the right of property in water is usufructuary, and consists not so much of the fluid itself as the advantage of its use.' [*Eddy v. Simpson*, 3 Cal. 249 (1853)] Hence, the cases do not speak of the ownership of water, but only of the right to its use." *National Audubon Society v. Superior Court*, 33 Cal.3d 419, 441 (1983).

64.    It has long been settled law in California that use of water for domestic purposes (natural use) is first entitled to preference over commercial (artificial) use. *Hale v. Mclea*, 53 Cal. 578, 584 (1879). *Smith v. Corbitt*, 116 Cal. 587, 592 (1897); *Bathgate v. Irvine*, 126 Cal. 135, 142 (1899); *Cowell v. Armstrong*, 210 Cal. 218, 224-25 (1930); *Rancho Santa Margarita v. Vail*, 11 Cal.2d 501, 561 (1938); *Lux v Haggin*, 69 Cal. 255, 395 (1884), *Stanford v. Felt*, 71 Cal. 249, 250 (1886). *Drake v. Tucker*, 43 Cal.App. 53, 58 (1919).

65.    In addition, the right to water to be used in irrigation is a right in real property. *Schimmel v. Martin*, 190 Cal. 429, 432 (1923). A trio of cases has also found the right to water is an easement appurtenant to land. *Stanislaus Water Co. v. Bachman*, 152 Cal. 716, 724 (1908); *San Juan G. Co. v. San Juan R. etc. Assn,.* 34 Cal.App.2d 159, 174 (1939); *Relovich v. Stuart*, 211 Cal. 422, 428 (1931).

66.    Plaintiffs had a legitimate expectation, grounded in state law, that continued access to water in Siskiyou County would be available to them on reasonable terms and conditions without regard to Defendants' eradication efforts. In *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9 (1978), customers of a municipal utility were found by the Supreme Court to have a protected interest in the service provided to their home, thus requiring the municipality to provide proper notice of a possible disconnection, including informing the customer of the right to a hearing or procedure to challenge the validity of the decision prior to any termination of service. *Memphis Light*, 436 U.S. at 14-15. "[I]ndeed the discontinuance of water or heating for even short periods of time may threaten health and safety." *Id.* at 18. Plaintiffs state facts giving rise to a "legitimate claim of entitlement" to access to water in Siskiyou County. *Id.,* at 11.

## Defendant COUNTY OF SISKIYOU Failed to Follow Proper Procedure in Enacting Ordinance No. 21-08

67.    A duly enacted county ordinance is a "law of this State'" within the meaning of a penal statute proscribing the violation of such law. *In re Groves,* 54 Cal.2d 154, 158 (1960); *County of Plumas v. Wheeler,* 149 Cal. 758, 768 (1906).  A board resolution is not. *City of Sausalito v. County of Marin,* 12 Cal.App.3d 550, 566 (1970). "A resolution by a county board of supervisors is usually a mere declaration with respect to future purpose or proceedings of the board. An ordinance is a local law which is adopted with all the legal formality of a statute." *McPherson v. Richards*, 134 Cal.App. 462, 466 (1933).

68.    Section 3-4.1501, subd. (b), of Ordinance No. 21-08 (Exhibit B hereto) merely states: "Pursuant to the authority provided Siskiyou County under California Vehicle Code Section 21101 (c), Water Trucks are prohibited from traveling over such streets (as defined in California Vehicle Code Section 590) and highways (as defined in California Vehicle Code Section 360) *that the Board of Supervisors may specify by resolution.*" (Emphasis added.)

69.    A resolution adopted without the "formality" required of an ordinance cannot be deemed an ordinance. *City of Sausalito, supra,* at 12 Cal.App.3d at 566 (citing 5 McQuillin, *Municipal Corporations* (1969 rev. vol.) ss 15.02—15.08, pp.  46—47.)  California's Legislature has been explicit concerning this distinction. It has exacted certain "formalities" in the enactment of an ordinance by the supervisors of a county (Gov. Code, §§ 25120—25121), but not of their adoption of a resolution. It has specified certain requirements relative to the publication of a county ordinance after its passage (Gov. Code, § 25124), its deferred effective date in the typical case (s 25123), and its mandatory recording in an "ordinance book" (Gov. Code, §§ 25102, subd. (b), 25122)). None of these requirements applies to board resolutions. *City of Sausalito, supra,* at 12.

