**SPINELLI, DONALD & NOTT**
A Professional Corporation
DOMENIC D. SPINELLI (SBN: 131192)
J. SCOTT DONALD (SBN: 158338)
601 University Avenue, Suite 225
Sacramento, CA 95825
Telephone: (916) 448-7888
Facsimile:  (916) 448-6888

Attorneys for Defendants County of
Siskiyou; Jeremiah LaRue and Jesus
Fernandez, in their official capacities
as members of the Siskiyou County
Sheriff's Department and in their individual
capacities; Brandon Criss, Ed Valenzuela,
Michael N. Kobseff, Nancy Ogren, and
Ray A. Haupt, in their official capacities
as members of the Siskiyou County Board
of Supervisors and in their individual
capacities; Edward Kiernan, in his official
capacity as County Counsel for Siskiyou
County and in his individual capacity;
and DOES 1-100

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| Dilevon Lo, Jerry Vang, Nathan Thao, Mao Thao, Pao Lee, Antonio Lee, Koua Lee, Nhia Thai Vang, Zeng Lee, Der Lee and Khue Cha,<br><br>Plaintiffs,<br><br>vs.<br><br>County of Siskiyou; Jeremiah LaRue and Jesus Fernandez, in their official capacities as members of the Siskiyou County Sheriff's Department and in their individual capacities; and Brandon Criss, Ed Valenzuela, Michael N. Kobseff, Nancy Ogren, and Ray A. Haupt, in their official capacities as members of the Siskiyou County Board of Supervisors and in their individual capacities; Edward Kiernan, in his official capacity as County Counsel for Siskiyou County and in his individual capacity; and DOES 1-100,<br><br>Defendants. | Case No. 2:21-cv-00999-KJM-DMC<br><br>**DEFENDANT COUNTY OF SISKIYOU'S OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION**<br><br>Complaint Filed:  June 4, 2021<br><br>**[FEES EXEMPT PURSUANT TO GOVERNMENT CODE SECTION 6103]** |

SPINELLI, DONALD
& NOTT

## I.   INTRODUCTION

Plaintiffs' blatant attempt to mislead this Court should not be condoned. While some of them attempt to paint a picture that they are in a crisis due to the impact of the ordinances in question, pointing to the loss of chickens, pheasants and plants, the reality of the crisis that actually does exist in Mount Shasta Vista ("MSV") is related to what the water they seek is truly intended for. That is illegal cannabis cultivation. In the last week before this opposition was filed, a Hmong individual was pistol whipped and robbed inside MSV. (*Decl of Jeremiah LaRue; p.4:7-8*) Another Hmong individual was shot at by his Hmong neighbor during the night. (*LaRue Decl; p.4:*8) Two vehicles were vandalized and destroyed at one of the entrances to MSV, the vehicles were then occupied and surrounded by "residents" of MSV and windows were smashed in. (*LaRue Decl; p.4: 8-10*)  On July 23rd, six Hmong individuals were tied up with zip ties inside a structure and robbed at gunpoint with firearms that were described as AK-47 style assault rifles and semi-automatic handguns by three individuals from outside of the MSV area. (*LaRue Decl; p.4:11-13*) These are just a sampling of the prevalent criminal activity that pervades MSV as a direct result of illegal cannabis cultivation and that has enabled these purported "retirees and poultry farmers" to carry on an organized, incredibly lucrative and illegal business in an area that is suited for mass production of cannabis for the black market.

As soon as one gets past the hyperbole of Plaintiffs' allegations and looks at the evidence they rely upon for support, the artifice of Plaintiffs' suit is glaringly exposed. This is not a class action litigation and all of the Plaintiffs' claims must stand on their own. As the Court noted in its denial of Plaintiffs' temporary restraining order, not one of the original six could demonstrate that they are in fact harmed in any way, shape or form in a manner justifying extraordinary relief. As a result of the Court's ruling, counsel have added five new Plaintiffs in an attempt to evoke the sympathy of this Court by attempting to paint a pastoral fantasy they allege has been abated by the prohibition of water truck deliveries that typically range in volume between 2,500-4,000 gallons per truck. What is clearly apparent behind this charade is that these water trucks are vital to the continued illegal activities of an enormous criminal enterprise and that the ordinances are actually effective in furthering their intended result.

