1   **SPINELLI, DONALD & NOTT**
A Professional Corporation
2   DOMENIC D. SPINELLI, SBN: 131192
J. SCOTT DONALD, SBN: 158338
3   601 University Avenue, Suite 225
Sacramento, CA 95825
4   Telephone:  (916) 448-7888
Facsimile:  (916) 448-6888
5
Attorneys for Defendants County of
6   Siskiyou; Jeremiah LaRue and Jesus
Fernandez, in their official capacities
7   as members of the Siskiyou County
Sheriff's Department and in their individual
8   capacities; Brandon Criss, Ed Valenzuela,
Michael N. Kobseff, Nancy Ogren, and
9   Ray A. Haupt, in their official capacities
as members of the Siskiyou County Board
10  of Supervisors and in their individual
capacities; Edward Kiernan, in his official
11  capacity as County Counsel for Siskiyou
County and in his individual capacity;
12  and DOES 1-100.

13                UNITED STATES DISTRICT COURT

14              EASTERN DISTRICT OF CALIFORNIA

15                   SACRAMENTO DIVISION

16  Dilevon Lo, Jerry Vang, Nathan Thao, Mao        Case No.:  2:21-cv-00999-KJM-DMC
    Thao, Pao Lee, Antonio Lee, Koua Lee, Nhia
17  Thai Vang, Zeng Lee, Der Lee and Khue Cha       **DEFENDANTS' SUR REPLY IN
                                                    SUPPORT OF OPPOSITION TO
18                Plaintiffs,                       PLAINTIFFS' REQUEST FOR
                                                    PRELIMINARY INJUNCTION**
19         vs.

20  County of Siskiyou; Jeremiah LaRue and          Complaint Filed: June 4, 2021
    Jesus Fernandez, in their official capacities as  First Amended Complaint Filed: July 15, 2021
21  members of the Siskiyou County Sheriff's
    Department and in their individual capacities;
22  and Brandon Criss, Ed Valenzuela, Michael
    N. Kobseff, Nancy Ogren, and Ray A. Haupt,
23  in their official capacities as members of the
    Siskiyou County Board of Supervisors and in
24  their individual capacities; Edward Kiernan,
    in his official capacity as County Counsel for
25  Siskiyou County and in his individual
    capacity; and DOES 1-100,
26
                  Defendants.
27

28

SPINELLI, DONALD
& NOTT                   DEFENDANTS' SUR REPLY ISO OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION

## I.     INTRODUCTION

Plaintiffs contend that three ordinances with multiple purposes including water conservation in a time of extreme drought; combatting rampant criminal activity; and mitigating the environmental impact of those illegal activities are racially motivated. As evidence they cite a disparate impact to citizens associated with the area where the rampant criminal activity is occurring. Because many or most of the citizens in that area are of a specific race, they argue that the ordinances must be racist even though they never deny the acts the ordinances seek to curtail are actually occurring at an extraordinary rate in that area. Plaintiffs claim that statements attributed to Defendants and representatives of the County which only reference the criminal activity are evidence of the racist intent of the Defendants. As will be discussed in detail below, Plaintiffs' claims that the ordinances in question are in violation of the Fourteenth Amendment are entirely without merit.

## II.     LEGAL ARGUMENT

### A.     The Ordinances In Question Do Not Violate The Equal Protection Clause Of The Fourteenth Amendment

In support of their Motion for Preliminary Injunction, Plaintiffs' argue that they are highly likely to succeed on the merits of their underlying claim that the Defendants' enactment of the three ordinances violate the Fourteenth Amendment. *Plaintiffs' Reply (ECF No. 33) p. 20* Plaintiffs do not provide any argument or analysis that any of the ordinances are racially discriminatory on their face, but argue that because there is a disparate impact to persons of Hmong heritage living in Mount Shasta Vista (hereinafter "MSV") and that as a result, the actions of Defendants in adopting the ordinances and their subsequent enforcement are unconstitutional. Plaintiffs further argue that this Court must review the ordinances under a strict scrutiny standard due to their contention that the intent behind the ordinances were motivated almost exclusively by racial purposes. *Plaintiffs' Reply (ECF No. 33) p. 23:3-5*

It is only when a facially neutral law is proven to be motivated by a racial purpose or object that strict scrutiny is warranted. *Miller v. Johnson* 515 U.S. 900, 913. The task of assessing a jurisdiction's motivation requires the Trial Court to perform a "**sensitive inquiry** into such

1  circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v.*

2  *Metropolitan Housing* 429 U.S. 252, 266 (1976)[*emphasis added*].  In *Arlington Heights*, the

3  United States Supreme Court reviewed whether or not evidence that a government action results in

4  a racially disproportionate impact is unconstitutional solely because of that impact. *Village of*

5  *Arlington Heights v. Metropolitan Housing* 264-265 (1976). The Court instructs that while

6  disproportionate impact is not irrelevant it is also not the sole basis for determining invidious racial

7  discrimination by a public entity. *Id.*  Rather, Plaintiffs must present proof of racially discriminatory

8  intent or purpose in order to show a violation of the Equal Protection clause. *Id.* This rule has been

9  applied and upheld by the Court in such official actions as election redistricting, *Hunt v. Cromartie*

10  526 U.S. 541 (1999); Rezoning by a Housing Commission; *Village of Arlington Heights v.*

11  *Metropolitan Housing* 429 U.S. 252 (1976); and the testing processes for the hiring of police

12  officers by a city police department. *Washington v. Davis* 426 U.S. 229 (1976)   Consistent among

13  all of these cases is the Court's emphasis that the impact of the official action whether it bears more

14  heavily on one race than another may provide a starting point for the "sensitive inquiry" to be

15  conducted by the Court, but the Court's determination must rely on either circumstantial or direct

16  evidence of intent that the discriminatory purpose was the motivating factor for the public entity to

17  perform the act(s) in question. *Village of Arlington Heights v. Metropolitan Housing* 265-266

18  (1976). *Village of Arlington Heights* sets forth relevant factors to be considered by the Trial Court

19  including a) the historical background of the act to see if it reveals a series of official actions taken

20  for invidious purposes; b) the sequence of events leading up to the challenged action; c) departures

21  from the normal procedural sequence in particularly substantive departures; and d) the legislative or

22  administrative history. *Id.* 266-268

23          1.   The Historical Background of the Ordinances is Racially Neutral

24       While Plaintiffs recognize that this Court must review the historical background of the

25  decision makers relative to the enactment of the ordinances in question, no evidence is cited to

26  support racist motive. The historical sequence of the ordinances is well known and is

27  chronologically set forth in the findings in declarations which accompany all three of the ordinances.

28  In chronological sequence, Ordinance No. 20-13 was enacted on August 4, 2020 at a regular meeting

SPINELLI, DONALD
& NOTT

1  at the Board of Supervisors in public hearing pursuant to the Brown Act. *Declaration of Edward*

2  *Kiernan, 2:14-15*  As with all three of the ordinances at issue, there was more than one stated

3  purpose behind 20-13. As noted in *Village of Arlington Heights*, it can rarely be said "that a

4  legislature or administrative body operating under a broad mandate made a decision solely by a

5  single concern, or even that a particular purpose was the 'dominant' or 'primary' one. In fact it is

6  because legislators and administrators are properly concerned with balancing numerous competing

7  considerations that Court's refrain from reviewing the merits of their decisions, absent a showing of

8  arbitrariness or irrationality." *Village of Arlington Heights v. Metropolitan Housing* 429 U.S. 252,

9  265 (1976) The stated purposes for which Ordinance No. 20-13 was enacted included the

10  preservation of ground water, *Ordinance No. 20-13, Section 1(F)*; the protection of public health,

11  welfare and safety of the residents of the County, *Ordinance No. 20-13 Section 1(G)*; and to limit the

12  extent of illegal cannabis cultivation and the attendant criminal activities and negative impact on the

13  environment and the health, safety and welfare of Siskiyou County residents. *See Declaration of J.*

14  *Scott Donald, Exhibit A; and Declaration of Ray A. Haupt.*

15      Ordinances 21-07 and 21-08 were both enacted on May 4, 2021 at a regular meeting of the

16  Board of Supervisors during a public hearing and following an opportunity for public comment

17  pursuant to the Brown Act. *Kiernan Decl., 2:16-18*  By the time 21-07 and 21-08 were enacted, the

18  County had been classified as being in "extreme drought" and by March 5, 2021 the United States

19  Department of Agriculture had notified Governor Newsom that it had designated Siskiyou County

20  as a primary natural disaster area due to the drought. *Donald Decl., Exhibit B, C.* As of April 21,

21  2021, the U.S. drought monitor published by the National Integrated Drought Information System

22  classified 62.65% of Siskiyou County as experiencing extreme drought. *Donald Decl., Exhibit B, C.*

23  In this backdrop of drought, County personnel received complaints from constituents of land use

24  violations and the undesirable effects of ground water depletion from local wells associated with

25  neighboring and adjacent land owners pumping large volumes of ground water into water trucks for

26  off parcel use. *Donald Decl., Exhibit B, Section 1(N)* Local law enforcement officers and code

27  enforcement officers had observed large quantities of ground water being extracted from local wells

28  and then delivered in water trucks off the parcel from which the extraction occurred to illegal

1   cannabis cultivation sites, most of which were without legally-established residences and were

2   being used exclusively for illegal cannabis cultivation. *Donald Decl., Exhibit B, Section 1(O)*.  In

3   turn, 21-08 which limits the utilization of water trucks, specifically referenced a daily usage of 9.6

4   million gallons every day expended on illicit cannabis production in Siskiyou County. *Donald*

5   *Decl., Exhibit C, Section 1(H)*.  In addition to referencing the excessive use of a precious resource

6   for an illegal enterprise, the findings in support of the enactment of 21-08 referenced the impact of

7   water truck usage in neighborhoods where such activity was illegal, and created dangerous driving

8   conditions and health hazards. *Donald Decl., Exhibit C, Section 1(I)*.  Furthermore, it was found

9   that water trucks enabled a continuing criminal operation within the neighborhoods that were

10  causing widespread environmental hazards and were populated with unpermitted structures where

11  workers illegally resided and raw human waste was being discharged directly into the soil. *Donald*

12  *Decl., Exhibit C, Section 1(I-K)*

13       Plaintiffs argue that there is no reasonable explanation for the ordinances at issue here other

14  than racial animus. *Plaintiffs' Reply (ECF No. 33) 21:27-28*  Plaintiffs offer that this is due to a

15  conclusion that the water truck ban exclusively targets specific roads leading to Hmong communities

16  as opposed to others leading to white communities and that the Sheriff has acknowledged that

17  cannabis grows are concentrated in areas outside of MSV subdivision and only 3% of the illegal

18  grows are in the MSV subdivision as opposed to other divisions of the County. *Plaintiffs' Reply*

19  *(ECF No. 33) 21:28-22:4*  However, as set forth in the declaration of Sheriff Jeremiah LaRue, the

20  level of illegal cannabis cultivation and its negative impact is of a far greater magnitude in the two

21  areas specifically impacted by the resolution associated with 21-08, which defines the roads where

22  efforts are being concentrated to enforce the water truck ordinance. *See Declaration of Jeremiah*

23  *LaRue*  Furthermore, Plaintiffs claim that only 3% of illegal cannabis cultivation occurs in MSV is

24  based on an entirely misleading and incorrect observation taken out of context in a strategic plan that

25  the County provides to one of its stake holders and **references only a small part** of the MSV

26  subdivision. *LaRue Decl.* While at this point it is impossible to specifically designate a percentage of

27  cultivation sites located in MSV, it is much closer to more than 10 times the percentage provided by

28  Plaintiffs. Furthermore, it is not just the number of cultivation sites at issue, although that is

1  significant, it is also the magnitude of environmental harm these particular sites inflict on the

2  County.

3        2.        Sequence of Events Leading up to the Challenged Ordinances Reveal No
                   Evidence of Discriminatory Intent

4

5        The Supreme Court recognized in *Village of Arlington Heights* that the sequence of events

6  leading up to the enactment of ordinances that have a disparate impact is relevant in a Trial Court's

7  inquiry as to whether those ordinances are in fact discriminatory. *Village of Arlington Heights* p.

8  269  In that case, the Court reviewed the sequence of events leading up to the defendants enactment

9  of a rezoning plan that weighed more heavily on racial minorities. *Id.*  However, a review of the

10  timing and processes leading up to the housing authorities decision including statements made by

11  the planning commission and village board members as reflected in the official minutes focused

12  almost exclusively on the zoning aspects and zoning factors and provided no evidence of an

13  invidious purpose. *Id.* 270

14        Plaintiffs offer little if any evidence to support a conclusion that the sequence of events

15  leading to the enactment of the ordinances in this case are indicative of an invidious intent on the

16  part of Defendants. All of the events leading up to the enactment of the ordinances in question are a

17  matter of public record. As noted above and set forth in the Declaration of Edward Kiernan, all

18  three ordinances were subject to public hearing and public comment after being duly noticed before

19  the meetings where the ordinances were vetted. Contextually, the ordinances were enacted during a

20  time of extreme drought and in the midst of an ongoing and increasing concern regarding illegal

21  cannabis cultivation in the County and in MSV. Plaintiffs had every opportunity to speak their mind

22  at any of the hearings where the ordinances were reviewed and then voted on. There is no evidence

23  that at any time racially-charged language was used and there is no reference in any of Plaintiffs'

24  moving papers that the Board of Supervisors charged with enacting the ordinance displayed any

25  evidence of an invidious purpose behind their decision.

26        While Plaintiffs recognize that this Court's review should include things as the discussion at

27  public hearings and the content of flyers circulated throughout the community that might show an

28  invidious intent, they offer no such evidence themselves. *Plaintiffs' Reply (ECF No. 33) 21:17-22*

1   Plaintiffs offer no evidence of written materials circulated in advance or during the time the

2   ordinances in question were enacted. There are no statements cited by any of the Board members

3   who voted on the ordinances which one could reasonably infer evidence of invidious intent. Instead,

4   Plaintiffs rely on statements they attribute to Sheriff LaRue, who is charged with enforcing the

5   ordinances and not enacting them, taken out of context and misconstrued. As set forth in the

6   declaration of Sheriff LaRue, Plaintiffs have completely mischaracterized what he has said and why

7   he said it. It is obvious from a plain reading of the newspaper articles relied upon by Plaintiffs that

8   Sheriff LaRue consistently refers to individuals committing crimes in the County where he is

9   charged with enforcing the law.

10              3.      <u>The Procedural Processes Followed by Defendants in Enacting the</u>
                        <u>Ordinances in Question Further Evidence the Proper and Intended Purpose of</u>
11                      <u>the Ordinances</u>

12          The task of assessing a jurisdiction's motivation is not a simple matter but is an inherently

13   complex endeavor that requires the Trial Court to perform a sensitive inquiry into such

14   circumstantial and direct evidence of intent as may be available. *Hunt v. Cromartie* 526 U.S. 541,

15   546 (1999)  In furtherance of its inquiry, a Trial Court may consider departures from a normal

16   procedural sequence that might evidence an improper purpose. *Village of Arlington Heights,* 267.

17   *Village of Arlington Heights* instructs that substantive departures from the normal procedural

18   sequence in taking an official action may be relevant for the purposes of determining an invidious

19   purpose. *Id.* 267

20          In the instant matter, the procedural processes followed by the Defendants in enacting the

21   ordinances in question do not show an invidious purpose. All three ordinances were passed as

22   urgency ordinances in light of the drought and continuing criminal activities in the County related

23   to cannabis cultivation. As noted in the declaration of County Counsel for Siskiyou County, Edward

24   Kiernan, an urgency ordinance goes into effect after one hearing and immediately whereas a regular

25   ordinance goes into effect after two hearings and a 30-day delay. (*Kiernan Decl*, *2:19-20*)  Both

26   types of ordinances must be posted online a minimum of 72 hours before the Board meetings at

27   which point they are heard and the public is then able to comment prior to any Board action.

28   (*Kiernan Decl*, *2:20-22*)  The fact that the circumstances surrounding the enactment of the

1    ordinances specifically, the drought and increased crime, led to the initial adoption of the

2    ordinances as urgency ordinances meant that all three were subject to public hearing before they

3    were enacted. However, all three ordinances were subsequently adopted as regular ordinances and

4    therefore even further public comment was afforded to anyone including the Plaintiffs. (*Kiernan*

5    *Decl, 2:23-25*)  Plaintiffs have offered no evidence that they or anyone else was deprived of an

6    opportunity to be heard on the ordinances in question. Furthermore, they offer no evidence to show

7    that during public comment there was anything to indicate an invidious purpose. The only purpose

8    to the ordinances has been reflected in the declarations of the Defendants and in the ordinances

9    themselves.

10                     4.        Nothing in the Legislative or Administrative History With Respect to the
                                 Ordinances in Question Supports a Conclusion of Invidious Intent
11

12            The legislative history relative to an official action may be highly relevant in the Trial

13    Court's "sensitive inquiry" in evaluating the existence of invidious intent. *Village of Arlington*

14    *Heights*, p. 268  Plaintiff's acknowledge that the Court should consider the legislative history of the

15    ordinances in question. *Village of Arlington Heights*, 21:23-26  However, Plaintiffs' offer no

16    evidence at all regarding the administrative history other than a reference to a statement made by

17    the District Attorney which they contend justified the enactment of the ordinances.  *Plaintiffs' Reply*

18    *(ECF No. 33) 26:5-10*  In the first place, the statement attributed to the County District Attorney is

19    hearsay within hearsay as the District Attorney's Office is not a party to this litigation and is

20    therefore neither an admission by a party nor even if it was, is the issue with respect to the Court

21    itself properly authenticated in order to survive a second level of hearsay. However, even if

22    absolutely true on its face, the District Attorney's opinion, and motivation with respect to the

23    primary motive for his office is neither binding nor relevant to this Court's inquiry. Defendants

24    have never shied away from the fact that the ordinances in question are focused on several purposes

25    including deterring criminal cannabis cultivation. Whether the District Attorney's Office is more

26    concerned about that purpose versus water conservation is not an issue. What is missing from the

27    District Attorney's statement is any racial charged words which would infer that the intent of his

28    office is to single out one race verses another as opposed to handling crime.

1       The only statement attributed to a decision maker appears in Plaintiffs' Reply 25:25-26:21.

2   Again, Plaintiffs provide only a partial quote which is not authenticated and is therefore hearsay but

3   attributes to Supervisor Haupt an intent to the enactment on the statute to "combat organized crime

4   and criminal cartels operating in our County." *Plaintiffs' Reply (ECF No. 33) 25:25-26:21*

5   Plaintiffs argue that this statement suggests that all Hmong people living around roads subject to the

6   trucking ban are involved with organized crime. Plaintiffs' argument deflects from the real issue

7   here. The statements of Supervisor Haupt, Sheriff LaRue and the District Attorney all address

8   crime. None of the statements mention or refer to the racial background of the suspected actors in

9   those crimes.

10       **B.**    **The Strict Scrutiny Standard Does Not Apply to the Ordinances at Issue**

11       Without providing the requisite evidence of an invidious purpose, Plaintiffs make the leap in

12   their analysis that the ordinances in question are subject to strict scrutiny. *Plaintiffs' Reply (ECF*

13   *No. 33) 23:3-5*  Plaintiffs have failed to establish with sufficient admissible evidence the existence

14   of an invidious purpose under *Washington v. Davis*, *Village of Arlington Heights* and *Hunt*. In *Hunt*

15   *v. Cromartie*, the Supreme Court noted that strict scrutiny applies if race is the "predominant factor"

16   motivating a legislative decision. *Hunt v. Cromartie, p. 547*  "Rarely can it be said that a legislature

17   or administrative body operating under a broad mandate made a decision motivated solely by a

18   single concern or even that a particular purpose was the dominant or primary one." *Village of*

19   *Arlington Heights, p. 266*  "In fact, it is because legislators and administrators are properly

20   concerned with balancing numerous competing considerations that Court's refrain from reviewing

21   the merits of their decisions, absent as showing of arbitrariness or irrationality." *Id*  Only when a

22   showing that a discriminating purpose is a motivating factor in the public body's decision is judicial

23   deference no longer justified. *Id.*

24       In the instant matter, Plaintiff's reliance on *Loving v. Virginia* and *Korematsu v. United*

25   *States* directly bears on the applicable standard at issue. In both of those cases, race was the central

26   issue of the official act in question. *Korematsu* dealt with an exclusion order from the Commanding

27   General of the Western Command for the U.S. Army during World War II specific to Japanese

28   American citizens and whether or not their Japanese ancestry should exclude them from being able

to serve in the U.S. military. *Korematsu v. United States*, 323 U.S. 214 (1944).  *Loving v. Virginia* relates to state laws in Virginia prohibiting interracial marriage. *Loving v. Commonwealth of Virginia*, 388 U.S. 1 (1967).  Consistent with both of the cases relied upon by Plaintiffs, the application of the strict scrutiny standard is limited to those cases where race is the predominant factor motivating the legislators actions. *Hunt v. Cromartie* 526 U.S. 541 (1999) Plaintiffs have not provided any evidence let alone sufficient evidence that race is a predominant factor motivating the enactment of the three ordinances at issue.

### C.      The Ordinances Have a Legitimate Rather Than a Racially Based Purpose

As the evidence before this Court should illustrate, the purposes behind the ordinances in question pertain to criminal cannabis use and protection of a precious resource during a drought from unconscionable waste as a tool to aid that crime. Nothing about the ordinances in question reflect a purpose to deny law abiding citizens of Siskiyou County of an essential "daily life need." Only agricultural well water, by Plaintiffs own admission drawn from non-Hmong people including Mr. Grissett, have been targeted by these ordinances. By their own admissions, Plaintiffs concede that illegal cannabis cultivation is rampant in MSV. Plaintiffs also concede that some level of agricultural water is required for plants, such as illegal cannabis, to grow. Plaintiffs' arguments are clearly intended to divert this Court from the true underlying "purpose" behind their lawsuit. This purpose is evident based on what Plaintiffs have not provided. To date, Plaintiffs' have completely avoided the distinction between potable water and agricultural water. This is obviously because it is only the agricultural water they are interested in obtaining to further their illegal purposes. Plaintiffs have avoided providing any information which would enable this Court to know precisely the conditions under which they live in MSV. They do not provide their addresses or photographs of their "homes." Rather, they provide photos of dead chickens and discuss historical events from 50 years ago.  Without knowing precisely how Plaintiffs are actually residing in MSV, this Court has no way of actually understanding and determining the actual purpose and need of the water Plaintiffs require. Additionally, no one has explained how or why every Plaintiff has an alternate legal residence outside of MSV.

Plaintiffs have never shown an inability to obtain potable water. They have never provided

SPINELLI, DONALD
& NOTT

DEFENDANTS' SUR REPLY ISO OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION

1 | this Court evidence that they were unable to, for any reason, obtain necessary permits to legally

2 | obtain the agricultural water in excess of 100 gallons per delivery, which is at issue. May we

3 | therefore infer that the water in question is only required for an illegal purpose?

4 | **III.    CONCLUSION**

5 | Based on the foregoing, the Defendants respectfully request this Court deny Plaintiffs'

6 | request for a preliminary injunction.

7 |

8 | Respectfully Submitted,

9 | Dated: August 13, 2021                    **SPINELLI, DONALD & NOTT**

10 |

11 | By   /s/  J. Scott Donald

12 | J. SCOTT DONALD
Attorneys for Defendants

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

SPINELLI, DONALD
& NOTT

DEFENDANTS' SUR REPLY ISO OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION