1  **SPINELLI, DONALD & NOTT**
   A Professional Corporation
2  DOMENIC D. SPINELLI (SBN: 131192)
   J. SCOTT DONALD (SBN: 158338)
3  601 University Avenue, Suite 225
   Sacramento, CA 95825
4  Telephone: (916) 448-7888
   Facsimile:  (916) 448-6888
5
   Attorneys for Defendants County of
6  Siskiyou; Jeremiah LaRue and Jesus
   Fernandez, in their official capacities
7  as members of the Siskiyou County
   Sheriff's Department and in their individual
8  capacities; Brandon Criss, Ed Valenzuela,
   Michael N. Kobseff, Nancy Ogren, and
9  Ray A. Haupt, in their official capacities
   as members of the Siskiyou County Board
10 of Supervisors and in their individual
   capacities; Edward Kiernan, in his official
11 capacity as County Counsel for Siskiyou
   County and in his individual capacity;
12 and DOES 1-100

13                UNITED STATES DISTRICT COURT

14            FOR THE EASTERN DISTRICT OF CALIFORNIA

15                   SACRAMENTO DIVISION

16 Dilevon Lo, Jerry Vang, Nathan Thao, Mao      Case No. 2:21-cv-00999-KJM-DMC
   Thao, Pao Lee, Antonio Lee, Koua Lee, Nhia
17 Thai Vang, Zeng Lee, Der Lee and Khue Cha,    **DEFENDANTS' MEMORANDUM OF**
                                                 **POINTS AND AUTHORITIES IN**
18                                               **SUPPORT OF MOTION FOR**
                                                 **DISSOLUTION OF THE COURT'S**
19              Plaintiffs,                       **ORDER GRANTING A PARTIAL**
                                                 **PRELIMINARY INJUNCTION**
        vs.
20                                               Complaint Filed: June 4, 2021
21 County of Siskiyou; Jeremiah LaRue and        First Amended Complaint Filed: July 15, 2021
   Jesus Fernandez, in their official capacities as
22 members of the Siskiyou County Sheriff's      **Date:  March 25, 2022**
   Department and in their individual            **Time: 10:00 AM**
23 capacities; and Brandon Criss, Ed Valenzuela, Michael N.  **Courtroom: 3, 15th Floor**
   Kobseff, Nancy Ogren, and Ray A. Haupt, in
24 their official capacities as members of the    Judge: Hon. Kimberly J. Mueller
   Siskiyou County Board of Supervisors and in
25 their individual capacities; Edward Kiernan, in
   his official capacity as County Counsel for    **[FEES EXEMPT PURSUANT TO**
26 Siskiyou County and in his individual          **GOVERNMENT CODE SECTION 6103]**
   capacity; and DOES 1-100,
27
                Defendants.
28

SPINELLI, DONALD
& NOTT          DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
                DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................2

II.    PROCEDURAL HISTORY AND STATEMENT OF CASE..............................3

III.   FACTS ...................................................................................................................3

       A.    Illegal Cannabis Cultivation in Siskiyou County.......................................3

       B.    Relevant History Pertaining to County Water Issues .................................5

       C.    Ordinances and Permitting Process At Issue ..............................................7

IV.    LEGAL ARGUMENT............................................................................................8

       A.    Standard of Decision..................................................................................8

       B.    Preliminary Injunctions Restraining the Enforcement of a County Ordinance May
             Be Vacated When the Offending Ordinance is Appealed or Amended....................9

       C.    The Requisite Substantial Changes Have Been Made to Support a Motion to
             Dissolve.................................................................................................10

       D.    Changes to the Ordinances and Permits Warrant Dissolution of the Injunction .......11

       E.    The County's Permits Are Not Uniquely Burdensome to the Shasta Vista Hmong
             Community ............................................................................................14

       F.    Language Related to the Defendants' Intent Does Not Support a Nefarious
             Motive ...................................................................................................16

       G.    The Ordinances as Modified Will Be An Effective Means of Furthering the
             County's Interests ....................................................................................16

       H.    Revisions to the Permit Process Should Eliminate Any Irreparable Harm to
             Plaintiffs.................................................................................................18

       I.    A Balance of the Hardships Tips in Favor of the County.........................20

V.     CONCLUSION...................................................................................................20

## TABLE OF AUTHORITIES

Cases:

*Alliance for Wild Rockies and Native Ecosystems Counsel v. Martin* 455 F. Supp.3d 956 (2020)....8

*United States v. Oregon* 769 F.2d 1410, 1416 (9th Cir. 1985) ........................................................8

*Sharp v. Weston* 233 F. 3d 116, 1170 (9th Cir. 2000) ...................................................................8

*Karnoski v. Trump*, 926 F. 3d 1180, 1198 (9th Cir. 2019) ..........................................................8, 9

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) ...............................................................9

*Am. Trucking Ass-n., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)...................9

*All. For Wild Rockies v. Cottrell*, 632 F.3d. 1127, 1134-35 (9th Cir. 2011) ......................................9

*Republic of the Philippines v. Marcos* 862 F.2d 1355, 1362 (9th Cir. 1988) ...................................9

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478, 110 S. Ct. 1249, 108 L.Ed.2d 400 (1990) ..............9

*Mease v. City of Shawnee,*

      No. Civ.A. 03–2041–M, 2003 WL 22102134, * 2 (D.Kan. July 18, 2003) ........................9

*Thompson v. City of Chicago,* No. 01 C 6916, 2002 WL 922093, * 1 (N.D.Ill. May 3, 2002).......10


Other Authorities:

Siskiyou County Ordinance 10-14.030.................................................................................4

California Water Code §10720 ...........................................................................................6

California Water Code §10720.7 ........................................................................................6

California Water Code §10721 ...........................................................................................6

Siskiyou County Ordinance 21-07................................................................................7, 10

Siskiyou County Ordinance 21-08................................................................................7, 10

Siskiyou County Ordinance 21-13......................................................................................7

Siskiyou County Ordinance 21-14......................................................................................7

## I.   INTRODUCTION

On September 3, 2021, this Court enjoined the County of Siskiyou (herein after "County") from enforcing ordinances that were expressly enacted to stop the wasting of vast amounts of groundwater that was being pumped by landowners from depleted stores and trucked to other areas within the County for use in illegal cannabis cultivation. In reaching its conclusion that the ordinances and permitting process denied some Plaintiffs, living on parcels without an onsite water source, of their basic needs, the Court also observed that the County could move to dissolve the injunction if it made modifications to the ordinances and permitting process that did not make it particularly difficult for members of the Hmong community in MSV from getting water trucked to their parcels for basic needs. (*See Order, ECF No. 47; pp.27:28-28:4*).

In the time between the Court's Order of September 3, 2021 and this Motion, the County has revised its ordinances and streamlined the permitting process. (*See Affidavit of Ray Haupt, generally; See Affidavit of Rick Dean, ¶ 3-8*)  All aspects of enforcement now apply countywide. (*Haupt Aff., ¶ 8; Dean Aff., ¶ 7*)  Potable water is expressly excluded from the trucking ordinance through resolution. (*Haupt Aff., ¶ 8; Dean Aff., ¶ 6*)  The permitting process requires far less information than what was originally required and had been characterized as a deterrent for residents of MSV (*Dean Aff. ¶ 5-6* )  Therefore, there can be no argument reasonably made that the ordinances and permitting process single out anyone in the County of Siskiyou on the basis of his or her race, culture, or religious standing.

Previously, the Court was presented with overwhelming evidence of a massive illegal cannabis cultivation enterprise occurring in parts of the County, including Mt. Shasta Vista ("MSV"), with little or no onsite water resources; dependent on water trucks providing up to three million gallons per day to further a criminal enterprise. Several of the original Plaintiffs were drivers of those trucks, and this Court denied the original Temporary Restraining Order filed on behalf of the original six Plaintiffs, noting at the time that while affidavits of some Hmong community members provided some evidence to support an argument that the County's ordinances would deprive MSV Hmong community members of water for "basic needs", none of those declarants were parties. (*Order, ECF No. 11; p.9:21-27*)  Because the original Plaintiffs could not provide evidence that the ordinances in

1  question were prohibiting them from obtaining water for basic needs, Plaintiffs' attorneys added six

2  new Plaintiffs.  It was on the basis of affidavits from four of the newly added Plaintiffs that the Court

3  determined that without an injunction, some of the Plaintiffs were being deprived of water for basic

4  needs as a result of the ordinances and permitting systems in place. (*Order, ECF No. 47; pp.26:27-*

5  *27:5*) [1]

## II.    PROCEDURAL HISTORY AND STATEMENT OF CASE

7          This Court granted in part Plaintiffs' Motion for Preliminary Injunction through its Order of

8  September 3, 2021, (*ECF Doc. No. 47*).  At that time, the Court enjoined enforcement of Siskiyou

9  County ordinances 21-07 and 21-08. (*Id. p.28: 8-11*). In granting its Order, this Court expressed a

10  willingness to entertain a Motion to Dissolve if (a) new ordinances were passed that did not impose

11  the same burden; (b) the Defendants created a simple permit process that did not unfairly weigh on

12  Hmong community members **or** it ensured that people had a safe and adequate source of water other

13  than trucked-in water while this case was pending. (*Id.* emphasis added)

14          Since the Court's Order, the parties filed a Joint Status Report, during which a proposed trial

15  date was offered by the defense for February of 2023. It was also during the status conference that

16  followed the Court's Order granting a Preliminary Injunction and which specifically noted

17  deficiencies in Plaintiffs' Complaint, that Plaintiffs would be dismissing CalFire and amending their

18  Complaint, presumably in conformance with the Court's suggestions. The parties have engaged in

19  dialogue and Defendants have submitted a letter to Plaintiffs requesting an amendment of Plaintiffs'

20  Complaint. While the Defendants requested a trial date in February of 2023, there is no trial set at

21  this time. Rather, this Court has determined that it will await the conclusion of dispositive motions

22  before it entertains a Pre-Trial Conference. (*See Standing Scheduling Order, ECF Doc. No. 54, ¶10*)

## III.    FACTS

### A. Illegal Cannabis Cultivation in Siskiyou County

25          As is expressly provided for under California law, elected officials for the County of

---

[1] The original Plaintiffs were Dilevon Lo, Jerry Vang, Nathan Thao, Mao Thao, Pao Lee, and Antonio Lee.
The new Plaintiffs included Koua Lee, Nhia Thai Vang, Zeng Lee, Der Lee and Khue Cha.  Der Lee, Koua
Lee, Khue Cha and Nhia Thai Vang are the Plaintiffs who provided declarations indicating a deprivation of
water for basic needs.

SPINELLI, DONALD
& NOTT

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1   Siskiyou passed an ordinance in 2015, making it illegal to cultivate cannabis for anything but

2   personal/medicinal use. *See Ordinance 10-14.030.*  Subsequently, enforcing this law commenced an

3   ongoing and overwhelming battle relating to the cultivation of illegal cannabis on a commercial

4   scale. (*See Affidavit of Jeremiah LaRue, ¶ 2*)  Since 2016, the illegal cultivators have primarily set

5   up their grow sites in greenhouses and "hoop houses" in rural and often undeveloped regions of the

6   county including Mt. Shasta Vista ("MSV"), Mt. Shasta Forrest, Iron Gate Lake Estates

7   (Hornbrook), Klamath River County Estates, and Pleasant Valley Highlands. (*LaRue Aff; ¶3*)  Since

8   2016, the number of illegal grow sites has exploded in some of these areas including MSV. (*LaRue*

9   *Aff; ¶3*)  At present, MSV is virtually one continuing line of greenhouses and hoop houses. (*LaRue*

10  *Aff; ¶4*)  Where once was rugged, unspoiled countryside, MSV is now covered with unpermitted,

11  temporary structures devoted to the illegal cannabis cultivation industry. (*LaRue Aff; ¶4*)  In addition

12  to a multitude of unpermitted structures, there are numerous open sewers, piles of garbage and

13  various chemicals and other pollutants related to the cultivation of cannabis that are allowed to seep

14  into the earth. (*LaRue Aff; ¶5*)

15      The County's limited law enforcement is monopolized by the criminal activity both directly

16  and indirectly associated with illegal cannabis cultivation. (*LaRue Aff; ¶6*)  In addition to the

17  trafficking of the cannabis and cannabis products, there have been numerous instances of violent

18  criminal activity, including murder, in areas devoted to marijuana cultivation including MSV.

19  (*LaRue Aff; ¶6*)  Typical raids by law enforcement associated with grow houses in these areas are

20  extremely dangerous for the law enforcement officers. (*LaRue Aff; ¶7*)  Invariably, large quantities

21  of guns and ammunition are recovered in these raids in addition to larger amounts of cash and illegal

22  cannabis in all forms. (*LaRue Aff; ¶7*)

23      The criminal cultivation enterprises in Siskiyou County rely on vast amounts of water drawn

24  from a limited and depleting ground water supply contained in the aquafers that lie below the surface

25  of Siskiyou County. (*See Declaration of Kirk Skierski, ECF No. 31-5; Declaration of Jeremiah*

26  *LaRue, ECF No. 31-2; Order, ECF No. 47.*)  This reliance on groundwater for illegal cannabis

27  cultivation is also true in Mt. Shasta Vista. (*LaRue Aff; ¶8*) Groundwater, at a volume necessary to

28  cultivate hundreds of thousands of marijuana plants contained in thousands of greenhouses within

SPINELLI, DONALD
& NOTT

4

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

MSV, requires landowners outside MSV to pump the water and then transport it to the cultivation sites in water trucks with a typical capacity of 2,500-4,000 gallons. (*LaRue Aff; ¶ 8*) In a typical day before the County began to enforce the ordinances at issue, it was normal to see approximately 100 trucks making multiple deliveries each, on the roads around MSV alone. (*LaRue Aff; ¶ 9*) Conservatively speaking, the County estimates that up to three million gallons of water is expended for illegal cannabis cultivation on a daily basis. (*See Affidavit of Ray Haupt; ¶ 2*) Given the fact that the trucks were observed making multiple trips per day, the true number is likely significantly greater. (*LaRue Aff; ¶9*) As a result of the enormous scale of water use, those engaged in the activity of supplying the water trucks at even $0.01 per gallon could make significant money for doing nothing else other than allowing the trucks ingress and egress onto their property to fill up. (*LaRue Aff; ¶10*)

As soon as the initial ordinances were enacted and began to be enforced, the limited law enforcement officers within the County could significantly impact the ability of the cultivators to raise their illegal crop while at the same time stopping the incredible waste of a scarce resource. (*LaRue Aff; ¶13*) This enforcement could be accomplished through traffic stops on violators of the ordinance. (*LaRue Aff; ¶13*) These violators were drivers of trucks carrying hundreds of thousands of gallons of water for marijuana cultivation. (*LaRue Aff; ¶13*) Where cultivators had previously been in a position to quickly reconstruct and replant a cannabis grow following a raid, an illegal grower cut off from a water supply was unable to renew the criminal enterprise without the necessary water. (*LaRue Aff; ¶14*) Furthermore, where raids exposed both criminals and law enforcement officers to the inherent dangers associated with that type of intervention, a traffic stop was a far safer and efficient means of enforcing the laws related to illegal cannabis cultivation. (*LaRue Aff; ¶14*)

### B. Relevant History Pertaining to County Water Issues

At the time of this motion, California remains in a condition of extreme drought. Under normal circumstances groundwater is an important source of water to the State's inhabitants. During an average year, California's 515 alluvial groundwater basins and sub-basins contribute approximately 38% toward the State's total water supply. (*Dean Aff., ¶10*) During dry years,

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1  groundwater contributes up to 46% (or more) of the statewide annual supply, and serves as a critical

2  buffer against the impacts of droughts and climate change. (*Dean Aff., ¶10*) According to the

3  California Department of Water Resources ("DWR"), many municipal, agricultural, and

4  disadvantaged communities rely on groundwater for up to 100% of their water supply needs. (*Dean*

5  *Aff., ¶10*) However, as the DWR cautions, when groundwater is extracted in excess of what nature

6  or man-made recharge efforts can replenish, groundwater elevations drop. (*Dean Aff., ¶10*)

7         In order to balance levels of groundwater pumping and recharge, California passed the

8  Sustainable Groundwater Management Act ("SGMA") which was signed into law by Governor

9  Brown in September of 2014, and which requires groundwater-dependent regions to halt overdraft

10  and develop plans to bring basins into balanced levels through local planning efforts. (*See California*

11  *Water Code §10720*) SGMA empowered DWR to implement the law and provide ongoing support

12  to local agencies around the state. (*See California Water Code §10720.7*) These local agencies are

13  known as Groundwater Sustainability Agencies (GSAs). (*See California Water Code §10721*)

14         Siskiyou County contains four medium-priority groundwater basins (Tulelake, Shasta Valley,

15  Scott Valley and Butte Valley) that require the development and adoption of groundwater

16  sustainability plans pursuant to the CSGMA. The DWR under the authority of SGMA designated the

17  four basins as medium-priority. (*Dean Aff, ¶11*) The GSAs for the four medium-priority basins in

18  Siskiyou County all have Groundwater Sustainability Plans (GSPs) that have been adopted by the

19  GSAs and submitted to DWR. (*Dean Aff, ¶12*) As part of their sustainability plans, GSPs, including

20  the Shasta Valley  groundwater basin GSP, have identified projects and management actions that are

21  either already in place or being developed to ensure conservation and sustainability goals. (*Dean Aff,*

22  *¶12*) With respect to the Shasta Valley GSP that has been adopted and submitted to DWR, the GSA

23  for that basin specifically references restrictions for using groundwater for cannabis cultivation per

24  Article 7, Chapter 13 of Title 3 of the County of Siskiyou Code of Ordinances. (*Dean Aff, ¶13*) Also

25  included as part of the GSP is the permit requirement for extraction of groundwater underlying the

26  basin for use outside the basin. (*Dean Aff, ¶13*)

27         Siskiyou County's groundwater supplies have been further impacted since 2020 by drought.

28  (*Dean Aff, ¶ 16-20*) On March 5, 2021, the United States Department of Agriculture designated

1  Siskiyou County as a primary natural disaster area due to the 2020 drought. (*Dean Aff, ¶ 17*)  In

2  response, the Siskiyou County Board of Supervisors declared the existence of a local emergency

3  throughout Siskiyou County. (*Dean Aff, ¶ 19*)  As recently as November 18, 2021, the U.S. Drought

4  Monitor published by the National Integrated Drought Information System classified 100% of

5  Siskiyou County as experiencing at least moderate drought with 71.98% of the County experiencing

6  extreme drought. It further indicated the County's driest year in 127 years occurred in 2021. (*Dean*

7  *Aff., ¶ 23*)

8          In 2020, Siskiyou County was classified as being in a state of drought and by April 21, 2021,

9  62.65% of Siskiyou County was classified by the U.S. Drought Monitor published by the National

10  Integrated Drought Information System as being in extreme drought. (*Dean Aff., ¶16* )  Concurrent

11  with depleting water supplies and extreme drought, County Officials began receiving complaints

12  from some land owners that their wells were being significantly impacted due to adjacent land

13  owners pumping water into water trucks for off-parcel use by cannabis cultivators. (*Haupt Aff., ¶5* )

14  Alerted to these concerns during a drought where critical groundwater resources were already in a

15  state of significant depletion, the Board issued two emergency ordinances, 21-07 and 21-08, which

16  this Court enjoined pursuant to its Order of September 3, 2021. (*See Order, ECF No. 47; p. 28:8-11*)

17  Upon the issuance of the two urgency ordinances, the County instituted a corresponding permitting

18  process which was also addressed by the Court's Order.

19  **C. Ordinances and Permitting Process At Issue**

20          Prior to the Court issuing its Order, but during the briefing schedule leading up to the Court's

21  Order, the Siskiyou County Board of Supervisors through its standard process including public

22  notification and opportunity for public comment, voted to make the urgency ordinances regular

23  ordinances on August 3, 2021. (*Haupt Aff., ¶ 7*)  As a result, Urgency Ordinance 21-07 was replaced

24  by Ordinance 21-13 and Urgency Ordinance 21-08 was replaced by Ordinance 21-14. (*Haupt Aff.,*

25  *¶ 8*) Following the Court's Order, the Board of Supervisors enacted two resolutions modifying

26  Ordinance No. 21-14. Through the resolutions, the trucking ordinance formerly 21-08 and currently

27  21-14 excludes potable water and is intended to be applied county-wide. (*Haupt Aff., ¶ 8*)

28          County permits such as those at issue which are developed in response to emergency

SPINELLI, DONALD
& NOTT

7
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1   ordinances frequently require some revisions. (*Dean Aff, ¶ 2*)  The specific permits referenced by

2   Plaintiff's declarant, Edward Szendrey in his affidavit dated July 14, 2021, were already outdated

3   and had been revised when his affidavit was signed.  In addition to revisions that predated the

4   Court's Order, the permits have been further modified and simplified. Consistent with resolutions

5   passed by the Board of Supervisors further modifying the underlying ordinances, the permits have

6   been further revised.

7          The current form of Application for Groundwater Extraction for Use Off-Site has been

8   reduced from a four-page form to 1½ pages. (*Dean Aff, ¶ 4*) Due to the fact that many of the

9   properties in MSV and other rural areas do not have street addresses, the applicant may identify the

10  properties for extraction by **either APN or address**. While applicants were never required to

11  provide both, this was not clear on the earlier applications and has been modified to more clearly

12  indicate that only one of the options is required. Furthermore, an applicant is not required to identify

13  the zoning designation of the properties for extraction or for delivery. (*Dean Aff, ¶ 5*)  Potable water

14  has also been exempted from the permitting process. (*Dean Aff, ¶ 6*)  Finally, as a result of a

15  modification of the underlying ordinance prohibiting the transportation of groundwater by truck for

16  the illegal use of cannabis cultivation now being county-wide, there is no longer a need for

17  applicants to provide their routes of travel for water delivery. (*Dean Aff, ¶ 7*)

18                    **IV.    LEGAL ARGUMENT**

19  **A.   Standard of Decision**

20         "'[A] Court Retains the power to modify the terms of its injunction in the event that changed

21  circumstances require it'" (*Alliance for Wild Rockies and Native Ecosystems Counsel v. Martin* 455

22  F. Supp. 3d 956 (2020) quoting *United States v. Oregon* 769 F.2d 1410, 1416 (9th Cir. 1985)

23  [citations omitted]. A party seeking modification or dissolution of an injunction bears the burden of

24  establishing that a significant change in facts or law warrants revision or dissolution of the

25  injunction. *Sharp v. Weston* 233 F. 3d 116, 1170 (9th Cir. 2000); *Karnoski v. Trump*, 926 F. 3d 1180,

26  1198 (9th Cir. 2019) Once a party establishes that a significant change in facts has been made, the

27  Court's next step is an evaluation of whether those changes warrant a dissolution of the injunction.

28  (*Karnoski* supra 1198.) This inquiry should be guided by the same criteria the Court used to review

SPINELLI, DONALD
& NOTT

8
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1   the original issuance of the preliminary injunction and the party seeking dissolution has the burden

2   of proof. (*Id.*)

3        The underlying legal standard for a preliminary injunction requires a party to demonstrate (1)

4   that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the

5   absence of preliminary relief; (3) the balance of equities tip in his favor; and (4) that an injunction is

6   in the public interest: *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). *Winter* provided that

7   Plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a

8   preliminary injunction. *Am. Trucking Ass-n., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th

9   Cir. 2009).

10        In its Order, this Court employed as an alternate formulation of the *Winter* test, known as the

11   "serious questions" test. *See Court Order, 17:19-20*. The 9th Circuit has held that an "injunction is

12   appropriate when a plaintiff demonstrates… that serious questions going to the merits were raised

13   and the balance of hardships tips sharply in the plaintiff's favor." *All. For Wild Rockies v. Cottrell*,

14   632 F.3d. 1127, 1134-35 (9th Cir. 2011) For the purpose of injunctive relief, a serious question

15   refers to questions which cannot be resolved one way or the other at the hearing on the injunction

16   and as to which the court perceives a need to preserve the status quo, lest one side prevent resolution

17   of the questions or execution of any judgment by altering the status quo. Serious questions are

18   substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more

19   deliberative investigation. *Republic of the Philippines v. Marcos* 862 F.2d 1355, 1362 (9th Cir.

20   1988).

21      **B.**   **Preliminary Injunctions Restraining the Enforcement of a County Ordinance May Be**
           **Vacated When the Offending Ordinance is Appealed or Amended**

22

23        The repeal, amendment, or expiration of challenged legislation is generally enough to render

24   a case moot and appropriate for dismissal. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478, 110 S.

25   Ct. 1249, 108 L.Ed.2d 400 (1990) (legislature's passage of amendments rendered case moot).  This

26   reasoning also applies to preliminary injunctions.  See *Mease v. City of Shawnee,* No. Civ.A. 03–

27   2041–M, 2003 WL 22102134, * 2 (D.Kan. July 18, 2003) (vacating a preliminary injunction

28   restraining the enforcement of a city ordinance because "to the extent that Ordinance 2625 has been

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1  repealed and has no force or effect, an order enjoining the enforcement of Ordinance 2625 is

2  unnecessary"); *Thompson v. City of Chicago,* No. 01 C 6916, 2002 WL 922093, * 1 (N.D.Ill. May

3  3, 2002) (recommending dismissal of plaintiff's motion for preliminary injunction as moot because

4  the ordinance to which it was directed had been repealed).

5      The Court enjoined enforcement of Siskiyou County ordinances 21-07 and 21-08. (*Id.* p.28:

6  8-11) Through the County's legislative process, the ordinances enjoined no longer exist. They have

7  been replaced by permanent ordinances and modified by resolution. Therefore, the Court's Order

8  enjoining the original ordinances is now moot and the Court should dissolve its injunction on that

9  basis alone.

10  **C.   The Requisite Substantial Changes Have Been Made to Support a Motion to Dissolve**

11      In its Order, this Court provided guidance as to the circumstances a motion to dissolve the

12  preliminary injunction would be entertained. Specifically, the Court advised that the County could

13  move to dissolve the injunction if it passed new ordinances that do not impose the same burdens and

14  if it created a simple permitting process that did not, allegedly, weigh unfairly on the Hmong

15  community. (*Order, ECF No. 47, pp. 27-28.*) Since the Court's Order, the County has modified the

16  ordinances at issue and has significantly simplified the permitting process. (*Dean Aff,* ¶ 4-6)

17      Material changes to the ordinances include that the trucking ordinance specifically excludes

18  potable water. Additionally, both ordinances, including the ordinance applicable to trucking, apply

19  county-wide as opposed to being limited to its enforcement to those areas surrounding MSV. (*Haupt*

20  *Aff,* ¶8) As a result of changes to the ordinances and modifications to the applicant process, the

21  permits and the permitting process are also far more user-friendly than at the time of the current

22  Order. Because Plaintiffs' counsel misled the court as to then-current application, at the time the

23  Court granted Plaintiffs' motion, the application for the groundwater extraction permit for offsite use

24  reviewed by the Court was four pages long, even though it had already been shortened and

25  simplified, as discussed in Rick Dean's affidavit. It has now been reduced to 1½ pages and

26  applicants no longer have to provide a zoning designation of the properties for extraction and

27  delivery, their routes of travel, or an estimation of the number of deliveries and volume of water to

28  be delivered. (*Dean Aff,* ¶ 4-6)

SPINELLI, DONALD
& NOTT

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

**D. Changes to the Ordinances and Permits Warrant Dissolution of the Injunction**

In its Order, the Court identified what are characterized as several "serious questions about the county's intent" in enacting the subject ordinances and permitting process. (*Order, ECF No. 47, p. 24:18*) More specifically, the Court expressed a concern that County officials intended the two permits related to the extraction and transport of groundwater to force people in MSV out of their homes. In support of this concern, the Court made the inference that "the county officials knew that most if not all of the Hmong families in Shasta Vista were living in unpermitted structures without a reliable **supply of potable water** and other essentials." (*Order, ECF No. 47, p. 24:18-20*) In reaching this conclusion, the Court did not rely on any statements made by the elected officials who are defendants in this case charged with enacting the ordinances, but relied generally on inferences it drew from declarations by county employees whose responsibilities include approving the permits and enforcing the ordinances. The ordinances were enacted during a time of severe drought when the illegal cannabis cultivation was taking a heavy toll on County groundwater reserves. (*Haupt Aff., generally*) The ordinances themselves spell out the reasons they were enacted and the information the Board of Supervisors relied upon. (*Order, ECF No. 47, p.7:8-19*)

The Defendants in this case, including the Board of Supervisors who have all been sued in both their official and individual capacities, have modified through resolutions, the ordinance pertaining to the water trucks such that the ordinance now expressly exclude the transportation of "potable water." (*Haupt Aff. ¶ 3*) It should be noted, that potable water was never the target of even the original ordinances and there is no record of a potable water truck, which requires state certification, from ever being stopped. (*Haupt Aff. ¶6; See Supp. Decl. of LaRue, ECF No. 41-1, ¶7*) Further, the ordinances have been modified such that enforcement is countywide. Thus, there can be no allegation that any particular subdivision or the people living in that particular subdivision have been singled out.

In support of concerns about the availability of potable water in MSV, the Court relies on affidavits submitted on behalf of Plaintiffs by Stephen Griset and Edward Szendrey. In relying on the Griset affidavit, the Court sites an assertion from Griset that there is a moratorium on drilling within MSV. (*See Order ECF No. 47, pp.6-7.*) During all relevant times to these proceedings there

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1    has never been a moratorium on drilling in MSV and no plaintiff in this case has ever been denied a

2    drilling permit. (*Dean Aff., ¶ 15*)  Griset has been one of the primary suppliers of groundwater to

3    cannabis cultivators in MSV. (*LaRue Aff., ¶ 11*)  His property is located on one of the four medium

4    priority basins located in Siskiyou County. (*Dean Aff, ¶ 14*)  Griset is currently embroiled in

5    litigation with the County related to the pumping of groundwater for illegal cannabis cultivation.[2]

6    Moreover, the State of California has adopted emergency regulations curtailing the pumping of

7    groundwater on property within the County that includes Mr. Griset's. (*Dean Aff., ¶ 22*)  This is

8    particularly noteworthy in this case because the Plaintiffs in this case have frequently referenced

9    their dependency on the Griset well for water they claim is required for their basic needs. The

10    curtailing Orders from the State Water Resources Control Board (SWRCB) notably provide that

11    "selling groundwater to be hauled and used at a different location is an appropriative use and must

12    cease immediately (subject to exceptions described below), if the use started after November 1912."

13    The Order further provides exceptions for which an exemption may be applied to the SWRCB. This

14    includes an exception for the use of the water for human health and safety purposes, "like drinking,

15    cooking, washing, or meeting the state's critical infrastructure needs." (*See SWRCB Orders; Request*

16    *for Judicial Notice*)  To date, no application for an exemption has been made by Mr. Griset on the

17    basis that water is being pumped from his property to be distributed consistent with the exemption

18    related to human health and safety diversion. (*LaRue Aff., ¶ 12*)

19        The Court also references the Szendrey affidavit noting that according to Szendrey, "the

20    county has also rebuffed attempts of compromise that might have prevented people in Shasta Vista

21    from suffering from a lack of water during the hottest parts of the year." According to Szendrey's

22    affidavit, his overture was made to Sheriff Jeremiah LaRue and one of the Board of Supervisors who

23    is individually named in this suit, on June 24, 2021 via email. At the time of Szendrey's email,

24    Plaintiffs had already filed a Temporary Restraining Order and Complaint. Furthermore, none of the

25    Plaintiffs originally named in the Complaint and for whom affidavits were provided established any

26    need for water for basic needs. Rather, the original Plaintiffs all appeared to be associated with

27

28

---

[2] The Court is asked to take Judicial Notice that the Superior Court of Siskiyou County has ruled against Mr. Griset. The Court's Opinion denying Griset's Demurrer is attached to Defendants' Request for Judicial Notice.

SPINELLI, DONALD & NOTT

12

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1    illegal cannabis cultivation. It was only after the Court denied Plaintiffs' Preliminary Injunction on

2    the basis that the original Plaintiffs had failed to demonstrate that they were being precluded by the

3    County ordinances from water for their basic needs, that they were replaced by several new Plaintiffs

4    whose allegations appear to provide the only factual support giving rise to the current injunction. At

5    the time Szendrey made his overture to the Sheriff and County supervisor, both were represented by

6    counsel and presumably Szendrey was working for Plaintiffs' counsel. Furthermore, while Plaintiffs'

7    allegations continue to take the form of a class action, no class exists and the Plaintiffs' claims are

8    their own. Szendrey's email does not refer to any individual Plaintiff in this case. Therefore, based

9    on its content and timing, Szendrey's contentions are gratuitous and are intended to obtain an

10   emotional response. If the Court intends to rely on Szendrey's affidavit to support a finding of a

11   "lack of concern regarding a compromise for plaintiffs" the Court should consider the substantial

12   concessions that were offered during mediation by the Defendants which were rejected by the

13   Plaintiffs prior to the Court's Order granting their Injunction.

14          In contrast to the weak, inaccurate, and unreliable, if not inadmissible, evidence produced by

15   Plaintiffs to support their contention that there was a nefarious motive behind the enactment of the

16   ordinances in question, there is a great deal of reliable and admissible evidence to refute this

17   conclusion. As cited by the Court, the two ordinances currently enjoined were enacted for several

18   legitimate purposes including water conservation during drought, health and safety concerns and the

19   deterrence of criminal activity. Furthermore, these ordinances were not created in a vacuum of facts.

20   They follow legislation previously enacted before many of the Plaintiffs resided in the county. The

21   first of which was an ordinance reflecting the County's desire, as specifically provided for under

22   California's statutory scheme, to make the cultivation of cannabis for reasons other than medical use,

23   illegal. As the Court appears to acknowledge, the subsequent ordinances, including the two at issue,

24   are derivative from that first 2015 ordinance and reflect a strong desire on the part of Defendants to

25   curb illegal activity as opposed to creating a hostile environment for one particular culture, racial or

26   religious group.

27          With respect to the two ordinances at issue, while they follow and support the earlier laws

28   related to illegal cannabis cultivation, their intended purposes are far more specific, including the

13

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1  concern to conserve dwindling groundwater supplies. The "motives" for their enactment by the

2  County supervisors are clearly set forth in the ordinances themselves. Furthermore, it is well to

3  consider that a resolution proclaiming a local emergency in the County of Siskiyou dated September

4  5, 2017, occurred almost four years before these ordinances were enacted and considered among

5  other motives, a concern of groundwater depletion due to illegal cannabis cultivation. Following

6  2017, the State went into severe drought, which is again undisputed. Given the state of emergency

7  that already existed with respect to depletion of groundwater being used for illegal purposes, both

8  the context of when these ordinances were enacted and the content of the ordinances in question is

9  reliable evidence of the multiple legitimate motives behind their enactment.

10  **E. The County's Permits Are Not Uniquely Burdensome to the Shasta Vista Hmong Community**

11

12      To the extent there are any burdens on residents of Siskiyou County due to the revised

13  ordinances and revised permitting process, they are equal for all residents. The modifications to the

14  permitting process ensure that enforcement of the trucking ordinance is universal. Secondly, there

15  should be no confusion at this point that a permit for potable water is necessary; it was never the

16  focus of the ordinances which were intended to focus exclusively on the pumping and transport of

17  groundwater in large quantities for illegal cannabis cultivation.

18      In expressing its concern that the permits are uniquely burdensome for the people of MSV,

19  this Court states that permits are unavailable to anyone who cannot affirmatively prove compliance

20  with zoning and other land use ordinances and are therefore likely beyond the reach of the Hmong

21  community at large. (*Order, ECF No. 47; p.25:8-11*) The permitting process no longer requires an

22  applicant to identify a zoning designation. (*Dean Aff, ¶ 5*) While the applicant for a trucking permit

23  would be required to have a driver's license and a license plate for the truck, only the person seeking

24  to transport water for any end user, including one in MSV, would have to apply for a water truck

25  permit. In the event that a resident of MSV has his own truck, that person would only be subject to

26  the permitting process one time in a calendar year. Finally, if an applicant obtains an off-parcel

27  permit, they need not get a trucking permit as the former satisfies the requirements for the latter.

28  (*Dean Aff. ¶ 8*)

SPINELLI, DONALD & NOTT

14

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1      If the ordinances are to have their intended effect, the destination for the water remains

2  critical information to have, as the purpose of the ordinances is to eliminate the utilization of

3  groundwater for illegal cultivation of cannabis, to preserve scarce ground water, address

4  environmental contamination, and alleviate health and safety concerns. Thus, in the revised

5  applications the County still requires notice of where these large quantities of groundwater are being

6  utilized. On the other hand, no applicant is required to know both an assessor's parcel number and

7  the physical address associated with that parcel number, just one or the other. Many of the rural

8  properties, including those in MSV located in the county, do not have street addresses; the only way

9  of designating a particular property for delivery of groundwater is by parcel number. The County is

10  only requiring either an address or an APN. (*Dean Aff, ¶ 5*)

11      Based on the previously existing permitting process, this Court concluded that it was difficult

12  to understand what purpose the requirements would serve other than to deter lay people from

13  applying for them. However, as noted above, the purpose is to protect limited ground water

14  resources and deter illegal marijuana cultivation. Certainly, it would be logical and reasonable to

15  require information for County employees charged with issuing permits to make a determination that

16  an applicant would be using the water for the needs that this Court has characterized as "their basic

17  needs" rather than using that water for illegal cannabis cultivation. According to this Court,

18  Plaintiffs' supporting papers indicate that at least one Plaintiff "may feel the burdens of these

19  regulatory requirements" (*Order, ECF No. 47; p. 25:19-21*). The permitting process, as revised,

20  applies equally to all citizens of the County. Furthermore, none of the Plaintiffs have applied for any

21  permit in this case and no declaration has been offered by any witness who has been declined a

22  permit for a reason. Even before the Injunction, the permits were being issued within 24 hours of

23  being applied for. Should the County be put in a position to anticipate difficulties that have not

24  presented themselves, but are merely speculative? In considering this motion, the Court should

25  strongly consider the utility of allowing the County to move forward with a permitting process with

26  the understanding that there may be reasonable constraints to all citizens throughout the County of

27  Siskiyou, but that those concerns are equally imposed and for important purposes. As elected

28  representatives of the citizens of Siskiyou County, it is the responsibility of the Board of Supervisors

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1    to adopt laws for the benefit of those citizens. They may be defeated at the next election if their

2    decisions are thought unwise by the citizenry.

3    **F.    Language Related to the Defendants' Intent Does Not Support a Nefarious Motive**

4              The Court has suggested that county officials have used concerning language when

5    describing their intent. (*Id.*) In support of this concern, the Court cites language contained in the

6    body of Plaintiffs' Reply to their motion for preliminary injunction, which has taken statements

7    made by Sheriff LaRue completely and intentionally out of context. As set forth in the Affidavit of

8    Sheriff LaRue, any and all comments quoted to date by Plaintiffs' counsel have been with respect to

9    criminal activity and specifically illegal marijuana cultivation and the crimes associated with that

10   activity have been his focus and continue to be. As noted in his affidavit, every one of the statements

11   cited by Plaintiffs' counsel included as a factual basis for the Court's third question concerned the

12   issue of criminal cultivation of cannabis, the criminals pursuing those activities, and enforcement,

13   not any particular individual. (*See LaRue Aff; ¶16*) Not one of his statements, made it should be

14   noted at a public hearing being officially recorded, that was directed at any race, culture, or religion

15   and there is no evidence, other than a misinterpretation of the statements themselves taken

16   completely out of context to their being made with regard to addressing crime, to support any other

17   conclusion.

18   **G.  The Ordinances as Modified Will Be An Effective Means of Furthering the County's
     Interests**

19

20            In its fourth question, the Court ignores that an important stated purpose for enacting the two

21   ordinances in question, which is to preserve groundwater during a time of extreme drought. The

22   Court reasons that the County's permitting ordinances are a poor fit for its purpose of preventing

23   people from living in dangerous structures, preventing environmental harms, reducing crime, and

24   stopping commercial drug production in Shasta Vista. (*Order, ECF No. 47, p. 26:8*)[3] The Court

25   focuses on statements of County officials that do address other legitimate County interests, but there

26   _____

27   [3] What that analysis fails to consider is the County has very limited resources that are completely overwhelmed by the numbers should it approach enforcement in one of the alternative methods the Court thinks better. Not only is focusing on cutting off water for illegal grows and their attendant disastrous consequences a good fit, it is the only one that has had any measure of success. All other approaches are a better fit only in theory and for a public entity, like the state or federal government, with unlimited resources.

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1  is no reference by the Court to the language expressly contained in the ordinances and reflected

2  through the years in earlier ordinances and resolutions referencing the vitally important need of

3  water conservation.  The statements of County officials relied on by the Court in reaching its

4  decision address other legitimate purposes of the ordinances, but not that of water conservation. The

5  need for water preservation at a time when wells are running dry is, like deterrence of criminal

6  activity that contaminates the land and potentially the groundwater, an enormously important

7  concern of the County policy makers, who adopted the ordinances and must take into account a

8  broad swath of its citizens' needs.

9         The County, through its various agencies, has been compelled by the State of California to

10  respond to the emergency situation posed by a drought and to develop and implement plans specific

11  to water preservation.  This has been particularly important within the four medium priority ground

12  water basins located throughout the county. These basins must be managed in order to control the

13  decline of ground water levels and increase ground water storage. (*Dean Aff, ¶12-13*)  At a time of

14  drought when water is in critical supply anyway, it would seem to be obvious that steps to curb

15  illegal uses would be at least one important measure to pursue.  If that criminal activity required the

16  use of massive amounts of ground water, one would logically conclude that ordinances designed to

17  prohibit that misuse would be vital.

18         As set forth in the prior declaration of Jeremiah LaRue, it was commonplace to see 100

19  trucks a day making multiple trips from large agricultural wells located near active cannabis

20  cultivation.  These trucks had capacities from between 2500 and 4000 gallons per load.  (*See LaRue*

21  *Decl, ECF No 31-2; ¶7*) Through the enforcement of the original ordinances, these activities began

22  to be effectively curbed and the number of trucks with loads of water observed on county roads had

23  significantly diminished. (*LaRue Aff., ¶13*)  Since the injunction was granted, law enforcement has

24  observed that most of the water deliveries resumed, but now are mostly done surreptitiously at night.

25  (*LaRue Aff., ¶15*) During the day, the trucks are seen lined up and ready to go near the wells where

26  they obtain resources from depleted aquifers in order to once again supply the illegally cultivation of

27  cannabis.  (*LaRue Aff., ¶15*)

28         As modified, the ordinances in question expressly exclude potable water. Plaintiffs and any

SPINELLI, DONALD
& NOTT

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1   other citizen of Siskiyou County may obtain potable water in any amount they wish without any

2   concern for the ordinances and permits in question. The agricultural wells where the depleted

3   resource in question lie do not produce potable water, only groundwater. Without groundwater, the

4   cultivators of illegal cannabis cannot grow illegal cannabis.  As such, the enforcement of the

5   ordinances as modified and the attendant modified permits and permitting processes are an effective

6   means of furthering the County's goal towards deterring criminal activities.  When the ordinances

7   were enforceable, the Sheriff's Department could much more safely curtail marijuana cultivation by

8   stopping the water which was obviously targeted toward marijuana cultivation from reaching the

9   cultivators.  This could be done in a relatively safe manner through traffic stops.  Without the ability

10  to enforce the permits, the Sheriff's Department with its limited resources, has been forced to go

11  back to confronting the cultivators' site of cultivation which is often fraught with the danger of

12  armed criminals among other hazards.  (*LaRue Aff, ¶ 6-7*) Apparently recognizing that law

13  enforcement's visits to the MSV area posed safety concerns, Plaintiffs' counsel requested the

14  Sheriff's Department to begin serving search warrants only during daylight hours. (*LaRue Aff, ¶17*)

15  **H. Revisions to the Permit Process Should Eliminate Any Irreparable Harm to Plaintiffs**

16      While the County strongly disputes that Plaintiffs have introduced evidence that the

17  permitting ordinances are depriving some of them of water for basic needs including drinking,

18  cooking, growing food, raising animals and bathing (See Court's Order p. 26:27-27:1), revisions to

19  the subject ordinances and permits should alleviate the Court's concern that as a result of the

20  permitting process and ordinances as modified, that animals will die, people will suffer from a lack

21  of water, and some will be forced to leave their residences.

22      As modified, the new ordinance does not apply to potable water, which under California

23  State law is only type that may be legally and safely used for drinking, cooking, and bathing. In

24  addition, groundwater below the 100 gallon threshold per load is unregulated by the applicable

25  ordinances and therefore, no permits are required for deliveries of water in that amount for home

26  gardens and the like. Should a homeowner who does not utilize groundwater for cannabis cultivation

27  wish to obtain greater quantities than 100 gallons per load, then an easily obtained, free permit can

28  be quickly obtained. The permitting process, which has always been remarkably quick, has been

SPINELLI, DONALD
& NOTT

18
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

1  significantly simplified and there is no reason that a resident of MSV requiring water, whether

2  potable or otherwise, for needs listed by the Court in its Order cannot obtain that water.

3      Undoubtedly, Plaintiffs will argue that the permitting process, even as greatly simplified, will

4  deter Plaintiffs from obtaining water for basic life needs. The Court is urged to consider the fact that

5  Plaintiffs have never demonstrated that they have been denied a permit, or even that they took steps

6  to obtain one. At this time, there is no evidence before the Court that even if Plaintiffs suffered some

7  form of harm, that it is due to the permit process and ordinances. The entire crux of Plaintiffs'

8  argument has always been that Plaintiffs, on the basis of being of Hmong descent, have been singled

9  out by Defendants and that the ordinances and permits are intended for that purpose. However, while

10  other citizens of Siskiyou County availed themselves of the permitting process, no Plaintiff ever did.

11  Thus, at this point, any causal relationship between the ordinances and permits and Plaintiffs "harm"

12  is based on speculation.

13      The County was and is not trying to deprive any of the Plaintiffs with water for basic needs.

14  The County is simply seeking to stop people from trucking in large quantities of groundwater for a

15  specified illegal purpose that has very well established and has indisputably had deleterious effects

16  upon the health, safety, and quality of life of the County's citizens, including those residing in MSV.

17  Furthermore, if, in fact, Plaintiffs have suffered any harm, it is for reasons other than the ordinances

18  and the permitting process, which is what this action challenges. Plaintiffs have the same opportunity

19  as all others in Siskiyou County to avail themselves of an appropriate and legal water supply, such as

20  wells or membership in a water district. Plaintiffs presumably purchased or leased their properties

21  understanding the circumstances related to water and the limitations imposed (such as, building

22  permits for residences requiring access to a permanent on-site potable water source). The water in

23  question is groundwater, for which there are many regulatory requirements, mostly imposed by the

24  State. The water in question is not part of a municipal water system, for which Plaintiffs would have

25  a legally enforceable right to access. Nevertheless, for the purposes of this litigation, the Court is

26  charging the County with explaining how Plaintiffs are to obtain water for their basic needs while

27  residing in a locale where only a handful of residents (none of them being the Plaintiffs) are residing

28  on a legal parcel.

SPINELLI, DONALD
& NOTT

19
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

## I. A Balance of the Hardships Tips in Favor of the County

The Court previously concluded that a balance of the hardships tipped sharply in favor of the Plaintiffs. Specifically, this Court concluded that some Plaintiffs would likely go without water for their basic needs. (*Order, ECF No. 47; p.27:11-13*) With the modifications of the permitting process, Plaintiffs should not be impeded by the ordinances in question in the permitting process from obtaining water for basic needs. They will not, however, be able to obtain water for illegal cannabis cultivation.

In contrast, if the Court continues to enjoin the County from prosecuting its laws, groundwater resources will be wastefully depleted during a severe drought by an insatiable illegal enterprise, the land used will continue to be contaminated with poisons, and crime will continue unabated. Whether any of the particular Plaintiffs (as distinct from the parcels on which they reside) are in fact part of this criminal enterprise is not before this court. However, it is absolutely certain that vast amounts of water are needlessly being utilized for criminal purposes, while the County is unable to stop water trucks on county roads from delivering groundwater that is not for basic needs but is in fact for cannabis cultivation. As the Court recognized in its initial Order of June 15, 2021, the County has an obligation to ensure that illegal cannabis cultivation does not continue to impose an unsustainable drain on scarce groundwater resources during a drought. (*See Order, ECF No. 11; p.10*) Irrefutable evidence also indicates that the illegal cannabis cultivation that is furthered by the water truck deliveries to grow sites has facilitated significant danger to the communities where those grow sites are located. This includes violent crime, pollution, and a wasting of the land where these activities occur.

## V.   CONCLUSION

Based on the foregoing, the County respectfully requests this Court dissolve its partial preliminary injunction.

Dated: February 18, 2022                **SPINELLI, DONALD & NOTT**

By    /s/ J. Scott Donald
J. SCOTT DONALD
Attorneys for Defendants
COUNTY OF SISKIYOU

20

SPINELLI, DONALD & NOTT

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION