**MARGOLIN & LAWRENCE**
Allison B. Margolin (SBN 222370)
418 S. Swall Dr.
Beverly Hills, CA 90211
Telephone: (323) 653-9700
Attorney for Plaintiffs

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| Dilevon Lo, Jerry Vang, Nathan Thao, Pao Lee, Antonio Lee, Koua Lee, Nhia Thai Vang, Zeng Lee, Der Lee, and Khue Cha,<br><br>               Plaintiffs,<br><br>vs.<br><br>County of Siskiyou, Jeremiah LaRue and Jesus Fernandez, in their official capacities as members of the Siskiyou County Sheriff's Office and in their individual capacities; and Brandon Criss, Ed Valenzuela, Michael N. Kobseff, Nancy Ogren, and Ray A. Haupt, in their official capacities as members of the Siskiyou County board of Supervisors and in their individual capacities; Edward Kiernan, in his official capacity as County Counsel for Siskiyou county and in his official capacity; and DOES 1-100<br><br>               Defendants. | CASE NO: 2:21-cv-00999-KJM-DMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION**<br><br>**Date:**       **April 15, 2022**<br>**Time:**       **10:00 a.m.**<br>**Courtroom:**  **3, 15th Floor**<br><br>**Judge: Hon. Kimberly J. Mueller** |

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR DISSOLUTION OF THE COURT'S ORDER
DILEVON LO *et al.* v. COUNTY OF SISKIYOU *et al.*

# TABLE OF CONTENTS

I.     INTRODUCTION....................................................................................................1

II.    FACTUAL ALLEGATIONS..................................................................................1

    A.     The Court's Injunction in This Case Has Provided Relief to Those Who had Previously Been Unable to Fulfill Basic Daily Needs; and the County has Continued to Pass Laws and Enforce Other Ones Aimed at Eliminating the Asian Presence from the Community....................................................................................................1

        1.     Plaintiffs Request that the Court Continue to Enforce its Previous Order during the Pendency of the Case Both Because the Court's Order has Allowed the Plaintiff's' to have Access to Water for Basic Living, Without Which They Did Not, and Without Which They Would Once Again Be Deprived of Water for Basic Needs....................................................................................................2

        2      The New Ordinance Does Not Address the Need for Non Potable Water in the Community, and Unfairly, in Violation of Equal Protection, Targets the Geographical Region Populated By Asian-Americans, Who Rely On Ag To Ag Private Water Sales For All of Their Water Needs....................................................................................................3

        3.     The New Law Would Unduly Burden Those in the Shasta Vista Subdivision and Other Areas Occupied By Asian-Americans with the Task of Paying Fees for the Ability to Buy Water, A Burden Not Placed On Other Parts Of Unincorporated Siskiyou County for Which There are Water Districts and/or Sufficient Wells....................................................................................................4

        4.     The County's Intent in Depriving Plaintiffs' Sufficient Water to Meet Their Daily Needs is in Part Evidenced by the County's Facilitation of Non-Asians' Water Needs During Emergency and Non-Emergency Times; and the County's Acknowledgement that the Previous Ordinance Would Lead to Fire Danger..........5

b.       Defendant's Fail to Understand that the Water Resources Board's Exception to the Region's Curtailment Orders Supports Plaintiff's Position.................................7

c.       The County's Claimed Impact Of Cannabis Cultivation Upon the Groundwater Basin Has Been Directly Refuted by a State Agency.........................................8

III.   STANDARD OF DECISION.......................................................................9

IV.   ARGUMENT...........................................................................................10

a.       The Court should not dissolve the injunction because defendants have failed to remedy the constitutional injury despite merely changing the face of an unconstitutional ordinance.............................................................................................10

b.    Modification of the Ordinance Does Not Address Plaintiffs' Equal Protection Claim Because They Continue to Have Disproportionate Difficulty Accessing Water for Basic Needs.12

1.       The new ordinances are in violation of the *14th Amendment* as they continue to have a disproportionate impact on Plaintiffs...................................................12

2.       Defendants Have Not Yet Provided Discovery Requested By Plaintiffs Which Is Required To Confirm The Severity Of Discrimination Caused By The County's Enforcement Intentional Impact.............................................................12

c.       The Circumstances Since the Court's Order Have Not Changed Sufficiently Enough to Survive a Re-examination under the *Winter* factors.............................14

1.       Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Claim...........................................................................................14

2.       The Modifications to the Ordinance Will Not Mitigate the Irreparable Harm to Plaintiffs in the Absence of Preliminary Relief.......................................15

3.       Because the Issue is Access to Water, a Basic Need for a Human Being, the Balance of Equities Tips in Plaintiffs Favor...........................................15

4.       Dissolving the Injunction is not in the public interest.............................15

V.   CONCLUSION.......................................................................................16

## <u>TABLE OF AUTHORITIES</u>

U.S. Const., amend XIV § 1.................................................................................................1, 12

Cases:

*United States v. Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985).........................................................9

*Sharp v. Weston*, 233 F.3d 1169, 1170 (9th Cir. 2000).........................................................9, 10, 11

*Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019)..............................................................10

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)................................................................10

*Am. Trucking Ass-n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)..................10

*Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011)..........................10

*Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).....................................10

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990)......................................................10, 11

*Gordon v. City of Moreno Valley*, 687 F.Supp.2d 930 (C.D. Cal. 2009).........................................13

*Washington v. Davis*, 426 U.S. 229 (1976)...................................................................................13

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).....................13, 14

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)......................................................................................13

*Ry. Exp. Agency v. People of State of N.Y.*, 336 U.S. 106, 112–13 (1949) (*Jackson, J. concur.*). .13

Other Authorities:

Cal. Health and Safety Code § 11358(d)..........................................................................................8

Siskiyou County Ordinance 21-14..................................................................................1, 2, 4, 14

Siskiyou County Ordinance 21-07................................................................................................ 2

Siskiyou County Ordinance 21-08.................................................................................. 2

Siskiyou County Resolution 21-131.........................................................1, 4, 5, 14

Siskiyou county Resolution 21-139.........................................................1, 3, 14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR DISSOLUTION OF THE COURT'S ORDER
GRANTING A PARTIAL PRELIMINARY INJUNCTION

## I.       INTRODUCTION

Since the preliminary injunction issued by this Court on September 3, 2021, Defendants have changed the permitting process, modified the language of the offending Ordinances, and re-gifted them as new ones[1].  The new proposed ordinances would prohibit Plaintiffs from obtaining non-potable water at all, and would prohibit them from obtaining more than 100 gallons of potable water without obtaining a permit.  *See* EXHIBITS 1, 2, and 3.  While the County suggests the fact that the prohibition on obtaining non-potable water now would apply County-wide rather than areas heavily populated by Asian-Americans, the rest of the County by and large has access to potable and non-potable water through either city water, water districts and personal wells.  In fact, the City of Yreka, allows its residents 1,250 gallons of non-potable water in addition to unlimited city water.  *See* EXHIBIT 4, photos of Yreka water filling station, authenticated by Allison Margolin Affidavit.

Lifting a stay on the County's new ordinances, as Defendants are essentially requesting, also would violate Equal Protection Clause of the 14th Amendment.  The Defendants argue that the "Plaintiffs have the same opportunity as well as others in Siskiyou County to avail themselves of an appropriate and legal water supply, such as wells or membership in a water district."  ECF No. 57-1 p. 19:18-20.  In addition the county has not met the requisite burden of proof to overturn the court's current Order.  The case law establishes this burden as establishing "a significant change in law or facts" before dissolution of an injunction can occur.  They have not met this burden.  For these reasons, Plaintiffs ask the Court to preserve the Preliminary injunction currently in place.

## II.       FACTUAL ALLEGATIONS

**A.       The Court's Injunction in This Case Has Provided Relief to those Who had Previously Been Unable to Fulfill Basic Daily Needs; and the County has Continued to Pass Laws and Enforce Other Ones Aimed at Eliminating the Asian Presence from the Community**

---

[1] Ordinance No. 21-14, which prohibits Water Trucks on County roads; Resolution 21-131, which exempts potable water trucks from Ord. 21-14; and Resolution 21-139, which renders Ord. 21-14 enforceable County-wide

The presence of the Court's injunction has both provided relief to Plaintiffs (and their neighbors), and further revealed the County's intent to execute an enforcement policy that results in a disparate impact upon the Hmong community.  In addition, the County has, since the issuance of the order in this case, passed Ordinance 21-14, which as evidenced by the Board of Supervisors hearings surrounding its passage, was motivated by the same racial animus that motivated the passage of Ordinances 21-07 and 21-08 (the ones that are currently enjoined).

The Board of Supervisors have apparently placed more weight on the testimony of a few public commenters than that of the several Hmong people screaming in protest outside of the public meeting.  *See* Board of Supervisors Meeting transcript, Aug. 3, 2021, EXHIBIT 5  *See also* https://www.co.siskiyou.ca.us/sites/default/files/fileattachments/board_of_supervisors/meeting/21851/bosaudio_20210803_meeting2.mp3, audio file at 11:15-14:17, last accessed March 23, 2022. *See also* https://www.co.siskiyou.ca.us/sites/default/files/fileattachments/board_of_supervisors/meeting/15745/bosaudio_20201201_meeting1.mp3 audio file at 35:09-39:54, last accessed March 21, 2022. The audio file is much more illustrative of the chaotic contrast than the written transcript is. Public commenters had a tendency to lump the entire Hmong community in with those who are engaged in unpermitted cannabis cultivation.  Language like "These criminals,"  "They're all criminals," "live like normal people," "You came here and lied to us in the first place about being good citizens."  This troubling language heard in public comments sound suspiciously like discriminatory dog-whistling.

**1. Plaintiffs Request that the Court Continue to Enforce its Previous Order During the Pendency of the Case Both Because the Court's Order has Allowed the Plaintiffs' to have Access to Water for Basic Living, Without Which They Did Not, and Without Which They Would Once Again Be Deprived of Water for Basic Needs.**

The most tangible relief the Injunction has provided is that Plaintiffs, and the Hmong Community at large, continue to have reliable legal access to water.  They are hoping that the Court will continue to enforce its previous Order in this case.

As Defendants' write without support or citation, "As modified, the new ordinance does not apply to potable water, which under California State law is [sic] only type that may be legally and safely used for drinking, cooking, and bathing."  ECF No. 57-1, p. 18:22-24.  Defendants even go so far as to suggest that using non-potable water is somehow criminal, and would undoubtedly further their pursuit to criminalize Plaintiffs' needs central to daily existence.  Also Defendants' leave out of this list raising crops and fire mitigation and prevention, all of which are concerns the Court noted in granting in part Plaintiff's requests that led to the issuance of the preliminary injunction in this case.  *See* Order, ECF No. 47 p. 27:11-17.

Plaintiffs claim that water is easier to get now.  Koua Lee Aff. ¶ 5.  Vegetable gardens are regenerating.  Supp. Khue Cha Aff. ¶ 7.  Animals are reproducing. Supp. Nhia Thai Vang Aff. ¶ 5.  Bathing is not a once-a-week endeavor.  Supp. Koua Lee Aff. ¶ 5.  A quality of life is returning. Supp. Khue Cha Aff. ¶ 8.  Plaintiffs are also not currently limited to potable water, which would occur if the Injunction is lifted.  Non-potable water can be used by Plaintiffs to clean, garden, and feed their animals.  Supp. Khue Cha Aff. ¶ 7.

**2      The New Ordinance Does Not Address the Need for Non Potable Water in the Community, and Unfairly, in Violation of Equal Protection, Targets the Geographical Region Populated By Asian-Americans, Who Rely On Ag To Ag Private Water Sales For All of Their Water Needs**

The County has taken the Court's Order to a literal extreme, and chosen to enforce other ordinances at its disposal in violation of Plaintiffs' right to equal protection under the Federal Constitution.  Order, ECF No. 47 p. 27:19-24.  Sheriff patrols have continued in the area.  *See* Supp. Aff. Khue Cha ¶ 9.  The County has apparently not shifted its focus away from the Hmong community.  "In the lead up, to and contemporaneous with, the passage of these ordinances, the data suggests Defendants were selectively enforcing their laws against Asian and Hmong people...."  *See* Brief of Amici, ECF No. 60, p. 20:7-9.  *See also* EXHIBIT 6.  While the words in Resolution 21-139 are written to apply to the entire County, Plaintiffs are not confident that the enforcement strategy will be applied evenly between them and other Siskiyou citizens.

For example, on March 10, 2022, law enforcement served a search warrant looking for cannabis on Frank Lor's family property in Mount Shasta Vista.  Frank Lor Aff. ¶ 11.  The Officers entered his greenhouse that was filled with about 300 fledgling plants.  *Id. at* ¶¶ 9, 12. However, the plants were green onion, cabbage, pepper, and cilantro.  None of the plants were cannabis.  *Id. at* ¶¶ 9, 14.  After the officers left, none of the plants were alive either.  *Id. at* ¶ 12.

Because the weather was cold, and Officers left the greenhouse door open, the cold air ended up killing the plants.  *Id.*  Mr. Lor claims he was planning to share his harvest with the elderly members of the community for free.  *Id. at* ¶ 9.  Even in the absence of cannabis, the Officer ordered him to remove a swimming pool, three 250-gallon water storage tanks, and two wood stoves.  *Id. at* ¶ 14.  To arrive looking for cannabis, failing to find any, and then taking away a person's method of food cultivation seems like a punitive and cruel exercise of discretion from a law enforcement officer.

It is not known how the enforcement strategy is being applied to other parts of Siskiyou County.   Defendants delivered the first round of discovery documents on February 10, 2022. Plaintiffs are still waiting for a complete response.  Plaintiffs will continue the discovery process to compare demographic numbers regarding arrest, and code enforcement data.  Plaintiffs would like to know how many citations are issued to Hmong people, and how many to White people, and whether the proportionate population suggests a disproportionate impact.

**3.      The New Law Would Unduly Burden Those in the Shasta Vista Subdivision and Other Areas Occupied By Asian-Americans with the Task of Paying Fees for the Ability to Buy Water, A Burden Not Placed On Other Parts Of Unincorporated Siskiyou County for Which There are Water Districts and/or Sufficient Wells**

Since the Court issued the preliminary injunction, the Board of Supervisors convened, heard public comment, revised the ordinance at issue, and passed resolution that modified the execution of Ordinance 21-14.  Resolution 21-131 created a list of six exemptions that do not apply to the restrictions imposed by the modified ordinance.  *See* EXHIBIT 2.  Each of the six exemptions share a common factor of exclusivity.  Each requires an application process, and a

fee.  Everyone needs to have a permit issued by a regulatory agency.  Everyone needs to have access to the capital necessary to comply.  If one cannot pay to play, they only get 99 gallons of water.

Despite the County's claim that the new process is streamlined and user-friendly, See ECF No. 57 p. 2:11-19, Plaintiffs have not found any of the required forms available in the Hmong language.  Supp. Khue Cha Aff. ¶ 11.  In addition, the County did not allow one of the Plaintiffs to apply for a permit (though it is unclear what the permit was for).  *Id.* ¶ 10.  Another Plaintiff submitted an application for a well permit five years ago.  He also paid $170.00 as part of the fee.  In February, 2022, he went to the County office to follow up, and was told that because of staff shortages, he would have to wait another two years for approval.  Supp. Koua Lee Aff. ¶ 6.

In addition, the exemptions provided by Resolution 21-131 do not apply to deliveries of non-potable water.  The availability of non-potable water has been essential to the Plaintiffs for certain uses.  The "potability" of water is dependent on the quality of the vessel that is carrying it.  *See* Order, ECF Doc. 47 pp. 13:19-14:2.  A truck free of chemicals, but not properly sanitized, is prohibited from delivering otherwise clean water.  Water that could be boiled for home use such as Plaintiffs do.  A truck delivering water meant exclusively for irrigation would be limited to supplying only potable water, at significant cost.

Plaintiffs cannot ascertain whether the County's decision to exclude non-potable water from the list of exemptions was meant to apply to anyone who could not afford a truck, and more Siskiyou citizens happened to be Hmong, or whether the ordinance was directed at the Hmong community, and the indigent non-Hmong Siskiyou citizens got swept up in it as well.  Perhaps the truth of the County's intention behind this policy will eventually come to light.

**4.     The County's Intent in Depriving Plaintiffs' Sufficient Water to Meet Their Daily Needs is in Part Evidenced by the County's Facilitation of Non-Asians' Water Needs During Emergency and Non-Emergency Times; and the County's Acknowledgement that the Previous Ordinance Would Lead to Fire Danger**

Last summer, when the Hornbrook community, part of unincorporated Siskiyou County, had a water pipe start leaking under the park, the community pitched in, and worked together to fix the problem.  *See* "Amid water crisis, small community takes matters into its own hands" by Christina Giardinelli, KTVL, Wednesday, July 28th 2021.  *See* EXHIBIT 7.  *See also* https://ktvl.com/news/local/amid-water-crisis-small-community-takes-matters-into-its-own-hands last accessed March 23, 2022.  In this instance, the City of Yreka emergency services granted access to a water truck, and provided the water to a nearby community in need.  Since the delivery was to an unincorporated part of Siskiyou County, the Sheriff must have consented to this delivery from a water truck.  This is the type of solution that a municipality in Siskiyou County, in cooperation with the County itself, is apparently capable of implementing.

By contrast, other unincorporated County citizens, in a different area, were met with a different strategy.  Last summer, when the Mount Shasta Vista community had a lightning strike start the Lava Fire that spread into their neighborhood, the community pitched in, and worked together to fix the problem.  *See* "Hmong Americans in Northern California fight wildfire — and distrust" by Theo Whitcomb, High Country News, Oct. 18, 2021.  *See* EXHIBIT 8.  *See also* https://www.hcn.org/issues/53.11/south-wildfire-hmong-americans-in-northern-california-fight-wildfire-and-distrust last accessed on March 23, 2022.  In this instance, no municipal access to water was given, the subdivision was placed under a mandatory evacuation, and somebody was killed by a gunshot.  Frank Lor participated in the firefighting effort, and was arrested in the process.  Lor Aff. ¶¶ 3-6.  The new Ordinances were passed in spite of the lessons learned during the summer of 2021.  The county was aware of the importance of water trucks as a line of defense in the case of a fire.  *See* EXHIBIT 9, SC DOC 469-471.  The current form of Ordinance 21-14 would prohibit a water truck from carrying non-potable water to this emergency.

These were two different groups of people facing an emergency.  The water was sent to the water leak, instead of the firefight.  While the Lava Fire was far more catastrophic than the water leak, and an evacuation order could be considered reasonable under the circumstances, the point is to illustrate where the municipalities were willing to contribute resources and the County would necessarily have to agree to open the fire hydrants.

There is a drive-through non-potable water filling station in Yreka. *See* EXHIBIT 4, authenticated by Allison Margolin Aff. ¶ 6.  A resident within the 96097 zip code may go to Yreka City Hall, and purchase a token, which is redeemable for 250 gallons of non-potable water for household and domestic use. *Id.* at ¶ 7.  Under order of the Yreka City council, there is a limit of five tokens per-person, totaling 1,250 gallons of non-potable water available to a single person. *Id.* at ¶¶ 8-9.  This suggests that Yreka officials have recognized 1,250 gallons of non potable water as a reasonable weekly limit for a person in the city limits, who already has access to a municipal water source.

The area where Plaintiffs reside has no municipal option.  Yet residents have established a tangible need for access to water.  The County has not ensured a safe and adequate source of water other than trucked groundwater for the Hmong community.  But somehow there were similarly situated County residents in a different neighborhood, not within the Yreka city limits, who were able to access the Yreka municipal water source, and fill their trucks as needed.

**b.  Defendant's Fail to Understand that the Water Resources Board's Exception to the Region's Curtailment Orders Supports Plaintiff's Position**

On March 17, 2022 the SWRCB suspended the curtailment orders referenced by Defendants in their motion ECF no. 57-1 p. 12:10-18; and such orders are scheduled to go back into effect on March 25.  Therefore Griset and any water user in the Shasta Vista Riverbed would have until April 4, 2022 to fill out an exemption form.  The form specifically contemplates the use of water trucks for basic living needs. *See* EXHIBIT 10.  Moreover, there is no mechanism to fine or punish those who do not fill out the form, only those who are illegally diverting water; it would not criminalize otherwise legal activity nor would it criminalize the beneficiaries of that activity.  *See* EXHIBIT 11.  *See also*
https://www.waterboards.ca.gov/waterrights/water_issues/programs/drought/faq.html last accessed March 24, 2022.

Defendants' focus a lot of energy on the fact that the Griset well, ECF 57-1 p. 12:9-16, is on the curtailment list even though 1) the evidence thus far is undisputed that Griset's well has not

even been open since the Court's order since he in previous declarations indicated his well opened April –October and 2) all water rights holders in this watershed received notices regarding the curtailment.  It is interesting to note that the State Water Resources Control Board ("SWCRB") supports our position, and that Defendants even concede this in their brief, ECF No. 57-1 p. 12:13-15, in that the curtailment orders do not apply to diversion of water for daily living and fire related issues.  *See* EXHIBIT 10 p. 2.

The English only form the state says that a water user who provides water for daily living, and even through water trucks, as well as for fire-related activities, would be exempt from the curtailment order.  Specifically the form contemplates such exempt water uses as "indoor domestic water for human consumption, cooking, or sanitation."  *See* EXHIBIT 10.  Also of note the SWCRB proposes that alfalfa farmers limit their activities in that regard, as the best way to reduce water usage on that specific watershed.  *See* EXHIBIT 12.

After more than a century of anti-Asian sentiment, the County in now attempting again to get the Hmong and Asian-Americans off of land they feel should ultimately be forfeited to "the white man."  Though on first blush that may seem extreme and or hyperbole, what else can be reasoned from a County whose criminal cases, abatements, and liens are directed against Asian-Americans.  *See* ECF No. 60 p. 23.  This is a County whose Board of Supervisors has approved multiple deals with water bottling plants and yet who seek to blame the depletion of the aquifer on illegal cannabis cultivation.  As a relevant aside, the County has yet to produce one conviction for a violation of Cal Health and Safety Code § 11358(d) a felony violation of marijuana cultivation with environmental harm.  There is an entire DA handbook on prosecuting environmental cannabis crimes, yet the County has not established one conviction for a crime they pretend justifies violating the basic civil rights and equal protection of an entire population.

c.      **The County's Claimed Impact Of Cannabis Cultivation Upon the Groundwater Basin Has Been Directly Refuted by a State Agency**

The cornerstone of the County's enforcement strategy has been the repeated assertion that cannabis cultivation is a reason for the water shortage in Siskiyou County.  According to the State

Water Resources Control Board (SWCRB"), cannabis cultivation using trucked-in water accounts for "0.4% of the volume used by other irrigated agriculture in the basin."  *See* Letter from Eileen Sobeck, Executive Director, SWRCB and Matthias St. John, Executive Officer, North Coast Regional Water Board to Members of Siskiyou County Board of Supervisors, October 28, 2020, EXHIBIT 13, p. 4.

The letter continues, "However, it is unlikely the groundwater pumping and trucking documented in the County's letter is causing the declines in the aquifer noted throughout the Shasta groundwater basin."  This is in direct contradiction to claims Defendants have been making to the public, as well as this Court.  The SWRCB wrote to the Board of Supervisors, "Other agricultural water uses (e.g. flood irrigation, stock water, and forage crops), in combination with a significant drought, are much more likely to be impacting groundwater levels in the County."  This information was sent to the Board of Supervisors prior to the Ordinances being enacted.  Without contradictory evidence from the County, this claim of cannabis impact on water appears to function as a pretext for something else.  Further discovery will confirm or deny this inquiry.

It is clear that California is currently experiencing the need to conserve water.  The problem of the drought affects every Californian, and each citizen of the State should contribute to the solution.  But it should not fall on one particular group to absorb the impact of the water shortage, while other groups are provided relief.  From Plaintiffs' perspective, the water concerns voiced by the County appear to be a pretextual reason to not only attack cannabis cultivation, but to push out the Hmong community.  Supp. Khue Cha Aff. ¶ 12.

### III.    STANDARD OF DECISION

The District Court "retains the power to modify the terms of its injunction in the event that changed circumstances require it." *United States v. Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985). The Court considers "new material presented with respect to the motion to dissolve" rather than the "propriety of the underlying order."  *Sharp v. Weston*, 233 F.3d 1166, 1169-1170 (9th Cir. 2000).  The burden of proof falls to the party "seeking modification or dissolution of an

injunction" to establish that "significant change in facts or law warrants revision or dissolution of the injunction." *Id.* The " same criteria that govern the issuance of a preliminary injunction" informs whether the change in facts of law "warrants dissolution of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2009). The irreparable injury to the plaintiff must be more likely to occur, than a mere possibility. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Where "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," a preliminary injunction is appropriate. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011). "Serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

## IV.    ARGUMENT

### a.    The Court should not dissolve the injunction because defendants have failed to remedy the constitutional injury despite merely changing the face of an unconstitutional ordinance

Defendants assert that because the Ordinance has been amended, the "Court's order enjoining the original ordinances is now moot and the Court should dissolve its injunction on that basis alone." (*ECF Doc. 57 p. 10:7-9*). Plaintiffs assert that the words have changed, but the circumstances have not.

In support of their Position, Defendants cited *Lewis v. Continental Bank*, ECF No. 57-1 p. 9:23-25, a case that involved an Illinois bank that wanted to establish an industrial savings bank ("ISB") branch in Florida. 494 U.S. 472, 474-75 (1990). Their application was denied because at the time, a Florida law prohibited out-of-state holding companies from owning an in-state bank.

The bank sued under the theory of a Commerce Clause injury, and won on summary judgment. *Id.* at 475.  During the course of appeal, both the Florida legislature, and the United States Congress amended different laws, which effectively prevented any bank from establishing an ISB in the State of Florida.  *Id.* at 475-76.  Eventually the case made it to the U.S. Supreme Court, where it was held that the change in the law was tangible enough to remedy the underlying constitutional injury, dissolved the bank's "personal stake in the outcome," and rendered the case moot.  *Id.* at 478-479, 481.

In the case before this Court, the Defendants are identifying the "constitutional injury" as solely the wording of the ordinance.  Plaintiffs contend that the underlying "constitutional injury" is the function of the ordinance, as well as the inexplicable targeting of the Hmong community.  This underlying injury continues, despite the linguistic revisions that the county has made to the ordinance.  Because the issue of enforcement strategy continues to be a factor, and neither side of this action seems willing to budge, this case should not be considered "fully litigated."

In addition, because the impact is ongoing, there continues to be a reasonable expectation that the Hmong will be subjected to the same intentional impact of a heavy-handed enforcement strategy that appears to be concentrated on their community.  While the County has modified the challenged ordinance, and is not likely to reenact the enjoined one, there is no guarantee that the force and effect of the enforcement strategy will not continue to overwhelm the Hmong community.  For this reason, Plaintiffs' concerns should not be considered moot.

In *Sharp v. Weston*, the movant defined "significant change in facts" as compliance with the injunction issued by the court, and having "remedied the underlying constitutional violation." The Ninth Circuit said that as a result, the "district court was required to examine the existing situation" at the movants facility, and "determine whether the changes" in the movant's program "were so significant as to warrant an end of court supervision."  233 F.3d at 1170.

In the case before this Court, the asserted underlying constitutional violation is that the intentional impact of the enforcement strategy resulted in the different treatment of the Hmong community, and therefore plausibly rises to "discriminatory."  Our position will likely be further strengthened as the discovery process reveals the inner workings of the County's enforcement

program.  For example, we are still waiting on information related to the official policy of enforcement that is applied not only this ordinance, but also other provisions in the Siskiyou County Code.  The County has the burden to prove that its "significant change in facts" includes not only a revision of the language of the statue, but also the remedy of any discriminatory impact to the Plaintiffs, as well as the rest of the Hmong community.  Defendants have not met this burden, and therefore have not established that a "significant change in facts" has occurred.  The law has been changed, but the fact of the disproportionate impact remains.

**b.**    **Modification of the Ordinance Does Not Address Plaintiffs' Equal Protection Claim Because They Continue to Have Disproportionate Difficulty Accessing Water for Basic Needs**

**1.**    **The new ordinances are in violation of the _14th Amendment_ as they continue to have a disproportionate impact on Plaintiffs**

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; [No State shall] deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Resolution 21-139 expands the prohibition of Water Trucks from the narrow prohibition that existed at the time of the court's injunction to all County streets and highways.  But by changing the ordinance without addressing the County's targeting of Plaintiffs' community, the County has focused on the "make" part, and ignored the "enforce" part of the Equal Protection Clause.

While on its face, the new ordinance looks somewhat neutral, the substance of Plaintiffs' claim has to do with the exercise of discretion that the county has demonstrated in its enforcement strategy.  The fact remains that a disproportionate impact continues, even after the Court's Injunction, regardless of what law the County is using.

**2.**    **Defendants Have Not Yet Provided Discovery Requested By Plaintiffs Which Is Required To Confirm The Severity Of Discrimination Caused By The County's Enforcement Intentional Impact.**

1    "Two things need to be shown to state a race discrimination civil rights claim: The act or

2   conduct complained of must have had a discriminatory impact, and that the discrimination was

3   intentional." *Gordon v. City of Moreno Valley*, 687 F.Supp.2d 930, 941 (C.D. Cal. 2009)

4   (quoting *Washington v. Davis*, 426 U.S. 229, 239-41 (1976)).  See also *Vill. Of Arlington Heights*

5   *v. Met. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977).  "Disparate racial impact is of

6   unquestioned relevance in proving the forbidden intent to discriminate." *Flores v. Pierce*, 617

7   F.2d 1386, 1389 (9th Cir. 1980).  When a law "affects alike all persons similarly situated," it is

8   not a breach of the Fourteenth Amendment.  *Yick Wo v. Hopkins*, 118 U.S. 356, 368 (1886).  "I

9   regard it as a salutary doctrine that cities, states and the Federal Government must exercise their

10  powers so as not to discriminate between their inhabitants except upon some reasonable

11  differentiation fairly related to the object of regulation." *Ry. Exp. Agency v. People of State of*

12  *N.Y.*, 336 U.S. 106, 112–13 (1949) (*Jackson, J. concurring*).

13      In *Gordon*, a group of Black-owned barbershops were subjected to "raid-style"

14  warrantless health and safety inspections that involved city police wearing bullet-proof vests, and

15  brandishing handguns.  687 F.Supp.2d at 934.  The other shops in the area, not owned by African-

16  Americans, did not experience the same types of "inspections." *Id.*at 943.  The court found that

17  even in an industry like barbering, that is heavily regulated in California, the barbers had

18  plausibly pled that this type of treatment was "constitutionally unreasonable," and allowed the

19  case to proceed beyond a motion to dismiss.  *Id.* at 952.

20      In this case, Plaintiffs have reason to believe that other similarly-situated citizens of

21  Siskiyou County are not subjected to the same kind of aggressive treatment that the Hmong

22  community has experienced.  Plaintiffs have heard of no other neighborhoods where County law

23  enforcement has responded so adversely to a cilantro garden.  The spirit of generosity and

24  collaboration that the City of Yreka was capable of showing the Hornbrook neighborhood in their

25  time of need has not been mirrored by Siskiyou County towards the Hmong Community.  Even

26  with the presence of the injunction, Plaintiffs believe that they are likely to continue suffering the

27  injury of this disproportionate impact.

28

Plaintiffs understand that they must offer evidence of discriminatory intent to succeed on the merits of their claim.  *See* ECF No. 47 p. 24:4-17.  After reviewing the first round of Defendants' discovery production, there are more questions than answers.  There are no memos, no training manuals, no documents that spell out the reasoning for why so many of the enforcement actions across different agencies have landed at the feet of the Hmong.  Yet the actions continue in a way that suggests the existence of an underlying policy.  The County has claimed that this area is a higher concentration of grows, hence the concentrated enforcement. But this does not explain why the enforcement strategy has spilled over into the community at large, having an impact on Hmong people who have no connection to cannabis cultivation.  With more information, Plaintiffs can find out if the actions taken place are intentional and purposely designed to impact the Hmong people and nobody else.  This impact has leaked over into civilian relations between the Hmong and Caucasians as well.  *See* Supp. Nhia Thai Vang Aff. ¶¶ 7-8.

### c.      The Circumstances Since the Court's Order Have Not Changed Sufficiently Enough to Survive a Re-examination under the *Winter* factors

#### 1.      Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Claim

The revised language (and expected application) of Ordinance 21-14, and its underlying Resolutions 21-131 and 21-139 do not sufficiently address the disparate impact that was fuel for the Court's Order granting a Preliminary Injunction.  There remains an exclusive element to the County's proposed regulatory scheme that would result in a continued denial of water access should the injunction be lifted.  There also appears to be a contrast in official policy regarding how Siskiyou County treats its similarly situated residents.  Plaintiffs and their surrounding community are on the receiving end of what feels like discriminatory enforcement.  Under the measuring criteria laid out in *Arlington Heights*, Plaintiffs will eventually succeed in qualifying for relief under the merits of an Equal Protection Claim.

#### 2.      The Modifications to the Ordinance Will Not Mitigate the Irreparable Harm to Plaintiffs in the Absence of Preliminary Relief

Defendants claim that "Plaintiffs should not be impeded by the ordinances in question" and the "permitting process from obtaining water for their basic needs." (*ECF Doc 57 p. 20:4*-6). This is not entirely true.  The restriction on delivery of non-potable water along County roads will unquestionably impede the Plaintiffs' ability to maintain their current level of humble water usage.  There is also no language in the Ordinance that guarantees an even-handed enforcement to all of Siskiyou County.  Absent a clear enforcement strategy, Plaintiffs and their neighbors expect for the targeting of their neighborhood to continue.

### 3.     Because the Issue is Access to Water, a Basic Need for a Human Being, the Balance of Equities Tips in Plaintiffs Favor

Defendants claim that Plaintiffs can simply drill a well or join a water district.  ECF No. 57-1 p. 19:18-20.  As stated above, the County has not responded in a timely fashion to a Plaintiff who has applied and paid for a permit.  The County has instructed this person to wait for two more years before their application can be processed.  In the interim, it does not seem equitable to prevent access to other water sources while the approval process is ongoing.  The SWCRB has recognized delivery via water trucks as a viable option for County residents who are limited in their options.  It is not clear why the County is trying to prevent this solution.  Law enforcement, while understandably essential for the County, should not take precedence over a humanitarian issue.

### 4.     Dissolving the Injunction is not in the public interest

Defendants claim that it is "absolutely certain that vast amounts of water are needlessly being utilized for criminal purposes."  This is entirely not true.  The written direction from the SWCRB rebuts this claim on its face.  It appears that alfalfa is public enemy number one as far as agricultural impact on the water supply.  The repeated claims that Defendants have offered the public, as well as this Court, regarding the amount of water used for cannabis cultivation appears to be exaggerated.

## V.    CONCLUSION

Based on the events that have come to light since the Court's order of Sept. 3, 2021, an argument can be reasonably made that the enforcement strategy executed by County officials appear to single out the Hmong community, quite possibly on the basis of their race, culture, and/or language.  Plaintiffs ask that the Preliminary Injunction remain in place.


DATED: March 24, 2022                    Respectfully submitted,

                                    By:    _____
                                         Allison B. Margolin
                                         Attorney for Plaintiffs

---

16