| | |
|---|---|
| 1 | **SPINELLI, DONALD & NOTT** |
| | A Professional Corporation |
| 2 | DOMENIC D. SPINELLI (SBN: 131192) |
| | J. SCOTT DONALD (SBN: 158338) |
| 3 | 601 University Avenue, Suite 225 |
| | Sacramento, CA 95825 |
| 4 | Telephone: (916) 448-7888 |
| | Facsimile:   (916) 448-6888 |
| 5 | |
| 6 | Attorneys for Defendants County of Siskiyou; Jeremiah LaRue and Jesus |
| 7 | Fernandez, in their official capacities as members of the Siskiyou County |
| 8 | Sheriff's Department and in their individual capacities; Brandon Criss, Ed Valenzuela, |
| 9 | Michael N. Kobseff, Nancy Ogren, and Ray A. Haupt, in their official capacities |
| 10 | as members of the Siskiyou County Board of Supervisors and in their individual |
| 11 | capacities; Edward Kiernan, in his official capacity as County Counsel for Siskiyou |
| 12 | County and in his individual capacity; and DOES 1-100 |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| Dilevon Lo, Jerry Vang, Nathan Thao, Mao Thao, Pao Lee, Antonio Lee, Koua Lee, Nhia Thai Vang, Zeng Lee, Der Lee and Khue Cha, <br><br>Plaintiffs,<br><br>vs.<br><br>County of Siskiyou; Jeremiah LaRue and Jesus Fernandez, in their official capacities as members of the Siskiyou County Sheriff's Department and in their individual capacities; and Brandon Criss, Ed Valenzuela, Michael N. Kobseff, Nancy Ogren, and Ray A. Haupt, in their official capacities as members of the Siskiyou County Board of Supervisors and in their individual capacities; Edward Kiernan, in his official capacity as County Counsel for Siskiyou County and in his individual capacity; and DOES 1-100,<br><br>Defendants. | Case No. 2:21-cv-00999-KJM-DMC<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION**<br><br>Complaint Filed:  June 4, 2021<br>First Amended Complaint Filed: July 15, 2021<br><br>**Date:   April 15, 2022**<br>**Time:  10:00 AM**<br>**Courtroom:  3, 15th Floor**<br><br>Judge: Hon. Kimberly J. Mueller<br><br>**[FEES EXEMPT PURSUANT TO GOVERNMENT CODE SECTION 6103]** |

## I.  INTRODUCTION

The County has made material changes to the ordinances in question and simplified the permitting process under which applicants may obtain more than 100 gallons of groundwater by truck. In the event this Court dissolves the injunction currently in place, the County will enforce ordinances that target criminal activity throughout the entire county and have the added benefit of mitigating the waste of a precious resource.

Plaintiffs, who are ten residents of one subdivision within the county and brought suit on the basis that they have been unfairly targeted on the basis of race, can no longer make the claim that the subdivision in which they live has been singled out for enforcement. The old ordinances which were limited in their scope of enforcement have now been expanded to include the entire county. Furthermore, the permits, which are required only in the event that a citizen of Siskiyou County seeks to have greater than 100 gallons per truckload delivered, has been significantly simplified. In their Opposition, Plaintiffs concede that the ordinances have been changed and that there has been no resumption of enforcement. Nevertheless, and despite the fact that as revised, no race including Asians generally or Hmong specifically can be inferred to be targeted, Plaintiffs continue to argue that the ordinances as modified and the permitting process as changed illustrate a continued and long-standing targeting of Plaintiffs on the basis of their race.

As is well documented, the ordinances in question were enacted by the Board of Supervisors all of whom, along with the County's Attorney and Sheriff, are named as individual defendants. Both Plaintiffs and Amici continue to try and sway this Court with arguments that these defendants, i.e. Board of Supervisors, enacted the ordinances in question as a means of targeting the Hmong community. However, there is not one statement attributed to any of the individually named defendants who enacted the ordinance that can sustain the Plaintiffs' burden of proof that racial animus was the motivating factor for enactment. Instead, Plaintiffs rely on statements attributed to others who **did not** enact the ordinances. Most of the statements relied upon by Plaintiffs are from unidentified third parties, people who used to be employed by the County, or members of the public speaking in furtherance of their own concerns. There is not one single statement that constitutes direct evidence of racial motivation to enact the ordinances, including those made by third parties

2
SPINELLI, DONALD & NOTT
DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

and non-defendants. Instead, Plaintiffs rely on innuendo and inference to suggest that members of the public in Siskiyou County who have indeed expressed concerns regarding illegal activities and the impact of those activities as evidence that the named Defendants are targeting a race as opposed to targeting an activity.

In considering this motion, the Court must now take a very serious look as to whether there is in fact a compelling interest to continue to protect Plaintiffs' unfettered access to groundwater transported by truck to unpermitted properties during extreme drought. Against that interest, the Court must consider the issues created by an illegal industry that employs hundreds of large water trucks distributing groundwater during a drought when wells are running dry, dumping pesticides and sewage into the ground, contaminating the groundwater, and are in fact angry and resentful about the conduct. If this Court is intent on focusing on the public comments and newspaper articles cited by Plaintiffs and Amici in support of their position that the ordinances are racially motivated, equal consideration should be given to the more supportable motivation behind the statements that the citizens of Siskiyou County are sick and tired of a criminal enterprise that has wreaked havoc with the land, the water, and public resources.

## II.  STATEMENT OF FACTS

Due to the Court's Order granting Plaintiffs' a Preliminary Injunction, the County has yet to implement the permitting process or enforce the ordinances as revised. Since the Court's Order, the original ordinances have not been enforced. (*See Affidavit of Jeremiah LaRue* ¶ 2)  Since the Court's Order, in addition to responding to Public Records Act requests submitted by Counsel for Amicus and the Plaintiffs, the Defendants, including Sheriff LaRue, have responded to requests for the production of documents which include records referred to in the Amicus Opposition and specifically the declaration of Dylan Verner-Crist in support of a brief of Civil Rights Amici Opposition to defend its motion to dissolve the preliminary injunction. A copy of the October 11, 2021 PRA is attached to the affidavit of Sheriff LaRue as Exhibit A. (*LaRue Affidavit* ¶ 3) With respect to enforcement and arrest records, all of the documents requested thus far have related to cannabis-related offenses including those specific to enforcement of the prior ordinances. (*LaRue Affidavit* ¶ 3) However, as noted above, there has been no enforcement of the prior ordinances or

the ordinances as revised through resolution since this Court's Order Granting Plaintiffs' Injunction.

### III.   ARGUMENT

**A.   <u>The Changes in Ordinances and Permitting Process Provide Requisite Basis for Dissolution of the Preliminary Injunction</u>**

In the underlying First Amended Complaint, Plaintiffs contend that the County violated the due process clause of the Fourteenth Amendment by enacting and enforcing ordinances that they concede are neutral on their face, but that as originally enacted targeted the Hmong population disproportionately because enforcement was limited in its earliest application to roads leading into the Mount Shasta Vista ("MSV") area, which Plaintiffs contend is primarily populated with individuals who are Hmong. (*See FAC, ECF No. 29, pp. 9:7-10:17*)  Plaintiffs complained that the original ordinances, through a prior resolution, singled out the roads leading to and from where Hmong communities resided for enforcement. (*See Plaintiffs' MPA in Support of TRO and Preliminary Injunction, ECF No. 4, p.12:15-18*)  Plaintiffs argued:

> "Here, the laws criminalizing people traveling with over 100 gallons of water are clearly motivated by racial discrimination as, on their face, they apply only on certain roads near Hmong communities. If laws were merely intended to prevent the wasting of water, or the use of water for any unlawful purpose, they would have applied county wide, so that **all people within the County who are similarly situated would be subject to the same rules and regulations**." [Emphasis added]  (*See Plaintiffs' MPA, ECF No. 4, p. 24:22-26*)

In its Order granting Plaintiffs' Preliminary Injunction, this Court expressly stated that it would consider a motion to dissolve the injunction if the County revised its ordinances and permitting process in a manner that did not weigh unfairly on the Hmong community. (*See Court's Order, ECF No. 47, pp. 27-28*) By expanding the enforcement of the trucking ordinance county wide, Plaintiffs can no longer argue that only Hmong or other citizens of MSV bear an unfair burden as a result of enactment or enforcement of the ordinances in question. If there ever truly was a concern, it should be crystal clear that any citizen of Siskiyou County occupying, residing or otherwise utilizing an unpermitted structure without legal access to non-potable water faces the same constraints with respect to the acquisition and use of trucked-in groundwater in a volume in excess of 100 gallons per truck load.

A second modification to the ordinances clarify that they and their associated permits do not apply to the transport of potable water. Plaintiffs have consistently argued that the ordinances prior to resolution were unclear on this point. In their Opposition, Plaintiffs acknowledge that the ordinances as modified remove any argument that they are precluded from obtaining potable water in any volume. Plaintiffs now argue that potable water is too expensive and that they have a right to non-potable groundwater in truck loads in excess of 100 gallons per load.

Finally, the permitting process has been significantly modified and requires a great deal less information from an applicant including information the Court suggested was unduly burdensome for the Plaintiffs. As noted above, the application process although in place has not been implemented since the ordinances are not being enforced. However, copies of the permits are attached to the affidavit of Rick Dean in Defendants' moving papers (*ECF No. 57-3*).  Any argument that the permitting process is "convoluted" as claimed by Amici, is premature and unfounded since no one has been able to apply for a permit since the Court's Order.

### B. Illegal Activities and Those Committing Them; Not Asian and Hmong Communities Are Targeted by the Ordinances

The Oppositions of both Plaintiff and Amici continue to rely on a condemnation of the people of Siskiyou County that they are racist and that the enactment and enforcement of the ordinances in question are just a furtherance of an overall scheme to "choke" the Hmong community out of the County. Counsel argues that ordinances that on their face apply to every citizen in the County regardless of race, and which are expressly intended to address criminal activities and preserve water during an extreme drought, have been enacted to eliminate the Hmong community by depriving them of groundwater in excess of 100 gallons per delivery. The generalities made by counsel are ironic as they present a blanket condemnation of every non Asian citizen of the County. No statements that might actually support their position that the named **Defendants** have enacted **the ordinances at issue** in furtherance of a motive to target the Hmong community is provided. Instead, Plaintiffs rely on inadmissible, unauthorized statements of others that are clearly directed at criminals and criminal activity as opposed toward a particular race. The County has an interest in eliminating crime and quotes that have been attributed to citizens of Siskiyou County including those in public comment

specifically cited by Amici portray that interest.

While the papers provided in opposition by both Plaintiff and Amici are rife with invective and third-party statements intended to support a claim that the Defendants' official acts are racially motivated and in violation of the Fourteenth Amendment, notably absent are any declarations by Plaintiffs or others living in MSV indicate that they are unaware of the proliferation of cannabis cultivation, that they moved to MSV prior to the explosion in the illegal enterprise, or that the County is somehow responsible for their choice to live in unpermitted dwellings without access to potable water through safe and legitimate means.

In support of a contention that the ordinances in question are proof of a long history of intentional targeting of the Hmong people in Siskiyou County, Amici rely on an "analysis" of computer-aided dispatch documents provided by the Sheriff's Office in response to a PRA dated October 11, 2021. (*LaRue Affidavit, Exhibit A*)  Of the 45 requests contained in this PRA, most are directly related to the ordinances in question and their enforcement or other laws related to illegal cannabis cultivation. Nevertheless, when arguing what the analysis illustrates, Amici characterize the data as showing "disparate enforcement of non-cannabis related (e.g., traffic) laws" (*See Amici Opposition, ECF No. 60-1, p. 1:16-19*) At best, this is an oversimplification and generalization of the data analyzed, and falls far short of proving a long history of the disparate treatment of Hmong and Asian people in Siskiyou County.

The CAD documents provided show every time a law enforcement agency made contact with the driver of a vehicle in Siskiyou County. In some instances, these are not traffic stops in the traditional sense at all. Many are responses by the Sheriff's Office to a request for roadside assistance. (*LaRue Affidavit,* ¶ 4) Notably, at least 50 of the names characterized by Amici as "Asian" individuals who were the subject of a traffic stop were actually individuals being escorted in and out of the Lava Fire evacuation zone during the fire in June/July of 2021. (*LaRue Affidavit,* ¶ 7) Many of the traffic stops are related to enforcement of the ordinances in question, which were enforced around the MSV area between May and October of 2021. (*LaRue Affidavit,* ¶ 8) Thus, the conclusions reached by Amici and their expert are more than a little suspect and should not be relied upon the Court for anything.

Based on the above, Plaintiffs have wholly failed to provide evidence that the Court may consider to support "a clear pattern, unexplainable on grounds other than race" as the basis for the enactment of the ordinances in question" consistent with the holding in *Village of Arlington Heights v. Metropolitan Housing*, 429 U.S. 252 (1977). Instead, any and all credible evidence before this Court proves that instead of a discriminatory purpose, the purpose and intent of the Defendants in enacting the ordinances in question was to further legitimate, important and critical concerns including controlling crime and preserving precious resources.

### C. Plaintiffs Are Unlikely to Succeed on the Underlying Merits

Amici argues that the evidence provided to date meets its threshold burden establishing a clear pattern unexplainable on grounds other than race as a reason for the enactment of the ordinances in question and rely on the holding and analysis in *Village of Arlington Heights v. Metropolitan Housing Development Corp*. 429 U.S. 252 (1977). For the purposes of this motion, the County agrees that the test provided under *Arlington Heights* provides this Court with the framework for its analysis in determining whether Defendants violated the Equal Protection Clause of the Fourteenth Amendment. However, *Arlington Heights* does not stand for the proposition that any discriminatory act or racially charged statement when unrelated to the actual state action at issue is sufficient to prove a discriminatory purpose related to the specific act or acts giving rise to the lawsuit. In this case, the acts under question are the ordinances related to pumping and transporting groundwater for illegal cannabis cultivation. In addition to being neutral on their face, they have been enacted for the express purpose of addressing criminal activity and preserving groundwater. No racially charged acts or speech have been offered as evidence to support a conclusion that those ordinances were enacted for discriminatory purpose. If people residing in Siskiyou County have acted in a discriminatory fashion or made racist statements directed at Asians and Hmong people then that is obviously wrong. However, unless those statements and actions were taken by the named Defendants and were done so in furtherance of the actions at issue, namely the promulgation and enforcement of the ordinances at issue, then this Court should not consider them. The evidence must bear on the actions at issue otherwise the County would be paralyzed in doing anything that might have a statistically verifiable disparate impact. *Washington v. Davis*, 426 U.S. 229, 245. While disproportionate impact is not

7

SPINELLI, DONALD & NOTT

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

irrelevant, it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. *Id*, p. 242

Plaintiffs cannot provide evidence of a disparate impact against the Hmong people as a result of the enactment and enforcement of new ordinances because they have not yet been enforced. For that reason, and it is set forth in the County's moving papers, it is the County's position that the ordinances as revised should not be seen as enjoined by the prior Order.

However, even if the Court were to consider the disparate impact of the prior ordinances in its current analysis, the Court must look at the evidence before it and determine if that evidence supports a discriminatory purpose in the enactment of those ordinances. As noted in *Arlington Heights*, the historical background of the decision at issue is an evidentiary source for the Court to consider if it reveals a series of official actions taken for invidious purposes. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* p. 267.  In furtherance of its inquiry, the Court may review the specific sequence of events leading up to the challenged act and furthermore may consider the legislative or administrative history of the ordinance in question. *Id* The steps and considerations leading up to the enactment of the ordinance in question are a matter of public record. Yet, Plaintiffs and Amici despite having months to investigate and apparently with significant resources including investigative services have provided no evidence to support a conclusion that the government acts at issue, the enactment of the ordinances, were in fact adopted, written, promoted or enforced on the basis of an invidious discriminatory motive.

### IV.   CONCLUSION

Plaintiffs' counsel declares that the County has an obligation to ensure that her clients have access to water. That is entirely different than the issue before this Court which is whether or not the County may restrict water truck deliveries of a specific type and volume.  Her argument demonstrates the problems that Plaintiffs have created **by their own choices**. It is not for the County nor this Court to compel others to pay the price for those choices. Neither Amici nor Plaintiffs provide any authority that the County has an obligation to ensure an unfettered supply of groundwater to anyone who happens to be in the County at any time and under any circumstance. Water trucks are not a recognized alternative to a metropolitan water district or an approved individual water source. The

8

SPINELLI, DONALD & NOTT

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR DISSOLUTION OF THE COURT'S ORDER GRANTING A PARTIAL PRELIMINARY INJUNCTION

County has no obligation to allow unlimited access to water truck deliveries of ground water if there are compelling reasons to regulate it. Plaintiffs in this case do not have a right to trucked-in water. They have a right to be treated equally. Under the ordinances as revised, they are treated equally as all citizens of Siskiyou County in the same circumstance as Plaintiffs, i.e. in some manner dependent upon trucked-in water, whether legally or illegally, face the same burden.

Dated:  April 4, 2022                                **SPINELLI, DONALD & NOTT**

By  /s/  J. Scott Donald
J. SCOTT DONALD
Attorneys for Defendants
COUNTY OF SISKIYOU