70.    By contrast, in lieu of entering resolutions in full in the minute book, the clerk, with the approval of the board, may keep a resolution book in which he shall enter all resolutions in full. In such cases, references in the minute book to resolutions may be made by number and subject reference. (Gov. Code, § 25102.1.)  Because the difference between a "resolution" and an

"ordinance" is thus substantive, under case law and by deliberate legislative definition, the one (unnumbered Resolution – Exhibit D hereto) cannot be construed as having amounted to the other (Ordinance No. 21-08 – Exhibit B hereto). *City of Sausalito, supra*, at 12 Cal.App.3d at 566.

71.     By purporting to identify specific roads in Butte Valley and Big Springs as being the subject for enforcement of Ordinance No. 21-08 in the proposed Resolution (Exhibit D hereto), Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN and RAY A. HAUPT effectively shielded from the "formality" requirements mentioned above (Gov. Code, §§ 25120—25124) of an ordinance the determination that Hmong people living along certain county roads, regardless of their status as criminals or law-abiding citizens, would be deprived of delivery of water for their basic needs. Plaintiffs are informed and believe and thereupon allege that promulgating in this manner was designed to conceal the fact that the roads designated in the Resolution impacted primarily the Hmong people of Siskiyou County.  Plaintiffs are further informed and believe and thereupon allege that as the County Counsel for Defendant COUNTY OF SISKIYOU, Defendant EDWARD KIERNAN aided and abetted this concealment.

72.     In bypassing the formal requirements of an ordinance by enacting the Resolution (Exhibit D hereto) that identified the specific roads in Butte Valley and Big Springs as being the subject for enforcement of Ordinance No. 21-08, Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN prevented meaningful participation of the pubic, including Plaintiffs and the Hmong people of Siskiyou County generally.

**Defendant COUNTY OF SISKIYOU Provided No Meaningful Notice and Opportunity to Challenge the Execution of Ordinance Nos. 20-13, 21-07, and 21-08**

73.     Ordinance Nos. 20-13, 21-07 and 21-08 contain no requirement that termination of access to water include a notice of an opportunity for a pre-termination hearing or review nor means to redress the seizure of property lawfully obtained by those traversing on Siskiyou County roads identified in the Resolution (Exhibit D hereto).  Nor was adequate notice given to

residents of Siskiyou County that the roads identified in the Resolution (Exhibit D hereto) would subject them to scrutiny.

74. Existing regulations found in Sec. 5-8.01, *et seq.,* of Chapter 8 of Title 5 of the Siskiyou County Code adopted February 28, 1961, effective March 31, 1961 and beginning with Supplement No. 15 and supplemented thereafter addresses only the construction, reconstruction, repair, and destruction of water wells, cathodic protection wells, and monitoring wells but does not address access to water by citizens without such wells.

75. The due process clause of the Fourteenth Amendment warrants that "No State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. Therefore, once the property interest in access to water is created, proper notice of the potential termination of access to that water must consist of both a declaration that the access will be terminated or extremely limited at some point in the future, and a notification of the opportunity for a hearing to voice concerns, uncover misuse or discuss the existence of hardships. By failing to give timely and adequate notice to Plaintiffs, including notice of an opportunity for a hearing prior to termination of access to water, Defendant COUNTY OF SISKIYOU unlawfully deprived Plaintiffs of their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Defendant COUNTY OF SISKIYOU's Adoption of the Methods and Means of Execution of Ordinance No. 21-08 Through the Unnumbered Resolution Was Arbitrary and Capricious**

76. Plaintiffs' private interest in the continued access to water in Siskiyou County is affected by the official action of Defendant COUNTY OF SISKIYOU and the risk of an erroneous deprivation of such interest through the procedures adopted through Ordinance No. 21-08 and the unnamed Resolution (Exhibit D hereto) is overwhelming.

77. Here, Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN articulated their rationale for the "urgency" in adopting Ordinance No. 21-08 as based on emergency drought conditions affecting most of California as well as criminal

activity, to wit: "Local law enforcement officers and code enforcement officers have observed large quantities of groundwater being extracted from local wells and then delivered in water trucks off the parcel from which extraction occurred to illegal cannabis cultivation sites, most of which are without legally established residences and are used exclusively for illegal cannabis cultivation." (Exhibit B, p. 1, Section 1, subsection F.)

78.     Nowhere in its findings in Ordinance No. 21-08 or in the public statements made in connection with Ordinance No. 21-08's consideration on May 4, 2021, or the unnumbered Resolution (Exhibit D hereto) did Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN provide information of the fact that the Hmong people occupying Mount Shasta Vista Subdivision of Siskiyou County rely substantially on water trucks to deliver to them potable water.

79.     Plaintiffs are informed and believe and thereupon allege that Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN did not consider reasonable alternatives to de facto water eradication and the creation of water scarcity for the Hmong people of Siskiyou County in adopting Ordinance No. 21-08. Instead, Plaintiffs are informed and believe and thereupon allege that Defendants instead directed Defendant JEREMIAH LARUE to immediately enforce Ordinance No. 21-08 by stopping and detaining the Hmong people of Siskiyou County for pretextual reasons in order to seize water and vehicles as more specifically alleged herein.

80.     The probable value of additional or substitute procedural safeguards is not outweighed by Defendant COUNTY OF SISKIYOU's stated interest in drought abatement and illicit marijuana cultivation, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See *Memphis Light, supra,* 436 U.S. at 17 and *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

81.     The deprivation of Plaintiffs' access to water, a protectable property interest, was by means that were arbitrary and capricious. *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir.1994).

### Ordinance Nos. 20-13, 21-07, and 21-08 are Overboard

82.     A law is overbroad if it "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of [a fundamental right] . . . ." *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) (freedom of speech); *see also Clark v. City of Los Angeles,* 650 F.2d 1033, 1039 (9th Cir.1981) (same). The Supreme Court has required that the overbreadth "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

83.     By not considering other less intrusive and effective means to abate drought conditions and/or illicit marijuana cultivation, Ordinance Nos. 20-13, 21-07, and 21-08 are overbroad and substantially overburden the Hmong people of Siskiyou County in obtaining potable water, including the Plaintiffs. This burden outweighs Defendants' interests in drought control and drug eradication.

### Ordinance No. 21-08 and Unnumbered Resolution Violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as a Result of Intentionally Treating the Hmong People of Siskiyou County as a Suspect Class

84.     To state an equal protection claim, Plaintiffs must prove they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To determine whether a rational basis exists for the Defendants, and each of them, the intent of the Defendants in establishing the method of enforcement of Ordinance No. 21-08 must be weighed against the effect of the policy on its "water users." There can be no rational basis for state action "that is malicious, irrational, or plainly arbitrary." *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004), *overruled on other grounds by Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528 (2005).

85.     Remarks by officials with Defendant COUNTY OF SISKIYOU as alleged herein (Defendant JEREMIAH LARUE and former Siskiyou County Sheriff Jon Lopey ["This is war"]) reflect an animus toward the Hmong people of Siskiyou County.  The arbitrary nature of prohibiting all vehicles with 100 gallons of water or more on county roads identified in the unnumbered Resolution (Exhibit D hereto) that has a disparate impact on the Hmong people of Siskiyou County and Plaintiffs are informed and believe that these types of remarks for public consumption are and were designed to vilify all Hmong people of Siskiyou County regardless of their criminal conduct or lack thereof.

86.     Plaintiffs are informed and believe and thereupon allege that Defendants COUNTY OF SISKIYOU, BRANDON CRISS, ED VALENZUELA, MICHAEL N. KOBSEFF, NANCY OGREN, RAY A. HAUPT and EDWARD KIERNAN intentionally concealed an unconstitutional policy and practice implemented through Ordinance Nos. 20-13, 21-07 and  21-08 and the unnamed Resolution (Exhibits A-D hereto) in order to avoid public comment and scrutiny.  Plaintiffs are informed and believe and thereupon allege that said Defendants targeted the Hmong people of Siskiyou County residing in the Mount Shasta Vista Subdivision of Siskiyou County because of the five-plus year campaign by Defendant COUNTY OF SISKIYOU to make them a suspect class of persons regardless of their conduct by associating them with the illicit marijuana industry.

87.     By justifying prevention of water trucks on the roads identified in the unnumbered Resolution (Exhibit D hereto), moreover, on the goal to deny access to water to the growers and "those people, not just the growers," identified by Defendant JEREMIAH LARUE in his public statements the day Ordinance Nos. 21-07 and 21-08 were considered on May 4, 2021, Defendants, and each of them, made the Hmong people a suspect class as a whole regardless of their criminality or lack thereof.

88.     The Supreme Court has noted that "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it be true, that the law bears more heavily on one race [or national origin] than another. It is also not infrequently true that the discriminatory impact . . . may for all practical purposes demonstrate

unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds." *Washington v. Davis*, 426 U.S. 229, 242 (1976). A classification that is ostensibly neutral but is an obvious pretext for racial discrimination or for discrimination on some other forbidden basis is subject to heightened scrutiny and ordinarily invalidation. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356 (1886); *Guinn v. United States*, 238 U.S. 347 (1915); *Lane v. Wilson,* 307 U.S. 268 (1939); *Gomillion v. Lightfoot*, 364 U.S. 339 (1960).

89.     Regardless of the intent of the Defendants, and each of them, Ordinance Nos. 20-13, 21-07 and 21-08 and the Unnumbered Resolution (Exhibits A-D hereto) have disparate impacts on the Hmong People of Siskiyou County.

**A Case in Controversy Exists Warranting Declaratory and Injunctive Relief**

90.     Defendant COUNTY OF SISKIYOU's Ordinance Nos. 20-13, 21-07 and 21-08 and Unnumbered Resolution and its enforcement methods impacting the Plaintiffs and the Hmong people of Siskiyou County in general present a concrete case in controversy. Plaintiffs lack an adequate remedy at law afforded to them in state or federal courts due to the substantial continuing, present adverse effects of these enforcement efforts on their access to water in Siskiyou County.

91.     The past wrongs suffered by Plaintiffs as alleged herein are evidence that there is a real and immediate threat of repeated injury and Defendants continue to enforce Ordinance Nos. 20-13, 21-07 and 21-08 and the Unnumbered Resolution in the manner Defendants have in the past.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

**SECOND CAUSE OF ACTION**

**(Claims for Monetary Damages for Violations of Due Process and Equal Protection Clauses of the Fourteenth Amendment to United States Constitution Arising Out of an Unconstitutional Policy and Practice Pursuant to 42 U.S.C. § 1983 — Against All Defendants)**

92.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

2⁴

93.     Plaintiffs, and each of them, have had their rights to equal protection of the laws and their rights to not be deprived of liberty and property without due process of law violated in contravention of the rights guaranteed by the Fourteenth Amendment to the United States Constitution. Such violations were committed by Defendants who were acting under the color of state law.

94.     There is a direct causal link between the conduct of the Defendants, and each of them, and the constitutional deprivations alleged herein. Plaintiffs, and each of them, have been damaged by the unconstitutional conduct of the Defendants, and each of them.

95.     The violations of the Plaintiffs' Fourteenth Amendment rights for being targeted for enforcement of Ordinance Nos. 20-13, 21-07 and 21-08 and their unnumbered Resolution were carried out by individual members of the Board of Supervisors and agents of Defendant COUNTY OF SISKIYOU as alleged herein. These constitutional violations were the product of an unconstitutional policy of Defendant COUNTY OF SISKIYOU. The individually named Defendants above the rank of deputy sheriff put into place these policies with knowledge that the Hmong people would be the target of enforcement since water interdiction efforts were confined to geographic locations where the Hmong people predominantly reside. As such, these "supervisor" individual defendants personally participated in the deprivation of constitutional rights or knew of the violations and failed to act to prevent them. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

96.     During the Lava Fire, Plaintiffs' Fourteenth Amendment rights to equal protection of the laws were also violated by CAL FIRE and its agents, who failed to engage in active firefighting efforts in the Shasta Vista subdivision, and passively let fires burn through the subdivision, after residents of the subdivision were ordered to cease their own firefighting efforts and evacuate. CAL FIRE and its agents engaged in active firefighting efforts in other areas threatened by the Lava Fire that were not populated with a significant number of Hmong residents.

97.     As a direct and proximate result of Defendants' conduct in violation of Plaintiffs' Fourteenth Amendment rights as set forth above, Plaintiffs have suffered, and continue to be

2:

1  deprived of their access to water, their property and they suffer physical and emotional distress,

2  and lost income.

3      98.      Defendants' actions and inactions are motivated by evil motive and intent and are

4  committed with reckless and callous indifference to Plaintiffs' federally protected rights.

5      WHEREFORE, Plaintiffs pray for relief as set forth herein.

6                          **THIRD CAUSE OF ACTION**

7  **(Claims for Monetary Damages for Violations of Fourth and Fourteenth Amendments to**
   **United States Constitution Arising Out of an Unconstitutional Policy and Practice**
8                **Pursuant to 42 U.S.C. § 1983 — Against All Defendants)**

9      99.      Plaintiffs reallege and incorporate herein by reference each of the allegations

10 contained in the preceding paragraphs of this Complaint.

11     100.     The Fourth Amendment to the United States Constitution seeks to secure "the

12 privacies of life" against "arbitrary power." Carpenter v. U.S., 138 S.Ct. 2206, 2214, 201

13 L.Ed.2d 507 (2018).  A central aim of the Framers of the Fourth Amendment was "to place

14 obstacles in the way of a too permeating police surveillance." United States v. Di Re, 332 U.S.

15 581, 595 (1948).

16     101.     The Fourth Amendment to the United States Constitution seeks to secure "the

17 privacies of life" against "arbitrary power." Carpenter v. U.S., 138 S.Ct. 2206, 2214, 201

18 L.Ed.2d 507 (2018).  A central aim of the Framers of the Fourth Amendment was "to place

19 obstacles in the way of a too permeating police surveillance." United States v. Di Re, 332 U.S.

20 581, 595 (1948).

21     102.     The violations of the Plaintiffs' Fourth and Fourteenth Amendment rights for

22 being targeted for enforcement of Ordinance Nos. 21-07 and 21-08 and the Unnumbered

23 Resolution were carried out by individual members of the Siskiyou Sheriff's Department as

24 alleged herein.  The violations of the Plaintiffs' Fourteenth Amendment rights by not providing

25 Hmong residents with firefighting and other emergency services during the Lava Fire, while

26 providing such services to other, non-Hmong, communities, were carried out by agents of CAL

27 FIRE as alleged here.  These constitutional violations were the product of unconstitutional

28 policies of Defendants COUNTY OF SISKIYOU and CAL FIRE. The individually named

Defendants above the rank of deputy sheriff put into place these policies with knowledge that the Hmong people would be the target of enforcement since water interdiction efforts were confined to geographic locations where the Hmong people predominantly reside. As such, these "supervisor" individual defendants personally participated in the deprivation of constitutional rights or knew of the violations and failed to act to prevent them. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).

103. There is a direct causal link between the conduct of the Defendants, and each of them, and the constitutional deprivations alleged herein. Plaintiffs, and each of them, have been damaged by the unconstitutional conduct of the Defendants, and each of them.

104. As a direct and proximate result of Defendants' conduct in violation of Plaintiffs' Fourteenth Amendment rights as set forth above, Plaintiffs have suffered, and continue to be deprived of their access to water and their property, and they suffered and continue to suffer physical and emotional distress, and lost income.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

## **PRAYER FOR RELIEF**

The conduct previously alleged, unless and until enjoined by order of this Court, will cause great and irreparable injury to Plaintiffs. Further, a judicial declaration is necessary and appropriate at this time so that all parties may know their respective rights and act accordingly.

WHEREFORE, Plaintiffs pray for judgment as follows:

1. A declaration that Defendants' actions, described herein, violate both the due process clause and equal protection clause of the Fourteenth Amendment to the United States Constitution;

2. A declaration that Ordinance No. 21-07 (Exhibit A hereto), Ordinance No. 21-08 (Exhibit B hereto) and the improperly conjoined unnumbered Resolution (Exhibit D hereto) are void as being in violation of the "formality" requirements required by Government Code §§ 25120—25124;

3. A declaration that Ordinance Nos. 20-13, 21-07 and 21-08 are overbroad;

4.      A declaration that Ordinance Nos. 20-13, 21-07 and 21-08 discriminate against the Hmong people of Siskiyou County;

5.      An order enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of Plaintiffs' civil rights under the Fourteenth Amendment to the United States Constitution;

6.      An order enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of Plaintiffs' civil rights under the Fourth Amendment to the United States Constitution;

7.      An order awarding actual damages in an amount to be proven at trial for violations of federally protected rights that have been clearly established;

8.      An order awarding punitive damages in an amount to be proven at trial for violations of federally protected rights that have been clearly established;

9.      An order awarding Plaintiffs' reasonable attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

10.     An order awarding such other and further relief as the Court deems just and proper.


Dated: July 15, 2021

Respectfully submitted,

/s/  Allison B. Margolin

Attorney for Plaintiffs