1   As will be demonstrated below, not one of the Plaintiffs whose individual claims must stand

2   or fall separately can support their suits, let alone injunctive relief. Ten of the eleven Plaintiffs

3   either own no property in MSV or if they do, it is raw land which cannot legally be inhabited. The

4   one exception has a well on his property. None of the Plaintiffs who own property have been cited

5   for a violation of the ordinances in question. Of the three Plaintiffs who have been cited, none of

6   them own property or legally inhabit property within MSV either through a camping permit or

7   through the legal habitation of a permanent single family home. Finally, not one of the Plaintiffs has

8   been denied a permit under either ordinance for the extraction of water under County Ordinance

9   21-07 or the delivery of water in excess of 100 gallons per truck under County Ordinance 21-08. As

10  such, Plaintiffs request for extraordinary relief through a motion for preliminary injunction should

11  be denied and Plaintiffs' entire action should be dismissed.

12  **II.    PROCEDURAL STATUS**

13  The hearing on Plaintiffs' Motion for Preliminary Injunction follows this Court's denial of

14  Plaintiffs' Motion for Temporary Restraining Order on June 15, 2021 at which time this Court set a

15  hearing on a Motion for Preliminary Injunction for July 28, 2021. (*Court Order, ECF No. 11, dated*

16  *06/15/21*)  In advance of the hearing on the current motion, the Court set a briefing schedule that

17  allowed Plaintiffs to file a Brief in support of their request for injunctive relief by June 30, 2021.

18  (*Court Order, ECF No. 11, dated 06/15/21*) Defendants were given until July 14, 2021 to provide

19  an Opposition to the motion for an injunction and Plaintiffs were given leave to file a Reply on July

20  21, 2021. (*Court Order, ECF No. 11, dated 06/15/21*)

21  On the afternoon of June 29th, this office was contacted by Counsel for Plaintiffs requesting

22  a continuance of the hearing so they would have more time to prepare their supporting brief.

23  Counsel indicated that the extra time was necessary due to forced evacuations of their clients

24  located in MSV as a result of the Lava fire. (*Declaration of J. Scott Donald, p.2:6-9*)  Plaintiffs'

25  Counsel stated that they intended to file a request to this Court for an extension which was then

26  submitted on June 29, 2021. (*Donald Decl, p.2:10-11*)  In their filing with this Court entitled

27  "Request to Continue Briefing and Hearing Schedule on Plaintiffs' Pending Motion for Preliminary

28  Injunction" Plaintiffs' counsel provided the following:

1   "In its June 15 order, the Court provided guidance on where the Plaintiffs'
    evidence fell short of meeting the legal standard for a temporary restraining
2   order and preliminary injunction. Specifically, the Court found that the
    Plaintiffs had not adequately shown that 'they themselves are likely to suffer
3   irreparable harm absent an injunction,' although the Plaintiffs had shown

4   through declarations 'that the County's ordinances and resolution will deprive
    people in the Hmong community of the water they need for many basic
5   needs.' Order at 9:22-26. The court explained that because these 'declarants
    are not parties … this court cannot grant injunctive relief to prevent
6   irreparable harm to third parties.' Order at 9:26-28." *Request to Continue
    Briefing and Hearing Schedule on Plaintiffs' Pending Motion for Preliminary
7   Injunction (ECF No. 15) at 1:2-13*

8       Plaintiffs' explained their request for a delay as being a result of the Lava fire which had

9   begun on June 24, 2021 but had spread in a manner that required an evacuation of the MSV

10  subdivision on June 28, 2021. As a result, Plaintiffs explained that their investigator had been

11  unable to complete a "planned investigation, including locating and interviewing people with

12  personal knowledge of the matters set forth in the Court's June 15th ruling." (*Request to Continue

13  Briefing and Hearing Schedule on Plaintiffs' Pending Motion for Preliminary Injunction, ECF No.

14  15, at 2:8-11.*)

15      Again, in a calculated move to evoke sympathy from this Court through inadmissible

16  hearsay newspaper articles and social media excerpts as well as declarations contending

17  unsupported alleged circumstances occurring to others rather than the plaintiffs themselves,

18  Plaintiffs took the opportunity to introduce a shooting and other acts, none of which from the

19  Plaintiffs' declarations had anything to do with the Plaintiffs **in this case**. Further, despite having

20  received the requested continuance from this Court, Plaintiffs **failed to supplement any of the**

21  **declarations for the original six Plaintiffs** and instead added five new ones and still more

22  declarations of third parties who have no standing in this case or offer evidence that supports any of

23  the eleven Plaintiffs' claims.

24      Pursuant to the Minute Order notifying the parties that the request for a continued briefing

25  scheduled was granted, this office agreed with Plaintiffs' request to continue the hearing schedule

26  for the filing of Plaintiffs' moving papers, opposition, reply and hearing for one week each.

27  (*Donald Decl, p.2:12-15*)  Subsequently, Plaintiffs' counsel requested additional time from this

28  office and it was agreed that the filing of Plaintiffs' moving papers would be further continued to

1   accommodate their request.

2       Despite their initial request for a continuance, Plaintiffs' were able to file Supplemental

3   Points and Authorities in support of their motion for preliminary injunction on June 30th.  On July

4   15, 2021, Plaintiffs' filed an "Additional Supplemental" Points and Authorities in support of their

5   preliminary injunction including declarations from five new Plaintiffs as well as declarations from

6   investigator Edward Szendrey and Chris Conrad.

7                              **III.    FACTS**

8       Prior to the arrival of the cannabis growers, MSV was an arid, mostly uninhabited and

9   sparsely-treed area of Siskiyou County. With very little available water, the only abundant resource

10  in the area was sunlight. However, the lure of easy money to be made on extraordinarily cheap land,

11  gradually brought cannabis growers to MSV first in trickles and then in droves. In 2015, due to the

12  alarming increase in cannabis growth, Siskiyou County passed an ordinance making it illegal to

13  cultivate cannabis outside. (*LaRue Decl, p.2:11-13*)  In response, cannabis growers switched over to

14  greenhouses which allowed the growers to increase yields by 2-3 times what they could grow

15  outside on a per annum basis. (*LaRue Decl, p.2:15-17*)  In approximately September of 2017, the

16  County issued an urgency resolution declaring a local state of emergency due to the proliferation of

17  indoor grow sites. (*LaRue Decl, p.2:18-19*)  Unfortunately, since 2017 illegal cultivation has not

18  decreased but in fact has exploded. (*LaRue Decl, Exhibit A*)

19      As with any significant criminal enterprise, there are many negative consequences as a

20  result of those unlawful activities. In the case of illegal cannabis cultivation in MSV, they have

21  included related violent crimes, environmental harm to the land and water, and harm to the actors

22  involved in the enterprise. According to Sheriff LaRue, there has been a marked increase in

23  dangerous felonies in MSV since 2017. (*LaRue Decl, Exhibit C*) While occupants of MSV are

24  typically distrustful of law enforcement and therefore hesitant to report crimes, his office has

25  received reports of armed robberies, assaults and murder where no such crimes were reported in

26  MSV prior to illegal cannabis cultivators moving in. A more detailed illustration of the extent of

27  criminal activity that has exploded in MSV since 2017 is set forth in the statistical analysis provided

28  by Sheriff LaRue. (*LaRue Decl, Exhibit B*)

SPINELLI, DONALD
& NOTT

4

DEFENDANT'S OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION

1       The negative environmental consequences as a result of a proliferation of cannabis

2   cultivation is equally significant. MSV has virtually no water aside from a few wells located on a

3   very small percentage of the "lots" located in the subdivision. As a result, the grow sites located in

4   MSV are dependent upon water delivery trucks to provide the necessary water for illegal cannabis

5   cultivation. (*LaRue Decl, pp.2:28-3:2*)  Approximately 100 or more trucks typically ranging in

6   volume between 2,500 -4,000 gallons each transport water to the illegal cannabis grows on a **daily**

7   basis. (*LaRue Decl, p.3:2-4*)  This water typically comes from ranchers who can charge premium

8   prices from the cannabis growers for the water that they would otherwise leave in the ground or

9   utilize for legitimate purposes. (*LaRue Decl, p.3:4-6*)  In the last year, the owners of more than

10  thirty wells adjacent to ranchers pumping water for illegal cannabis growers reported that their

11  wells had run dry due to the excessive pumping of ground water. (*LaRue Decl, 3:6-8*)  In response

12  to the crimes being committed and to this gross misuse of a precious resource during an extreme

13  drought, the County passed ordinances intending to limit these illegal cannabis growers access to

14  the ground water they required in order to grow their illegal crop. *See Siskiyou County Resolution,*

15  *20-17 and 20-18.*

16      In addition to its extraordinarily detrimental impact on the County's water supply, the illegal

17  cultivation of cannabis at the level known to occur in MSV requires the unregulated use of

18  significant amounts of insecticides, pesticides, rodenticides, and fertilizers.  (*LaRue Decl, 3:9-11*)

19  In the course of raids into MSV by law enforcement, significant unsanitary conditions including

20  trash and fire hazards have been noted which significantly impact the safety of County residents.

21  Prior to January of 2020, four carbon monoxide deaths were reported in the County as a result of

22  exposure to the poisonous gas inside of the illegal greenhouses. (*LaRue Decl, 3:18-19*)

23      Aside from their exposure to violent crime both from the outside and within the district

24  itself, the inhabitants of MSV live in a constant state of danger due to the conditions they have

25  created in furtherance of their enterprise. It should not be a surprise to anyone that the illegal

26  cannabis growers in MSV illegally occupy the land in unpermitted, unapproved and unregulated

27  structures. (*Declaration of Rick Dean, ECF No. 8-1, filed 6/10/21*) Legal occupation of a property

28  requires a demonstration that the inhabitants have a potable water source. (*Dean Decl, ECF No. 8-1,*

1   *filed 6/10/21)*   Every single family home in the County of Siskiyou is required to have a permanent

2   potable water source that meets the State drinking water standards. (*Dean Decl, ECF No. 8-1, filed*

3   *6/10/21)*  Plaintiffs in the instant matter contend that the water trucks that are in excess of 100

4   gallons as covered by the applicable ordinance provides them with water they need to cook with

5   and drink on a day to day basis. However, the water trucks utilized for water delivery to the illegal

6   cannabis growers in MSV are non-potable water haulers, that is pumped and delivered from

7   agricultural wells. *Dean Decl, ECF No. 8-1, filed 6/10/21)*

8       **A.**   **Plaintiffs**

9   **Dilevon Lo**[1]

10       According to his declaration, Dilevon Lo is 23 years old. The County records indicate that

11   Plaintiff Lo was driving a water truck that was seized in violation of County Code section 3.5-

12   13.102 on May 4, 2021. However, there is no evidence that he legally owns, resides or otherwise

13   legally inhabits property within MSV. County records indicate that Lo legally resides at an address

14   outside of the County. At the time of this Opposition, Lo has not applied for any water permit with

15   the County.

16   **Jerry Vang**

17       According to his declaration, Jerry Vang is 62 years old, which is consistent with the County

18   database that indicates he was driving a water truck seized as evidence for violating County Code

19   section 3.5-13.102 on May 5, 2021. These records further indicate that Plaintiff Vang resides

20   outside of the County and has at no time legally resided on property within MSV. Vang has never

21   applied for a water permit.

22   **Nathan Thao**

23       Plaintiff Nathan Thao does not appear in the County's database at all. This includes a record

24   search at the County Assessor and despite his contention that he "owns property" there is no record

25   that he legally resides in MSV. Furthermore, as he has not been cited for any criminal violations

26

27   [1] The information provided below corresponds with a chart attached as Exhibit A to the Declaration of J. Scott Donald which provides the source of the information contained in the chart in addition to the

28   information itself for readability and assistance to the Court.

1  including those associated with violations of the County ordinances in question, he does not appear

2  in the Sheriff Department records either. He has never applied for a water permit.

3  **Mao Thao**

4       Plaintiff Mao Thao indicates in his declaration that he is 49 years old. However, he is 59

5  years old. (*See Declaration of J. Scott Donald, Exhibit A, p.1*)  In his declaration, he does not

6  indicate that he owns property or resides in the County. For the relevant time period related to this

7  litigation, Plaintiff has never legally resided in MSV. He has received one citation for running a

8  stop sign and the Sheriff's records indicates that he resides outside of Siskiyou County.

9  **Pao Lee**

10      Consistent with his declaration, Plaintiff Pao Lee is 33 years old and was cited in violation

11  of County Ordinance 3-4.1501 on May 14, 2021. County records indicate that Plaintiff Lee has

12  never legally resided in MSV. Rather, consistent with the information provided when he was pulled

13  over, he resides outside of the County. He has never applied for any water permit.

14  **Antonio Lee**

15      Plaintiff Antonio Lee is 23 years old and has never been cited for any violations of County

16  ordinances. Because he was a passenger in Pao Lee's truck at the time Pao Lee was cited, Antonio

17  Lee's residence was recorded by the Sheriff's Office and he is a resident outside of the County. At

18  no time has Antonio Lee legally resided in MSV. He has never applied for a water permit.

19  **Koua Lee**

20      Plaintiff Koua Lee was born on August 16, 1981 according to the criminal records in

21  Siskiyou County Sheriff's Office which also indicate that he was detained during an illegal

22  cannabis cultivation search warrant on June 8, 2017 in Siskiyou County. At the time he was

23  detained, Plaintiff indicated that he was living at his brother's house at 7638 White Pine Road in a

24  different subdivision from MSV. While he owns five parcels in Siskiyou County, they all consist of

25  raw land with no building permits having been issued and Plaintiff Lee has never applied for and

26  received any form of a building permit, a permit to reside in a single family residence on his

27  property, or a camping permit. He has never applied for any form of a water permit.

28  ///

**Nhia Thai Vang**

According to his declaration, Plaintiff Vang is 75 years old and is also a resident and property owner in Siskiyou County. In reviewing the County Assessor's records, Vang does indeed own one property in MSV and the property has a well on it. Furthermore, there are no building permits associated with the property and Plaintiff Vang's legal residence is 14015 Feldman Road, Montague, California. Plaintiff Vang has never applied for a permit to obtain water.

**Zeng Lee**

In his declaration, Plaintiff Zeng Lee indicates that he is 49 years old. This is consistent with records in the Sheriff's Department which indicate that his date of birth is May 15, 1972. While Plaintiff contends that he owns property in MSV, the one lot he owns is assessed as raw land and no building permits have ever been issued for the property. Furthermore, there is no evidence that Lee has ever legally resided in the County. Plaintiff Lee has never applied for a water permit.

**Der Lee**

According to Plaintiff Der Lee's declaration he is 56 years old and owns property in Siskiyou County. Plaintiff's parcel in Siskiyou County has been assessed as raw land and no building permits have been issued. Plaintiff's legal residence is in Minneapolis, Minnesota. Plaintiff Lee has never applied for a water permit.

**Khue Cha**

According to Plaintiff Khue Cha's declaration, he is 75 years old and "has property" in Siskiyou County. However, no person by the name of Khue Cha appears in either the Assessor records or the Criminal records. There is no evidence that Khue Cha has ever applied for any form of a permit including a building permit, a camping permit, or a water permit.

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs Are Unlikely to Prevail on the Merits

In order for Plaintiffs to meet the requirements for the injunctive relief they seek, they individually each must prove that they 1) are likely to succeed on the merits; 2) will suffer irreparable harm in the absence of preliminary relief; 3) can prove the balance of equities tips in their favor; and 4) can show an injunction is in the public interest. *Winter v. Natural Resources*

1  *Defense Council*, 555 U.S. 720 (2008)  A failure for Plaintiff to prevail on any of the four factors

2  must result in a denial of the relief requested. *Dish Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th

3  Cir. 2011)  In the instant matter, Plaintiffs contend that "they are highly likely to succeed on the

4  merits of their claims." *MPA ISO Plaintiffs' Application for a TRO and Preliminary Injunction,*

5  *ECF No. 4, 21:22*  Plaintiffs argue that Ordinance No. 21-08 and the applicable resolutions are

6  racist and discriminatory on their face, as they expressly target Hmong areas for enforcement of

7  water restrictions that do not apply anywhere else in the County. *ECF No. 4, 21:22-23*  However,

8  the ordinances in question only target those involved in the illegal cultivation of cannabis. This

9  includes anyone of any race engaged in that activity located in the MSV or servicing the MSV area.

10  Plaintiffs' own declarations point to the fact that others besides people of Hmong descent have been

11  impacted by the ordinances including those that deliver water as well as non-Hmong recipients of

12  water. On its face, the ordinances clearly indicate what is supported by the declarations of County

13  personnel, that illegal cannabis cultivation in MSV is an enormous problem with a significant

14  impact on County resources and the quality of life for its inhabitants. Plaintiffs offer no evidence to

15  refute these truths and none to support a conclusion that the fact that there are many inhabitants of

16  MSV that are of Hmong descent is not only incidental but entirely irrelevant.

17  **B.    Plaintiffs' Actions Should Not Get Past the Pleading Stage**

18  When one considers that Plaintiffs have had the opportunity to submit Points and

19  Authorities and supporting evidence to this Court in support of their claim on four occasions and

20  yet still cannot establish that any one Plaintiff has an actual recoverable right for the relief sought in

21  their underlying complaint. Of note, while all of the Plaintiffs contend that they have some

22  connection to MSV, none of the Plaintiffs provide evidence that they are residents in permanent

23  single family dwellings or inhabiting MSV pursuant to a legal camping permit[2]. Further, none of the

24  Plaintiffs provide evidence that they are **not** illegally cultivating cannabis or how an ordinance that

25  is intended to prohibit trucks that typically bring in 2,500-4,000 gallons of water applies to their

26  alleged needs.

27  _____

28  [2] The only exception is Plaintiff Nhia Thai Vang who has a well on his property.

1  Since their initial pleadings, Plaintiffs have intentionally attempted to mislead this Court by

2  first omitting from their allegations the fact that a permitting process was available under the

3  applicable ordinances. After being called out on their omission, Counsel have attempted to

4  complicate the process through the declaration of their private investigator and nonsensical

5  conjecture. Again, not one of the Plaintiffs have provided evidence that they applied for a water

6  permit and were denied.

7  As set forth in the declarations by County officials intimately familiar with the permitting

8  process, legal users of water can obtain that water through a legally permitted water truck.

9  (*Declaration of Kirk Skierski, p.2:3-11* ) Permits are being issued for up to a solid calendar year and

10  are free. Further, an off parcel water permit allows its holder to deliver water on any road, any time,

11  to any **legal** user. Therefore, when Plaintiffs investigator claims that the "permitted property owner

12  must have a separate permit for each water truck owner/operator he or she provides ground water

13  to" this is actually false. (*Supplemental Affidavit of Edward Szendrey, p. 5-6)*

14  Based on the evidence provided by Plaintiffs, only three of the eleven have been impacted in

15  some way due to the enforcement of the ordinances in question. Those three are Dilevon Lo, Jerry

16  Vang and Pao Lee. Notably, all three are residents outside the County of Siskiyou. Not one of the

17  three provides any evidence that he lawfully resided in MSV at the time of his violation.

18  Furthermore, not one of the three provides admissible evidence to show that they were not acting in

19  the furtherance of an illegal cannabis cultivation activity at the time the water trucks they were

20  operating were seized. Most importantly, not one of the eleven Plaintiffs has applied for a water

21  permit. (*Donald Decl., Exhibit A, pp.1-4)* As such, at this point, every one of the eleven Plaintiffs'

22  claims is nothing but a prospective allegation that somehow they might be prejudiced against if they

23  are denied water after an application for a permit.

24  A moving party must satisfy the Court that the relief requested is needed. The necessary

25  determination is that there exists some cognizable danger of recurrent violation, something more

26  than the **mere possibility** which serves to keep the case alive. *United States v. WT Grant Co.* (1953)

27  345 U.S. 629, 633.  In this case the Plaintiffs' cannot meet the required burden.

28  ///

**C.    Plaintiffs Have Not Provided Sufficient Evidence to Support a Finding of Irreparable Harm**

"'An injunction is a matter of equitable discretion'" and is "'an extraordinary remedy that may only be awarded upon a **clear showing** that the Plaintiff is entitled to such relief.'" (*Earth Island Institution v. Carlton* (9th Cir. 2010 626, F.3d. 462, 469, *emphasis added*) "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mazurek v. Armstrong* (1997) 520 U.S. 968, 972

Despite an ample and extended opportunity to do so, the original six Plaintiffs have not provided a modicum of additional evidence to establish they will suffer the requisite imminent harm required to support an injunction.[3]  Plaintiffs' counsel are therefore relying on the declarations of the new Plaintiffs to establish "that the current and proposed new Plaintiffs own livestock and grow crops" and that they have "legitimate concerns about difficulties" finding water to meet basic needs over the next few weeks. (*Plaintiff's Additional Supplemental MPA (ECF No. 21) p. 6:5-14)* While the new Plaintiffs all contend that animals consisting of ducks, chickens and pheasants have died due to a lack of water, not one of the five Plaintiffs provides any evidence to substantiate that claim. While it is possible that Plaintiff have lost their birds due to a lack of water, it is equally possible that they have died for other reasons and there is certainly no evidence provided that establishes any expertise in animal husbandry let alone veterinary medicine on the part of the declarants, to credibly support those claims. However, even more compelling is a failure by any Plaintiff to show how it is that six weeks after the ordinances were passed, not one of them has applied for a water permit if in fact water is needed in excess of what they are legally able to obtain to address their needs. The water provided by the water trucks at issue is for agricultural uses only and is on a massive scale. Not surprisingly, none of the Plaintiffs, old or new, deny that any water from the trucks they seek to bring back to MSV is not intended to be used for illegal cannabis cultivation. While they are careful to point out other uses for that water in **addition** to illegal cannabis cultivation, all Plaintiffs are

---

[3] Plaintiffs' Additional Supplemental MPA references a supplemental declaration from original Plaintiff Jerry Vang, however, no such declaration was served on these Defendants.

1  careful not to deny their own involvement in the illegal enterprise or that they are an ancillary minor

2  user of the water that is primarily intended for the illegal enterprise.

3       While contending that they face imminent harm as a result of the ordinances in question and

4  inability to acquire adequate water, Plaintiffs argue through the declarations of their private

5  investigator and other unrelated third parties that the permitting process put into place by the

6  County that would allow qualified applicants to obtain water deliveries "would not be viable for the

7  thousands of residents of the Shasta Vista subdivision." *Plaintiffs' Additional Supplemental Points*

8  *and Authorities (ECF No. 21) p. 2:23-27*  In examining this argument, one must first address the

9  Plaintiffs' contention that there are "thousands of residents" living in MSV. *Plaintiffs' Additional*

10  *Supplemental Points and Authorities (ECF No. 21) p. 2:23-27*  As set forth in the Declaration of

11  Rick Dean, of the 1,628 parcels located in MSV only 85 have been developed with a single family

12  dwelling. Of those 85 dwellings, 45 of them are mobile homes. If there are indeed thousands of

13  residents in MSV, the vast majority are residing in unpermitted dwellings without proper sanitation,

14  refuse and trash accommodation and potable water. (*Dean Decl, ECF No. 8-1, filed 6/10/21*)

15       The declarations offered by Plaintiffs including that of Szendrey, aside from being based on

16  hearsay from non-parties and opinions that lack foundation, are also incorrect. The permitting

17  process points out that permits in accordance with the applicable ordinances are free, typically take

18  1-2 days to process, are good for one full year, and only one of the two permits are required for a

19  household. Furthermore, Plaintiffs' argument is unpersuasive as none of the Plaintiffs have tested

20  the process. Thus, their excuse begs the question of how Plaintiffs can argue that they are in

21  imminent peril when they are not willing to go through the "inconvenience" of obtaining a water

22  permit.

23       The water trucks subject to the ordinance are not conveyors of potable water safe for

24  drinking, cooking and related uses. These ordinances apply only to trucks carrying large quantities

25  of agricultural water that is untreated, unpurified and is not intended for personal use. Obviously,

26  the intended use for the water which Plaintiffs in this litigation are pursing is for illegal cannabis

27  cultivation. In effect, Plaintiffs are asking this Court to remove a road block to further facilitate

28  their criminal enterprise.

1    Through affidavits from their investigator Szendrey, Plaintiffs' have tried to infer that the

2  ordinances in question are preventing them from fighting wildfires such as the Lava Fire. As set

3  forth in Defendants' objections to Mr. Szendrey's affidavits, he does not have the requisite

4  expertise to render opinions with respect to unqualified, uncertified and untrained lay people

5  fighting wildfires. As the declaration of Brian Schenone illustrates, fighting fires is not and cannot

6  be done by lay people including the inhabitants of MSV. (*Schenone Decl, p. 3:18-28*) In the case of

7  the Lava Fire, Plaintiffs were under an evacuation order and they did not have an option to fight the

8  fire. This was for their own good and the good of those who were trained and legitimately trying to

9  fight the fire. It should be noted, that while the Lava Fire was active and the evacuation order was in

10  place, inhabitants of MSV actually blocked the ingress and egress of emergency vehicles utilizing

11  water trucks as a barricade.

12    **D.    The Balance of Equities Weighs in Favor of Defendants**

13    A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter,*

14  *supra*, 129, S. Ct., at pp. 376-377 … [C]ourts 'must balance the competing claims of injury and

15  ;must consider the effect on each party of the granting or withholding of the requested relief.'

16  *Winter, supra*, 129, S. Ct., at pp. 376-377  In exercising their sound discretion, courts of equity

17  should pay particular regard for the consequences in employing the extraordinary remedy of

18  injunction. *Winter, supra*, 129, S. Ct., at pp. 376-377

19    Despite acknowledging that this Court, in its June 15, 2020 Order denying a temporary

20  restraining order, noted that a question remained as to whether or not the balance of the equities

21  weighed in Plaintiffs' favor or in that of the public interest, no additional evidence or argument is

22  offered to support Plaintiffs' position.

23    In this particular instance, the ordinances at issue are intended to address and to date have

24  forwarded the significant and vital public interests for the citizens of Siskiyou County. In the first

25  place, the evidence glaringly shows that the residents and one must conclude the Plaintiffs in this

26  case, are part of a massive criminal enterprise that the ordinances are intended to suppress. The

27  declaration of Sheriff LaRue establishes without question that since cannabis growers moved from

28  outdoor cultivation to utilizing greenhouses, the illegal cannabis industry in MSV has virtually

1   exploded. This is illustrated in the satellite photography attached to the declaration of Sheriff

2   LaRue. (*LaRue Decl, Exhibit A*) As opposed to the analysis provided by Plaintiffs' cannabis expert,

3   Chris Conrad, Sheriff LaRue has seen the actual greenhouses depicted in the aerial photographs on

4   numerous occasions. However, it is also reflected in the statistics which show dramatic increases in

5   plants and processed marijuana seized since 2017. In conjunction with the illegal cultivation,

6   violent felonies have mushroomed and threaten all citizens of the County, including those

7   inhabiting MSV.

8         Plaintiffs do not deny that there is a proliferation of illegal cannabis cultivation in MSV.

9   However, they argue that it is also happening elsewhere. As the declarations of County employees

10   including Sheriff LaRue illustrate the magnitude of cannabis cultivation in MSV is vastly greater

11   than in any other area of the county.

12         In support of their position that MSV is not the only area where there is cannabis cultivation,

13   Plaintiffs offer a declaration prepared by "court-qualified cannabis expert" Chris Conrad. Through

14   Conrad, Plaintiffs argue that there are other large cannabis grow areas in Siskiyou County which are

15   not subject to the water truck ban. While Conrad may have established in his declaration that he is

16   qualified to testify regarding the cultivation of cannabis, the opinions that are germane to the issues

17   before this Court are not supported. As set forth in his declaration, his opinions are based on a

18   review of "cannabis investigations in among other places Siskiyou County." However, he provides

19   no foundation to support that he is an expert with respect to the investigation of illegal cannabis

20   cultivation. Conrad argues that "images on google" that he reviewed and examined indicate that

21   there is a "strong possibility that ground water has been and is being used to irrigate numerous,

22   large and densely concentrated cannabis gardens in other areas of the County, not subject to the

23   water truck ban." (*Declaration of Conrad ¶ 6-9*)  However, Conrad provides no evidence that he

24   physically confirmed that what might be concentrated cannabis gardens actually were cannabis

25   gardens through his own eyes. Notably, Conrad does not address the significant level of illegal

26   cannabis cultivation in MSV. He does not explain how the images from a satellite can differentiate

27   between cannabis and other crops. He does not address the criminal activities that are so much more

28   prevalent in MSV than in the other areas depicted on his Google maps. Finally, he offers nothing to

1 address the environmental impact of water specifically being drawn outside of MSV and exported

2 to MSV for illegal pot use. Those questions, which are addressed by the declarations of the

3 Defendants demonstrate why the equities favor the Defendants.

4      As set forth in the declarations of County employees including Sheriff LaRue, the areas

5 impacted by the ordinances including MSV have by far the highest level of illegal cannabis

6 cultivation both in size and scope. There are more greenhouses, more growers, and as a result far

7 more crime in MSV. In MSV, cannabis cultivation is a large scale enterprise and while there is

8 undoubtedly illegal cannabis cultivation in other parts of the county it is nowhere near the scope

9 and the limited resources to fight this crime have been concentrated in the area where they can do

10 the most good.

11      None of the arguments or evidence presented by Plaintiffs' counsel address the other public

12 benefits furthered by these statutes. For instance, Plaintiffs did not refute that they and other

13 residents of MSV are essentially camping in unpermitted structures causing waste to the land

14 through the illegal discharge of chemicals, pesticides, human waste and other refuse. None of the

15 Plaintiffs or their attorneys address the issue of the impact on groundwater through the depletion of

16 this resource in order to further a criminal enterprise. Whether or not MSV residents **could** cultivate

17 cannabis with less water, (as appears to be the suggestion of Chris Conrad) there is no evidence

18 provided that the 100 gallon water trucks targeted by the ordinances are used for anything else but

19 that use. As the Court pointed out in its June 15th Order, Plaintiffs have not provided evidence that

20 they need trucked in ground water (as opposed to potable water) of 100 gallons or more for any

21 other reason than illegal cannabis cultivation.

22                    **V.   CONCLUSION**

23      Based on the evidence it is clear that the Plaintiffs in this case have only one intent that that

24 is to continue a criminal enterprise. It is respectfully requested that this Court denies Plaintiffs'

25 current request for relief and in fact, dismisses their action entirely.

26 Dated: July 28, 2021          **SPINELLI, DONALD & NOTT**

27             By    /s/ J. Scott Donald

28                J. SCOTT DONALD
               Attorneys for Defendants

SPINELLI, DONALD
& NOTT

DEFENDANT'S OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION